**RECORD NOS. 13-4458(L), 13-4459, 13-4460, 13-4461**

In The
# United States Court of Appeals
### For The Third Circuit

**COLUMBIA GAS TRANSMISSION, LLC,**

*Plaintiff – Appellant,*

**v.**

**1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000 OWNED BY DWAYNE P. BROWN AND ANN M. BROWN; DWAYNE P. BROWN; ANN M. BROWN, 101 ACRES, AND 41,342 SQ. FT MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID #30000EE1600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR; BRADLEY E. HERR; ELIZABETH M. HERR, 1.5561 ACRES, MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID #30000ED010300000000, OWNED BY MYRON A. HERR AND MARY JO HERR; MYRON A. HERR; MARY JO HERR, 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY PENNSYLVANIA, LOCATED ON TAX ID #440002800240000000, OWNED BY DOUGLAS W. HILYARD AND TESSA J. HILYARD; DOUGLAS W. HILYARD; TESSA J. HILYARD,**

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

———————

**BRIEF OF APPELLANT AND APPENDIX**
**VOLUME I OF IV**
**(Pages 1 – 61)**

———————

John D. Wilburn
Anastasia P. Cordova
Stephen P. Mulligan
MCGUIREWOODS, LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia  22102
(703) 712-5000

Erin N. Fischer
MCGUIREWOODS, LLP
625 Liberty Avenue, 23rd Floor
Dominion Tower
Pittsburgh, Pennsylvania  15222
(412) 667-6000

*Counsel for Appellant*

*Counsel for Appellant*

# United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. <ins>13-4460, 13-4461</ins>

13-4458, 13-4459

## COLUMBIA GAS TRANSMISSION, LLC

v.

## 1.01 ACRES PENN TOWNSHIP, ET AL.,

Instructions

       Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

       Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

       In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

       The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

       The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. An original and three copies must be filed. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

       If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

Columbia Gas Transmission, LLC
_____
(Name of Party)

    1) For non-governmental corporate parties please list all parent corporations: NiSource, Inc.

    2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

NiSource, Inc.

    3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

    4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

## /s/ Anastasia Cordova
_____
(Signature of Counsel or Party)

Dated: 11/26/2013
_____

rev: 12/1998                    (Page 2 of 2)

## Table of Contents

**Page**

Table of Authorities ............................................................................................iv

Statement of Jurisdiction.........................................................................1

Statement of Issues Presented for Review ..................................................2

Statement of the Case.............................................................................3

    A.    Statement of Facts ....................................................................6

        1.    Description of Parties and Easements.........................................6

        2.    Regulatory Background ...........................................................7

        3.    The Need to Replace the Pipeline.............................................7

    B.    Procedural History....................................................................9

Statement of Related Cases and Proceedings Pursuant to L.A.R. 28.1(a)(2)..........13

Standards of Review ..............................................................................13

    A.    Summary Judgment...................................................................13

    B.    Rule 59(e) Motions to Alter, Amend and/or Reconsider Judgment ...........................................................................14

    C.    Motions for Immediate Possession of the Easements/Preliminary Injunction ...................................................14

Summary of Argument...........................................................................15

Argument.............................................................................................................17

    I.    THE DISTRICT COURT'S GRANT OF THE LANDOWNERS' MOTIONS FOR SUMMARY JUDGMENT AND ITS DENIAL OF COLUMBIA'S MOTIONS IS A CLEAR ERROR OF LAW BECAUSE NO REQUIREMENT EXISTS THAT THE PIPELINE MUST BE "ADJACENT TO" AN EXISTING RIGHT-OF-WAY TO QUALIFY AS A "REPLACEMENT" OF AN "ELIGIBLE FACILITY" ....................17

        A.    Columbia's Right of Eminent Domain ......................................17

        B.    The Blanket Certificate Program and Columbia's Blanket FERC Certificate........................................................................19

        C.    The District Court's Error in Interpreting Part 157 and the Surrounding FERC Interpretations ......................................22

        D.    FERC's November 22, 2013, Final Rule and the District Court's Error in Denying the Motions to Alter ........................26

        E.    The District Court's Error in Rejecting the Interpretation of the Term "Adjacent" Under Federal Case Law....................28

    II.    BECAUSE FERC WAIVED THE COST CEILING FOR COLUMBIA'S REPLACEMENT PROJECT, THE DISTRICT COURT ERRED IN NOT RECOGNIZING THE WAIVER AND DENYING THE MOTIONS TO ALTER.................................31

    III.    BECAUSE EMERGENCY RECONSTRUCTION AND THE FINAL RULE ARE NOT IN CONFLICT, AND BECAUSE THE DISTRICT COURT ADMITTED THAT THE FINAL RULE PRESENTS A POSSIBLE READING OF PART 157, THE DISTRICT COURT ABUSED ITS DISCRETION IN HOLDING THAT THE FINAL RULE IS NOT ENTITLED TO DEFERENCE................................................................................32

IV.    BECAUSE COLUMBIA HAS THE RIGHT OF EMINENT DOMAIN, AND BECAUSE IT HAS SATISFIED THE ELEMENTS OF A PRELIMINARY INJUNCTION, THE DISTRICT COURT ERRED IN DENYING COLUMBIA'S MOTIONS FOR IMMEDIATE POSSESSION OF THE EASEMENTS ...................................................................36

A.    Columbia's Success on the Merits of Its Complaints...............38

B.    Columbia Will Suffer Irreparable Injury if This Court Does Not Issue the Requested Injunctive Relief ......................38

C.    Granting Columbia Relief Will Not Result in Greater Harm to the Landowners...........................................................40

D.    A Preliminary Injunction is in the Public Interest ...................41

Conclusion .............................................................................................42

Certificate of Bar Membership

Certificate of Compliance

Certificate of Digital Submission

Certificate of Filing and Service

Appendix Volume I

Addendum

# Table of Authorities

Page(s)

**Cases**

Addie v. Kjaer,
    737 F.3d 854 (3d Cir. 2013) ..........................................................................14

Allstate Ins. Co. v. Drumheller,
    185 Fed. Appx. 152 (3d Cir. 2006) .........................................................29, 30

Am. Express Travel Related Servs. v. Sidamon-Eristoff,
    669 F.3d 359 (3d Cir. 2012) ..........................................................................37

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)........................................................................................32

Arrington v. El Paso Natural Gas Co.,
    233 F. Supp. 522 (W.D. Okla. 1964)........................................................29, 30

Auer v. Robbins,
    519 U.S. 452 (1997)................................................................................passim

Chase Bank USA, N.A. v. McCoy,
    131 S. Ct. 871 (2011)......................................................................................32

Christopher v. SmithKline Beecham Corp.,
    132 S. Ct. 2156 (2012).........................................................................33, 34, 35

Columbia Gas Transmission, LLC v. 1.088.722 Acres, et al.,
    2:13-cv-00980-CB-CRE (Oct. 24, 2014) .......................................................35

Columbia Gas Transmission, LLC v. 520.32 Acres, et al.,
    2:14-cv-00206 (Mar. 21, 2014) ......................................................................35

Decker v. Northwest Environmental Defense Ctr.,
    133 S. Ct. 1326 (2012)..............................................................................32, 35

E. Tenn. Natural Gas Co. v. Sage,
    361 F.3d 808 (4th Cir. 2004) ..................................................................passim

Lazaridis v. Wehmer,
    591 F.3d 666 (3d Cir. 2010) .........................................................................14

Lexington Ins. Co. v. W. Pa. Hosp.,
    423 F.3d 318 (3d Cir. 2005) .........................................................................13

Max's Seafood Cafe v. Quinteros,
    176 F.3d 669 (3d Cir. 1998) .........................................................................14

N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff,
    669 F.3d 374 (3d Cir. 2012) ...................................................................14, 15

Northern Border Pipeline Co. v. 127.79 Acres of Land,
    520 F. Supp. 170 (D.N.D. 1981) ..................................................................37

Steckman Ridge GP v. An Exclusive Natural Gas
Storage Easement Beneath 11.078 Acres, More or Less,
    2008 U.S. Dist. LEXIS 71302 (W.D. Pa. Sept. 19, 2008) ...............37, 38, 41

Tennessee Gas Pipeline Co. v. New England Power, C.T.L.,
    6 F. Supp. 2d 102 (D. Mass. 1998)...............................................................37

Thomas Jefferson Univ. v. Shalala,
    512 U.S. 504 (1994).................................................................................33, 35

Tri-M Grp., LLC v. Sharp,
    638 F.3d 406 (3d Cir. 2011) .........................................................................13

United States v. St. Anthony Railroad Co.,
    192 U.S. 524 (1904).................................................................................29, 30

USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee,
    1 F. Supp. 2d 816 (E.D. Tenn. 1998) ...........................................................37

Washington Gas Light Co. v. Prince George's Cnty. Council,
    711 F.3d 412 (4th Cir. 2013) .......................................................................20

White v. New Hampshire Dept. of Employment Sec.,
     455 U.S. 445 (1982) ...........................................................................................14

## Statutes

15 U.S.C. § 717f ................................................................................................1, 7

15 U.S.C. § 717f(h) ........................................................................................1, 18

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1292(a)(1) .......................................................................................14

28 U.S.C. § 1331 .................................................................................................1

## Rules

3d Cir. L.A.R. 28.1(a)(2) ...................................................................................13

Fed. R. Civ. P. 59(e) ..........................................................................................14

## Regulations

18 C.F.R. § 2.55 .....................................................................................21, 22, 26

18 C.F.R. § 2.55(b) ...............................................................................20, 21, 24

18 C.F.R. § 157.202(b)(2)(i) .................................................................20, 24, 28

18 C.F.R. § 157.203(b) ......................................................................................20

18 C.F.R. § 157.208 .....................................................................................21, 31

18 C.F.R. § 157.208(a) ...........................................................................20, 25, 33

18 C.F.R. § 157.208(b) ......................................................................................20

18 C.F.R. § 157.208(d) ................................................................................31, 32

18 C.F.R. § 375.308(v)(8) ..................................................................................12

18 C.F.R. Part 157..............................................................................passim

Emergency Reconstruction of Interstate Natural Gas Facilities
Under the Natural Gas Act, 68 Fed. Reg. 4120 (Jan. 17, 2003)......................passim

# Statement of Jurisdiction

The United States District Court for the Middle District of Pennsylvania had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 7f of the Natural Gas Act, 15 U.S.C. § 717f(h) because: (a) Plaintiff-Appellant Columbia Gas Transmission, LLC ("Columbia") is the holder of a Certificate of Public Convenience and Necessity for, among other things, the replacement of a natural gas pipeline within the Commonwealth of Pennsylvania; (b) Columbia was unable to reach an agreement as to compensation with the owners of the real property[1] at issue in this suit for the easements and other interests necessary for the replacement of the pipeline; (c) the interests in the real property that Columbia seeks to take by eminent domain are located within the Middle District of Pennsylvania; and (d) the value of the easements to be taken exceeds $3,000.00.

The District Court's May 20, 2014, Order denying Columbia's Rule 59(e) Motions to Alter, Amend and/or Reconsider Judgment ("Motions to Alter") is a final, appealable order. (App., Vol. 1, pp. 45-47). Columbia filed timely Amended Notices of Appeal on May 22, 2014. (App., Vol. 1, pp. 13-24). This Court, therefore, has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] The Appellees in this case, listed as follows, are the owners of the real property at issue: Dwayne P. Brown and Ann M. Brown (the "Browns"); Bradley E. Herr and Elizabeth M. Herr ("Bradley and Elizabeth Herr"); Myron A. Herr and Mary Jo Herr ("Myron and Mary Jo Herr"); and Douglas A. Hilyard and Tessa J. Hilyard (the "Hilyards"). The Appellees are collectively referred to as the "Landowners."

## Statement of Issues Presented for Review

I.  BECAUSE THERE IS NO REQUIREMENT THAT THE PIPELINE MUST BE "ADJACENT TO" AN EXISTING RIGHT-OF-WAY TO QUALIFY AS A "REPLACEMENT" OF AN "ELIGIBLE FACILITY," DID THE DISTRICT COURT ERR IN GRANTING THE LANDOWNERS' MOTION FOR SUMMARY JUDGMENT AND DENYING COLUMBIA'S MOTIONS? [YES]

- Issue raised: App. Vol. 2, pp. 224-516 (Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements); App. Vol. 3, pp. 950-1147 (Columbia's Rule 56(e) Motions to Alter, Amend and/or Reconsider Judgment)
- Issue objected to: App. Vol. 3, pp. 529-597, 605-638, 736-748, and 829-925 (Landowners' opposition to Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements, Landowners' Motions for Summary Judgment, and Landowners' Supplemental Briefs Following Oral Argument); Vol. 3, pp. 1152-1203 (Landowners' opposition to Motions to Alter)
- Issue ruled on: App. Vol. 1, pp. 25-57 (the District Court's October 24, 2013, Opinion and Order, November 15, 2013, Order, and May 20, 2014, Opinion and Order)

II. BECAUSE FERC WAIVED THE COST CEILING FOR COLUMBIA'S REPLACEMENT PROJECT, DID THE DISTRICT COURT ERR IN FAILING TO RECOGNIZE THIS WAIVER AND DENYING THE MOTIONS TO ALTER? [YES]

- Issue raised: App. Vol. 2, pp. 224-516 (Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements); App. Vol. 3, pp. 950-1147 (Columbia's Rule 56(e) Motions to Alter, Amend and/or Reconsider Judgment); Vol. 4, pp. 1396-1414 (Columbia's Opposition to Defendants Bradley and Elizabeth Herr's Brief in Support of their Motion for Reconsideration)
- Issue objected to: App. Vol. 3, pp. 529-597, 605-638, 736-748, and 829-925 (Landowners' opposition to Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements, Landowners' Motions for Summary Judgment, and Landowners' Supplemental Briefs Following Oral Argument);

Vol. 3, pp. 1152-1203 (Landowners' opposition to Motions to Alter)

- Issue ruled on: App. Vol. 1, pp. 25-57 (the District Court's October 24, 2013, Opinion and Order and November 15, 2013, Order)

III.  BECAUSE <u>EMERGENCY RECONSTRUCTION</u> AND THE FINAL RULE ARE NOT IN CONFLICT, AND BECAUSE THE DISTRICT COURT ADMITTED THAT THE FINAL RULE PRESENTS A POSSIBLE READING OF PART 157, DID THE DISTRICT COURT ERR IN HOLDING THAT THE FINAL RULE IS NOT ENTITLED TO DEFERENCE? [YES]

- Issue raised: Brief of Appellant
- Issue objected to: N/A
- Issue ruled on: App. Vol. 1, pp. 45-57 (District Court's May 20, 2014, Opinion and Order)

IV.  BECAUSE COLUMBIA HAS THE RIGHT OF EMINENT DOMAIN, AND BECAUSE IT HAS SATISFIED THE ELEMENTS OF A PRELIMINARY INJUNCTION, DID THE DISTRICT COURT ERR IN DENYING COLUMBIA'S MOTIONS FOR IMMEDIATE POSSESSION OF THE EASEMENTS? [YES]

- Issue raised: App. Vol. 2, pp. 224-516 (Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements)
- Issue objected to: App. Vol. 3, pp. 529-597, 605-638, 736-748, and 829-925 (Landowners' opposition to Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements, Landowners' Motions for Summary Judgment, and Landowners' Supplemental Briefs Following Oral Argument)
- Issue ruled on: App. Vol. 1, pp. 25-40 (District Court's October 24, 2013, Opinion and Order)

## Statement of the Case

The Natural Gas Act and its governing regulations are unambiguous: Columbia has the right to replace its existing natural gas pipelines and condemn Landowners' properties pursuant to its blanket Certificate of Public Convenience

3

and Necessity issued by the Federal Energy Regulatory Commission ("FERC"). The District Court, however, chose to interlineate new restrictions on Columbia's right of eminent domain, holding that Columbia can only replace lost pipeline capacity if the newly-constructed pipelines are located within or "adjacent to" an existing right-of-way.

This so-called adjacency requirement is conspicuously absent from, and actually conflicts with, the plain language of Title 18, Part 157 of the Code of Federal Regulations. If upheld, the District Court's interpretation would impose unprecedented and unworkable limitations on Columbia's right to achieve time-sensitive, safety-driven construction that is at the heart of FERC's blanket certificate program.

Nevertheless, as support for its position, the District Court cites FERC's regulatory changes created in 2003 in response to the terrorist attacks of September 11, 2001. These changes grant interstate pipeline owners the power of eminent domain in certain emergency circumstances. There are no similar emergency circumstances in this case, and Columbia does not rely on the emergency construction provisions as its authority for eminent domain. Thus, the District Court never should have considered this inapposite regulatory history.

4

Moreover, on November 22, 2013, FERC issued a Final Rule[2] that unequivocally disavows the District Court's interpretation in the exact fact pattern at issue. In discussing an interstate gas company's eminent domain rights under the Natural Gas Act, FERC states:

> [A] company can rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be located at considerable distance from the old pipeline in order to avoid a housing development constructed since the old pipeline was installed.[3]

With FERC's Final Rule in hand, Columbia filed its Motions to Alter the District Court's prior opinions. The District Court held an untranscribed, telephonic oral argument, during which it stated that it was inclined to reconsider its prior rulings based upon FERC's statement in the Final Rule. The District Court stated that it would issue its order within thirty days of the hearing, which was held on March 7, 2014.

More than sixty days later, on May 20, 2014, the District Court issued its opinion and order, denying the Motions to Alter and holding that FERC's explanation of its own regulations is unpersuasive. The District Court's decision was particularly surprising as the Court previously relied on FERC's interpretation of its own regulations in the inapplicable emergency reconstruction context, and

---

[2] See 145 FERC ¶ 61,154, 2013 FERC LEXIS 1967, 18 C.F.R. Parts 2, 157, and 380 Revisions to Auxiliary Installations, Replacement Facilities, and Siting and Maintenance Regulations (Nov. 22, 2013) at 44 n.78 (App., Vol. 4, p. 1042.)

[3] See supra n. 2.

because it was a turnabout from its rationale and decision expressed at the conclusion of oral argument.

Anxious to complete its time-sensitive project, Columbia now asks this Court to review its rights under the Natural Gas Act and its corresponding regulations. Whether this Court applies the plain language of the law or looks to FERC's interpretation of its own regulations, there is only one just and legally correct disposition: a reversal of the District Court's orders.

**A.    Statement of Facts.**

### 1.    *Description of Parties and Easements.*

Columbia transports natural gas in interstate commerce pursuant to authorization granted by and subject to the jurisdiction of FERC. (App., Vol. 2, pp. 89, 126, 157, 183.) Since the 1950s, Columbia has operated an eight-inch natural gas pipeline in and around York County, Pennsylvania, designated Line 1655 (the "Pipeline"). (Id.)

The Landowners own real property in York County, Pennsylvania, over which Columbia seeks to acquire easements for the replacement of the Pipeline[4].

---

[4] Columbia seeks to acquire the following rights from the Landowners: (1) 1.03-acre permanent easement, 0.49-acre temporary construction easement, 0.33-acre additional temporary construction easement, and 0.29-acre top soil area from Bradley and Elizabeth Herr; (2) 0.19-acre permanent easement and 0.09-acre temporary easement from the Browns; (3) 0.18-acre permanent easement and 0.08-acre temporary construction easement from the Hilyards; and (4) 0.02-acre permanent easement from Myron and Mary Jo Herr. (App., Vol. 2, pp. 92, 129, 160, 186.)

(App., Vol. 2, pp. 88, 125, 156, 182.)   Columbia attempted to acquire the easements from the Landowners by negotiation, but that effort was unsuccessful. (App., Vol. 2, pp. 256, 288, 317, 354.)

### 2. *Regulatory Background.*

On January 7, 1983, FERC issued to Columbia a blanket Certificate of Public Convenience and Necessity ("FERC Certificate") authorizing Columbia ". . . to conduct many routine activities and abandon facilities and service on a self-implementing basis without further authorization by the Commission." (App., Vol. 2, p. 104.)  FERC issued the blanket Certificate pursuant to its authority in Section 717f of the Natural Gas Act.  See 15 U.S.C. § 717f.  The blanket FERC Certificate, in conjunction with the Code of Federal Regulations, authorizes Columbia's replacement project and Columbia's right to condemn property interests necessary to construct the replacement project.

### 3. *The Need to Replace the Pipeline.*

The Pipeline is over fifty years old.  (App., Vol. 2, pp. 262, 292, 321, 358.) As part of Columbia's implementation of the pipeline integrity processes established under 49 C.F.R. § 192.901 *et seq.* by the Pipeline and Hazardous Materials Safety Administration, Columbia has confirmed the need to replace a portion of the Pipeline in order to meet rigorous standards of pipeline safety. (App., Vol. 2, pp. 263, 293, 322, 359.)

Columbia has already begun construction work in connection with the Pipeline's replacement. (Am. Mot. for Expedited Appeal, Frederick Aff. ¶ 15.) In fact, Columbia already replaced 19,000 feet—or 95%—of the Pipeline in 2013. (Id.) The 1,000-foot stretch of the Pipeline on the Landowners' properties represents the remaining 5% of the replacement that is currently delaying the entire project. (Id.)

Columbia has reached agreements with all other landowners impacted by the replacement of the Pipeline except for the Landowners. (Id. ¶ 16.) Columbia cannot replace the Pipeline until it acquires easements on and across the Landowners' properties. These easements are necessary to complete the Pipeline's replacement. (App., Vol. 2, pp. 263, 293, 322, 359.)

Additionally, the pipeline construction season is relatively short, and the preference in the industry is to commence construction in June. (App., Vol. 2, pp. 263, 293, 322, 359.) The weather from November through February generally makes construction impractical and expensive. (App., Vol. 2, pp. 264, 294, 323, 360.) In addition, the potential for inclement weather must be taken into account. (Id.) If Columbia is not able to begin construction on the properties by September 1, 2014, weather events could have a significant disruptive effect and potentially jeopardize the timeline for the replacement of the Pipeline. (Frederick Aff. ¶ 21.) Thus, the limitations imposed by weather limit the suitability of the winter months

for construction activities, and make the summer months the ideal time to replace the Pipeline. (App., Vol. 2, pp. 264, 294, 323, 360.)

In order to alleviate the attendant safety concerns and avoid interruptions, the replaced Pipeline must be in service by October 31, 2014. (Frederick Aff. ¶ 20.) If Columbia is unable to meet the October 31, 2014, deadline, it will be unable to launch the new Pipeline in time for the beginning of the heating season on November 1, 2014. (Id. ¶ 23.)

### B. Procedural History.

On March 26, 2013, Columbia filed its Complaints in Condemnation. (App., Vol. 2, pp. 86-209.) On May 24, 2013, Columbia filed its Motions for Partial Summary Judgment and for Immediate Possession of the Easements. (App., Vol. 2, pp. 224-528.)

In its Motions for Partial Summary Judgment, Columbia asked the District Court to enter partial summary judgment that Columbia has the power of eminent domain under the Natural Gas Act pursuant to the blanket FERC Certificate. (App., Vol. 2, pp. 397, 467, 486, 505.) In support of its argument, Columbia relied on Title 18, Part 157, of the Code of Federal Regulations which, *inter alia*, permits a blanket certificate holder to replace an "eligible facility" without obtaining further authorization from FERC. (App., Vol. 2, pp. 394-96, 464-66, 483-85, 502-04.) In addition to partial summary judgment, Columbia sought injunctive relief to

allow for immediate possession of the easements to begin replacement of the Pipeline pending resolution of just compensation proceedings. (App., Vol. 2, pp. 397-404, 468-74, 486-93, 505-12.)

On June 12 and 14, 2013, the Landowners filed Motions for Summary Judgment essentially asking the District Court to find that Columbia does not have the right of eminent domain to condemn the easements. (App., Vol. 3, pp. 572-93, 626-34.) On October 10, 2013, the District Court heard oral argument on Columbia's Motions for Partial Summary Judgment and at the end of the hearing took the Motions under advisement. (App., Vol. 3, pp. 767-828.) On October 24, 2013, the District Court issued a Memorandum Opinion and Order denying Columbia's Motions. (App., Vol. 1, pp. 25-40.) Among other things, the District Court held that Columbia does not have the power of eminent domain, reasoning as follows:

> The right-of-way necessary for replacement Line 1655 is not "outside, but . . . adjacent to" old Line 1655's right-of-way; it does not merely "spill over [from] the original temporary workspace or permanent right-of-way." Rather, Columbia Gas is avowedly rerouting replacement Line 1655 to avoid a congested area, necessitating a new right-of-way approximately a quarter-mile distant. It is, to paraphrase, "creat[ing] . . . an entirely new route due to the need to circumvent [a congested area]." Accordingly, replacement Line 1655 cannot be properly characterized as the "replace[ment]" of an "eligible facility."

(App., Vol. 1, pp. 35-36.)

On November 15, 2013, in accordance with its October 24, 2013, Memorandum Opinion and Order, the District Court granted the Landowners' Motions for Summary Judgment, holding that Columbia does not have the power to condemn the easements because the replacement Pipeline will not be adjacent to the existing right-of-way. (App., Vol. 1, pp. 41-44.) On the same day, Columbia filed its Notices of Appeal to this Court. (App., Vol. 1, pp. 1-12.) On November 22, 2013, seven days after the District Court's November 15, 2013, Order, FERC issued a Final Rule implementing changes to certain portions of C.F.R. Title 18. See 145 FERC ¶ 61,154, 2013 FERC LEXIS 1967, 18 C.F.R. Parts 2, 157, and 380 Revisions to Auxiliary Installations, Replacement Facilities, and Siting and Maintenance Regulations (Nov. 22, 2013) (App., Vol. 4, pp. 996-1081.).

The Final Rule included a footnote in which FERC identified the fact pattern at issue in this case and before the District Court–whether a company can rely on its Part 157 blanket certificate to replace the capacity of a segment of an obsolete pipeline with a new pipeline that may need to be located considerable distance from the old pipeline. Importantly, FERC opined that Part 157 does allow for such replacement and that such replacement need not be located adjacent to an existing right-of-way. (App., Vol. 4., p. 1042.) Put simply, the Final Rule repudiated the District Court's misunderstanding of FERC's position on the issue. See generally

Revisions to Auxiliary Installations, 2013 FERC LEXIS 1967, p. 44 n.78; (App.,

Vol. 4, p. 1042.)

In line with the Final Rule, on December 13, 2013, Columbia filed its Rule

59(e) Motions to Alter.  (App., Vol. 3-4, pp. 950-1147.)  Between December 2013

and February 2014, Columbia on several occasions contacted the District Court to

schedule a hearing on the Motions to Alter.  (App., Vol. 4, pp. 1149-51, 1236-63,

1415-30.)  Finally, on March 7, 2014, the District Court held a telephonic hearing

during which it indicated it was inclined to grant the Motions to Alter.  The District

Court explained that it believed FERC's rationale, as expressed in the Final Rule,

was applicable.

In response to the District Court's verbal statement that it was inclined to

grant the Motions to Alter, on April 7, 2014, the Landowners filed Motions for

Reconsideration of the District Court's not yet issued order on the Motions to

Alter. (App., Vol. 4, pp. 1323-1395.)[5]

On May 20, 2014, the District Court reversed its previously-stated verbal

decision and denied Columbia's Motions to Alter, holding that FERC, in its Final

Rule, incorrectly interpreted its own regulations.  (App., Vol. 1, pp. 45-57.)  On

---

[5] In the meantime, on March 28, 2014, FERC issued a cost waiver to Columbia, removing the $11 million cost ceiling for the Pipeline replacement project.  (App., Vol. 4, pp. 1411-14.) Columbia attached the cost waiver to its opposition to the Motion for Reconsideration it filed on April 11, 2014.  (Id.)  Pursuant to FERC's authority under 18 C.F.R. § 375.308(v)(8), the cost waiver relieves Columbia from the $11 million project cost restriction.  (Id.)

May 22, 2014, Columbia filed its Amended Notices of Appeal.  (App., Vol. 1, pp. 13-24.)  On June 3, 2014, this Court granted Columbia's Amended Motion for Expedited Appeal.  (ECF Doc. No. 003111637806.)

### Statement of Related Cases and Proceedings Pursuant to L.A.R. 28.1(a)(2)

The consolidated cases that are the subject of this Appeal have not been before this Court previously, except on Columbia's original Notices of Appeal filed on November 15, 2013.  Columbia is unaware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this Court or any other court or agency, state or federal.

### Standards of Review

### A.    Summary Judgment.

This Court's review of the District Court's denial of Columbia's Motions for Partial Summary Judgment and the grant of the Landowners' Motions for Summary Judgment is plenary, and the Court "appl[ies] the same standard as the district court."  Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011) (citations omitted).  "Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005).

**B.      Rule 59(e) Motions to Alter, Amend and/or Reconsider Judgment.**

This Court must review the District Court's denial of Columbia's Motions to Alter for abuse of discretion.  Addie v. Kjaer, 737 F.3d 854, 867 (3d Cir. 2013). Federal Rule of Civil Procedure 59(e) provides the moving party the opportunity to challenge a judgment when the party seeks reexamination or reconsideration of matters addressed by the trial court in issuing a decision on the merits.  White v. N.H. Dept. of Employment Sec., 455 U.S. 445, 451 (1982).

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence."  Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1998).  A rule 59(e) motion must rely on one of the following grounds: (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error of law or prevent manifest injustice.  Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citations omitted).

**C.      Motions for Immediate Possession of the Easements/Preliminary Injunction.**

This Court has jurisdiction to review the District Court's order denying a preliminary injunction to Columbia under 28 U.S.C. § 1292(a)(1).  N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff, 669 F.3d 374, 385 (3d Cir. 2012).  The District Court's decision is reviewed for abuse of discretion, but this Court must review the

underlying factual findings for clear error and examine legal conclusions de novo.
Id.

## Summary of Argument

The District Court's denial of Columbia's Motions for Partial Summary Judgment and Motions to Alter and the granting of the Landowners' Motions for Summary Judgment should be reversed for three reasons.  First, the District Court incorrectly held that Columbia's replacement of the Pipeline is not a "replacement" of an "eligible facility" under 18 C.F.R. Part 157 because the new pipelines will not be located within or "adjacent to" an existing right-of-way.

Put simply, nothing in the Natural Gas Act or the Code of Federal Regulations imposes an adjacency requirement for replacement pipelines. In finding this requirement, the District Court's relied on an unrelated 2003 FERC opinion that was issued in response to the 9/11 terrorist attacks.  This position is obviously misplaced as Columbia is not seeking to replace the Pipeline in response to a disaster or an act of terrorism.  As such, the District Court ignored the plain definition of "eligible facility" set forth in 18 C.F.R. Part 157, and instead misapplied an unrelated FERC opinion that was issued regarding an inapplicable fact pattern.

Furthermore, FERC's Final Rule dated November 22, 2013, confirms that the classification of an "eligible facility" does not turn on the location of that

pipeline vis-à-vis an existing facility. Indeed, there is no such adjacency or proximity limitation in 18 C.F.R. 157 and the Final Rule makes clear that FERC does not interpret its own regulations to include such a limitation. The Final Rule unequivocally eliminated the reasons stated by the District Court in support of its denial of Columbia's Motions for Partial Summary Judgment, and the District's Court's denial of the Motions to Alter based on the Final Rule is a clear abuse of discretion.

Second, the District Court erroneously found that the Landowners were entitled to challenge Columbia's assertion that it complied with the cost limitations of Part 157. FERC has unequivocally waived the cost ceiling for Columbia's project, thereby removing this issue from the case. (App., Vol. 4, pp. 1412-13.)

Third, the District Court erred in holding that FERC's November 22, 2013, Final Rule is not entitled to <u>Auer</u> deference. The District Court's decision is particularly surprising and wrong because the District Court's October 24, 2013, Order specifically relied upon what the District Court incorrectly concluded was FERC's interpretation of Part 157. The District Court relied specifically on the inapplicable 2003 Comment, while declining to provide any deference to the November 2013 Final Rule, which is factually on point with this case in every possible way. Moreover, the District Court's own recognition that the Final Rule presents a possible interpretation of Part 157 required a ruling that the Final Rule is

entitled to deference. Furthermore, contrary to the District Court's reasoning, the Final Rule and FERC's previous interpretations of Part 157 are not inconsistent.

Lastly, the District Court erred in denying Columbia's Motions for Immediate Possession of the Easements on the grounds that Columbia does not possess the right of eminent domain, which was the only element that the District Court addressed. Because Columbia has met all the elements of a preliminary injunction standard, it is entitled to immediate possession.

## Argument

## I. THE DISTRICT COURT'S GRANT OF THE LANDOWNERS' MOTIONS FOR SUMMARY JUDGMENT AND ITS DENIAL OF COLUMBIA'S MOTIONS IS A CLEAR ERROR OF LAW BECAUSE NO REQUIREMENT EXISTS THAT THE PIPELINE MUST BE "ADJACENT TO" AN EXISTING RIGHT-OF-WAY TO QUALIFY AS A "REPLACEMENT" OF AN "ELIGIBLE FACILITY."

Given the plain language of Part 157, which establishes that Columbia's project is a "replacement" of an "eligible facility," the District Court should have found that Columbia has the authority to condemn the easements necessary to replace the pipeline. Moreover, upon receiving FERC's Final Rule, the District Court abused its discretion by failing to reconsider its prior, erroneous decisions.

### A. Columbia's Right of Eminent Domain.

The Natural Gas Act authorizes Columbia to condemn property where: (1) Columbia holds a certificate of public convenience and necessity; and

17

(2) Columbia and the property owner cannot agree on the compensation for the property:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h).  No dispute exists with respect to Columbia's compliance with the second requirement of this test, and the only contested issue is whether Columbia holds a certificate of public convenience and necessity[6].  That issue is a pure question of law.

In holding that Columbia lacks the power of eminent domain, the District Court held that the Pipeline replacement project was not authorized by the blanket FERC Certificate and the relevant federal regulations.  Specifically, the District Court stated that: (1) "[T]he Court disagrees with Columbia Gas's position that replacement Line 1655 can be relocated approximately a quarter-mile away from the old Line 1655 to circumvent a population center and still be considered an

---

[6] It is clear that Columbia has been unable to reach agreement with the Landowners regarding the compensation to be paid for the easements.  Over several months, Columbia repeatedly sought to purchase the easements from the Landowners. (App., Vol. 2, pp. 265-67, 295-97, 361-62.)  During this time, Columbia contacted the Landowners numerous times and made multiple offers to purchase the easements.  (Id.)  The Landowners rejected all of Columbia's offers.  (Id.)

'eligible facility' [under 18 C.F.R. Part 157]" (App., Vol. 1, p. 32); (2) "The right-of-way necessary for replacement Line 1655 is not 'outside, but . . . adjacent to' old Line 1655's right-of-way" (Id., p. 35); and (3) "Columbia is avowedly rerouting replacement Line 1655 to avoid a congested area, necessitating a new right-of-way approximately a quarter-mile distant." (Id.)

Importantly, the District Court recognized that Columbia possessed the blanket FERC Certificate and that both the blanket FERC Certificate and Part 157 allow Columbia to replace its pipelines without further FERC authorization. (App., Vol. 1, pp. 29-30.)  However, the District Court wrongly held that there exists a proximity limitation in Part 157 that precludes Columbia from replacing the Pipeline unless such replacement is within or adjacent to an existing right-of-way.  (Id. at 35.) That proximity limitation is not contained in Part 157, is not contained in the blanket FERC Certificate, and is not set forth in any case law. Finally, the District Court's proximity limitation is squarely contradicted by FERC's Final Rule.

As the language of Part 157 and FERC's opinions demonstrate, the District Court's ruling is erroneous as a matter of law.

## B.     The Blanket Certificate Program and Columbia's Blanket FERC Certificate.

On January 7, 1983, FERC granted Columbia the blanket FERC Certificate in relation to the Pipeline.  (App., Vol. 2, p. 104.)  The blanket certificate program

enables "a one-time certificate of public convenience and necessity to authorize a variety of jurisdictional activities and permission and approval to abandon, which would otherwise require separate certificate or abandonment authority in each instance." (Id.); see also Wash. Gas Light Co. v. Prince George's Cnty. Council, 711 F.3d 412, 424 (4th Cir. 2013) (concluding that because Washington Gas was a holder of a blanket certificate, it was "permitted to expand its facilities without further authorization from FERC").

Columbia's FERC Certificate authorizes it to conduct many "routine activities . . . without further authorization by the Commission." (App., Vol. 2, p. 104.)  Routine activities undertaken pursuant to the FERC Certificate include, among other things, replacement of any "eligible facility."  See 18 C.F.R. §§ 157.203(b); 157.208(a).

The Code of Federal Regulations defines "eligible facility" as, *inter alia*, "main line, lateral, and compressor *replacements* that do not qualify under § 2.55(b) of this chapter because . . . *they will not satisfy the location or work space requirements of § 2.55(b).*" 18 C.F.R. § 157.202(b)(2)(i) (emphasis added). Section 2.55(b) excludes from the definition of "eligible facility" facilities the replacement of which will be located within the same right-of-way.  18 C.F.R. § 2.55(b).  Thus, "eligible facility" under 18.C.F.R. § 157.208(b) includes a main line replacement that will not be located within the existing right-of-way.  By way

20

of contrast, an "eligible facility" under § 2.55(b) is one that will be constructed within an existing right-of-way.

The District Court conflated the different concepts set forth in Part 157 and § 2.55, ignoring that one (§ 2.55) allows for replacement only within existing right-of-way whereas § 157 has no such requirement.

The FERC Guidelines interpreting the various sections within C.F.R. Title 18 clarify the interplay between Part 157 and § 2.55(b).  (App., Vol. 4, pp. 1082-95.)  Specifically, Subsection C, titled "Blanket Certificate – Subpart F of Part 157" states that an "eligible facility" includes replacement that "doesn't qualify under section 2.55 because of . . . the need *to move the facility or use new workspace*." (App., Vol. 4, p. 1083) (emphasis added).

In contrast, subsection A of the Guidelines, titled "Operation and Maintenance of Certificated Projects," provides that one of the requirements of § 2.55 is that "the replaced pipe goes in the same permanent right-of-way."  (Id. at 1083.)  The Guidelines go on to say that "If [the conditions of § 2.55] can't be met, *then the authorization conferred by the blanket certificate may be able to be used*."  (Id.) (emphasis added).  This is a clear indication that when, as here,[7] a pipeline must be replaced in a new right-of-way, blanket authorization under § 157.208 may be utilized.  See also, e.g., Emergency Reconstruction of Interstate Natural Gas

---

[7] Here, Columbia cannot replace the Pipeline in the same right-of-way as the original facilities.  (App., Vol. 2, pp. 263, 293, 322, 359.)

Facilities Under the Natural Gas Act, 68 Fed. Reg. 4120 ¶ 10 (Jan. 17, 2003)

("Acting under blanket authority, a pipeline may install new facilities on a new right-of-way, which may be acquired through the pipeline's exercise of eminent domain.");

see also, Revisions to Auxiliary Installations, 2013 FERC LEXIS 1967 at 44 n.78

(App., Vol. 4, p. 1042)  ("[A] company can rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be located at considerable distance from the old pipeline.").

> ### C. The District Court's Error in Interpreting Part 157 and the Surrounding FERC Interpretations.

Given the combination of the following factors, none of which the Landowners controverted below, the District Court should have recognized Columbia's right to condemn and should have allowed Columbia immediate possession of the easements: (1) Columbia possesses a blanket FERC Certificate, dated January 7, 1983, which gives it authority to conduct routine activities without further authorization; (2) the proposed replacement requires a new right-of-way, thus—according to FERC's guidelines—triggering the applicability of blanket authorization under Part 157; (3) the project is a "replacement" under Part 157 because it does not increase the existing capacity; (4) because the proposed replacement is outside the scope of § 2.55 because it will not be constructed on existing right-of-way, it falls into the category of "eligible facilit[ies]" under Part 157; and (5) Columbia was unable to acquire the easements by agreement.

The convergence of these factors alone should have resulted in the granting of Columbia's Motions for Partial Summary Judgment and denial of the Landowners' Motions for Summary Judgment.  Relying on an isolated, and inapplicable, comment by FERC,[8] the District Court imposed a proximity requirement on Columbia's ability to use the blanket FERC Certificate to replace the Pipeline.  Specifically, the District Court found that the new route of the Pipeline had to be adjacent (without providing a definition as to "adjacent") to the existing right-of-way to qualify as a "replacement" of an "eligible facility" under Part 157.  (App., Vol. 1, p. 35.)  No such requirement is contained in the Code of Federal Regulations or otherwise imposed by law.

Here, Columbia seeks to replace an aged pipeline with a new segment that will not increase capacity.  The planned replacement will be placed in a new right-

---

[8] The opinion on which the District Court relied states in pertinent part:

> [P]art 157, Subpart F, permits replacement construction that uses temporary workspace beyond the bounds of the temporary workspace previously used to construct the original facilities as necessary to install replacement facilities.  These regulations also permit locating a portion of mainline, lateral, or compressor replacement facilities outside, *but presumably adjacent to*, an existing right-of-way where, for whatever reason, the new facilities could not be placed entirely within the original facilities' existing right-of-way.  These regulations, however, do not appear to contemplate mainline construction over an entirely different route as may be necessary to circumvent the site of a disaster if immediate replacement is necessary before the original site is again available. Emergency Reconstruction, 68 Fed. Reg. 4120, 4122 (emphasis added).

of-way—thus taking it out of the scope of § 2.55(b)—and will merely substitute a new pipe for the old one without changing the existing service and capacity configuration.

In analyzing Columbia's right to proceed with its project, the District Court imposed a non-existent proximity restriction on the definition of "replacement," concluding that the term "replace" generally "does not imply significant relocation." (App., Vol. 1, p. 32.)  Among the various limitations on the right to replace contained in Part 157, including restrictions on capacity and cost, the *distance* between the old pipeline and the replacement is not one of them.  Further, because the term "replacement" has a specific meaning under the Code of Federal Regulations, the District Court's dictionary definition of the verb "replace" (App., Vol. 1, p. 32) is inapposite.

Indeed, to accept the District Court's reasoning would eliminate the rationale behind Part 157, which serves to permit replacements at a new location because a specific facility does not qualify for replacement within the same right-of-way.  If to "replace" meant to "restore to a former place," as the District Court opined (App., Vol. 1, p. 32), then replacements would never be possible under Part 157 which bases the eligibility for a replacement on the inability to do so within the existing right-of-way.  See 18 C.F.R. § 157.202(b)(2)(i).

Furthermore, the District Court's reliance on Emergency Reconstruction is misplaced. First, Emergency Reconstruction is not contained in any statute, regulation, or case law and cannot be used to contradict the plain rights granted to Columbia pursuant to Part 157. Indeed, Emergency Reconstruction has not been formally included in Part 157. Moreover, Emergency Reconstruction does not apply to the facts of this case.

FERC issued Emergency Reconstruction in 2003, in response to the 9/11 terrorist attack. Emergency Reconstruction eliminated certain pre-construction requirements when "[I]mmediate action is required to restore service in an emergency due to a sudden unanticipated loss of natural gas or capacity in order to prevent loss of life, impairment of health, or damage to property." 68 Fed. Reg. 4120. Indeed, Emergency Reconstruction relates only to activities undertaken during a serious and immediate emergency.

18 C.F.R. § 157.208(a), however, permits the use of blanket authority not only when an emergency contemplated by Emergency Reconstruction occurs, but also when the project cost does not exceed certain regulatory requirements. Unlike Emergency Reconstruction, which came into existence in 2003, FERC's general, non-emergency rules with respect to blanket authorization have existed since the conception of the blanket certificate program in the early 1980s.

Here, Columbia is not operating in an emergency caused by "a sudden unanticipated loss of natural gas or capacity." While Columbia's project is time-sensitive due to the age and composition of the Pipeline, the emergency scenario described in Emergency Reconstruction is not at issue here. As a result, the District Court erroneously applied Emergency Reconstruction to Columbia's replacement project.

Finally, even if the plain language of Part 157 were somehow insufficient to allow Columbia to proceed with its replacement project, the Final Rule conclusively rejected the adjacency requirement the District Court attempted to impose on Columbia's project. Nevertheless, after initially stating that the District Court would reconsider its position and grant Columbia's Motions to Alter, the District Court instead again rejected Columbia's position, this time also rejecting FERC's stated interpretation of its own regulations.

### D.    FERC's November 22, 2013, Final Rule and the District Court's Error in Denying the Motions to Alter.

On November 22, 2013, several days after the District Court's November 15, 2013, Order, FERC issued a Final Rule clarifying certain provisions of § 2.55 and establishing notice practices for property entry under the C.F.R. (App., Vol. 4, pp. 996-1081.) In discussing authorization under Part 157 and § 2.55, FERC made the following observation:

We note that in instances where a pipeline company needs to rely on its Part 157 certificate to construct auxiliary or replacement facilities because they do not satisfy the locations or work space limitations of section 2.55, *the Part 157 blanket certificate regulations impose no limitations on the placement of the facilities. While the Commission has indicated previously that it is contemplated that replacement facilities constructed under blanket authority would usually be located adjacent to, if not within an existing right-of-way, sections 157.202(b)(2)(i) and 157.210 permit the construction of non-main line facilities and main line facilities, respectively, without restriction on their location.* For example, a company can rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be *located at considerable distance from the old pipeline to avoid a housing development constructed since the old pipeline was installed* or to install auxiliary facilities such as anodes offset from the existing right-of-way to provide cathodic protection.

(145 FERC ¶ 61, 154 at 44 n.75, App., Vol. 4, p. 1042) (emphasis added). FERC's interpretation of Part 157 is noteworthy because it identified the fact pattern at issue in this case, referenced Emergency Reconstruction on which the District Court specifically relied for its October 24, 2013, Order, and effectively explained why the District Court's decisions were wrong.

Even if, as the District Court found, the replacement is situated a quarter mile from the existing line and even if such a distance is necessary to circumvent a congested area, these facts do not, contrary to the District Court's ruling, disqualify Columbia from using the blanket certificate. (App., Vol. 4, p. 1042.)

In fact, FERC's Final Rule specifically provides that "a company can rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete

pipeline with new pipeline that may need to be *located at <u>considerable</u> distance from the old pipeline <u>to avoid a housing development</u> constructed since the old pipeline was installed*[.]" (<u>Id.</u>) (emphasis added). The Final Rule further states that Part 157 permits construction of facilities "without restriction on their location." (<u>Id.</u>) Pursuant to the Final Rule, Columbia's replacement of the obsolete Pipeline that loops around a population center, is not subject to any limitations on its path or location.

In sum, 18 C.F.R. Part 157 clearly and unambiguously establishes that Columbia has the power to replace the Pipeline outside of the existing right-of-way using its blanket FERC Certificate, and that the Pipeline is an "eligible facility" under 18 C.F.R. § 157.202(b)(2)(i). The District Court's reliance on the inapplicable 2003 <u>Emergency Reconstruction</u> was error, as was the District Court's refusal to provide deference to the 2013 Final Rule that unequivocally establishes that the classification of a pipeline as an "eligible facility" does not hinge on the distance between that pipeline and the existing right-of-way.

### E. The District Court's Error in Rejecting the Interpretation of the Term "Adjacent" Under Federal Case Law.

The Code of Federal Regulations does not include an adjacency requirement; nor does it impose any restriction on the location of facilities. Even if such a requirement or restriction existed, which it does not, the old Pipeline and the replacement are adjacent to each other as a matter of law.

28

Although FERC's regulations do not define the word "adjacent," courts' interpretation of this term dictates that two objects located within a quarter mile from each other are adjacent to each other as a matter of law. For example, in United States v. St. Anthony Railroad Co., 192 U.S. 524 (1904), the Supreme Court considered the meaning of "adjacent" under 18 Stat. at L. 482, chap. 152 which granted to certain railroad companies a 100-foot right-of-way through the public lands, with the right to take construction materials from the public lands adjacent to the line of the road.

The Court rejected the railroad's contention that objects twenty miles apart from each other could be considered adjacent for the purposes of the statute. St. Anthony Railroad, 192 U.S. at 539. Specifically, the Court found that "Lands which are twenty miles off we cannot regard as adjacent to the line of a railroad within the meaning of this statute. On the other hand, *lands within two miles, we assume all would agree, are so adjacent*." Id. (emphasis added); see also Allstate Ins. Co. v. Drumheller, 185 Fed. Appx. 152, 157 (3d Cir. 2006) ("'Adjacent' does not mean 'contiguous,' and we do not interpret *MacDonald* as requiring property to touch or share a common border with property in which the insured has a legal interest in order to be 'adjacent' to that property[.]"); Arrington v. El Paso Natural Gas Co., 233 F. Supp. 522, 526 (W.D. Okla. 1964) (citing St. Anthony Railroad

and defining "adjacent" as something that "may be separated by some intervening object").

Under St. Anthony Railroad, Drumheller, and Arrington, Columbia's replacement located a quarter mile away from the existing line must be viewed as adjacent, even if the old and new locations of the pipeline do not share a border and are separated by an intervening object such as a population center. Assuming, *arguendo*, that a limitation on location exists under Part 157, the interpretation of the word "adjacent" to include objects located a quarter mile away from each other presents an independent ground for finding that the Pipeline is an "eligible facility" subject to replacement under the blanket FERC Certificate.[9]

---

[9] In the May 20, 2014, Opinion, the District Court ridicules Columbia's argument. This argument, however, is neither "risible" nor "feckless" as it, in the absence of an interpretation by FERC, explored the definition of "adjacent" in case law that seems to have dealt with the same dilemma in other contexts. Additionally, the District Court's emphasis on the distance between the old and new Pipeline could not be clearer: "Applying the regulations as interpreted by FERC . . . to replacement Line 1655, it is plain that the project is not automatically authorized as 'replace[ment]' of an 'eligible facility' . . . . The right-of-way necessary for replacement of Line 1655 is not 'outside, but . . . adjacent to' old Line 1655's right-of-way. . . . Accordingly, replacement Line 1655 cannot be properly characterized as the 'replace[ment]' of an 'eligible facility.'" (App., Vol. 1, p. 52.)

**II.   BECAUSE FERC WAIVED THE COST CEILING FOR COLUMBIA'S REPLACEMENT PROJECT, THE DISTRICT COURT ERRED IN NOT RECOGNIZING THE WAIVER AND DENYING THE MOTIONS TO ALTER.**

In its October 24, 2013, Memorandum Opinion, the District Court opined that even if Columbia's replacement qualified as an "eligible facility," the Landowners would have been entitled to conduct discovery and controvert Columbia's contention that the project complied with the cost ceiling. (App., Vol. 1, p. 36.) The developments that followed this statement establish that FERC has already resolved the question of Columbia's compliance with Section 157.208(d) in Columbia's favor.

Generally, a blank certificate holder may undertake activities without further authorization from FERC so long as certain cost limitations are not exceeded. 18 C.F.R. § 157.208(d). The project cost ceiling for 2013 was $11 million. See id. § 157.208. On March 28, 2014, and in response to Columbia's request for a waiver, FERC found that Columbia exceeded the cost limitation due to unforeseen events and concluded as follows: ". . . [I]t appears that Columbia made a good faith effort to construct the replacement project under the guidelines and cost limits set forth in section 157.208(d) of the Commission's blanket certificate regulations. Based on the specific facts and circumstances of this project, waiver of cost limitations in this instance is granted." (App., Vol. 4, pp. 1412-13.)

31

FERC's Project Cost Limit Waiver renders the issue of Columbia's compliance with § 157.208(d) moot and eliminates any need for discovery on the cost issue, should this Court remand this case for further proceedings.  The fact that Columbia may have exceeded the cost ceiling is immaterial because it does not affect Columbia's right of eminent domain.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If this Court remands this case for further proceedings, it should include in its order a direction that the District Court may not require the parties to engage in discovery on the cost issue.

**III.    BECAUSE EMERGENCY RECONSTRUCTION AND THE FINAL RULE ARE NOT IN CONFLICT, AND BECAUSE THE DISTRICT COURT ADMITTED THAT THE FINAL RULE PRESENTS A POSSIBLE READING OF PART 157, THE DISTRICT COURT ABUSED ITS DISCRETION IN HOLDING THAT THE FINAL RULE IS NOT ENTITLED TO DEFERENCE.**

It is well established that "When an agency interprets its own regulation, the Court, as a general rule, defers to it[.]"  Decker v. Northwest Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2012).  The agency's reasoning need not be the only possible, or the best one, as long as it is permissible.  Decker, 133 S. Ct. at 1337.  This so-called Auer deference is appropriate "unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'"  Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 880 (2011) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)).  Auer deference may also be inappropriate if the interpretation "'does not reflect the

agency's fair and considered judgment on the matter in question'" (Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2166 (2012) (quoting Auer, 519 U.S. at 462)) or if the interpretation "conflicts with a prior interpretation" (Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994)).

In reaching its conclusion that FERC's November 22, 2013, Final Rule is not entitled to Auer deference, the District Court viewed the Final Rule and FERC's Emergency Reconstruction as inconsistent with each other. (App., Vol. 1, pp. 55-56.)

A review of the Final Rule and Emergency Reconstruction, as well as the precedent the District Court cites, demonstrates that no conflict exists between FERC's two interpretations of Part 157. As discussed *supra*, FERC issued Emergency Reconstruction in response to urgencies created by "a deliberate effort to disrupt the flow of natural gas." 68 Fed. Reg. 4120. That is not the situation here. Columbia has not alleged an act of terrorism or another deliberate attempt to disrupt its operations.

To the contrary, Columbia use of the blanket FERC Certificate to replace the Pipeline arises from the *other* scenario contemplated by 18 C.F.R. § 157.208(a), to wit that Columbia's project does not exceed regulatory requirements. See 18 C.F.R. § 157.208(a) ("If the project cost does not exceed the cost limitations set forth in column 1 of Table I, under paragraph (d) of this section, *or* if the project is

required to restore service in an emergency, the certificate holder is authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility) (emphasis added).  As a result, the interpretations set forth in Emergency Reconstruction apply only to operations undertaken during catastrophes, and not as part of a routine replacement of aged facilities.  To that end, the Final Rule does not contradict any previous interpretations that deal with the use of the blanket Certificate in a non-emergency situation.

Furthermore, the plain language of the Final Rule does nothing to contradict Emergency Reconstruction because the Final Rule simply points out that Part 157 does not contain a limitation on location when the certificate holder seeks to replace an obsolete facility.  (App., Vol. 4, p. 1042.)  Further, because the term "presumably adjacent" is not defined, the Final Rule does not abolish any specific limitations on location.  (Id.)

The cases cited by the District Court are distinguishable.  In Christopher, the Department of Labor interpreted certain regulations to impose "massive liability" on conduct that preceded the interpretation.  132 S. Ct. at 2166-67.  The Supreme Court declined to extend Auer deference to the interpretation because the attachment of liability presented an "unfair surprise" without a fair warning by the Department.  Id. at 2167.  Here, the Final Rule, which merely reinforces the fact that Part 157 does not contain a restriction on location, is not an "unfair surprise"

that injures specific rights to the extent the Supreme Court found impermissible in Christopher[10].

In <u>Shalala</u>, the Supreme Court found that the Secretary of Health and Human Services' omission of a certain anti-redistribution provision from an internal memorandum did not indicate the existence of a contrary policy and, as a result, did not signify inconsistent interpretations of the provision  512 U.S. at 515-16. <u>Shalala</u>, therefore, is entirely inapplicable to this case.

The District Court recognized that the Final Rule "provides a 'possible reading' of the relevant regulations."  (App., Vol. 1, p. 56.)  That is all that is required to afford <u>Auer</u> deference to the Final Rule.  <u>See</u> <u>Decker</u>, 133 S. Ct. at 1337 ("It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail.").  As a result, the Final Rule should have been given deference.  By refusing to do so, the District Court abused its discretion, and its May 20, 2014, Order denying the Motions to Alter should be reversed.

---

[10] Furthermore, district courts in this Commonwealth, have affirmed Columbia's right to use the blanket FERC Certificate under Part 157 without regard to the location of the new pipelines or the distance between the new and old facilities.  As a result, the interpretation of Part 157 to not impose a limitation on location should not come a surprise to the Landowners.  <u>See, e.g.</u>, <u>Columbia Gas Transmission, LLC v. 1.088.722 Acres, et al.</u>, 2:13-cv-00980-CB-CRE, Order Oct. 24, 2014 (Bissoon, J.); <u>Columbia Gas Transmission, LLC v. 520.32 Acres, et al.</u>, 2:14-cv-00206, Order March 21, 2014 ¶ 7 (Hornak, J.) (granting preliminary injunction because Columbia "is likely to succeed on the merits of its condemnation of the referenced parcels").

**IV.    BECAUSE COLUMBIA HAS THE RIGHT OF EMINENT DOMAIN, AND BECAUSE IT HAS SATISFIED THE ELEMENTS OF A PRELIMINARY INJUNCTION, THE DISTRICT COURT ERRED IN DENYING COLUMBIA'S MOTIONS FOR IMMEDIATE POSSESSION OF THE EASEMENTS.**

Although the District Court did not articulate its reasons for denying Columbia's Motions for Immediate Possession of the Easements, it clearly denied the Motions on October 24, 2013.  (App., Vol. 1, p. 40.)  The decision was based on the District Court's incorrect belief that Columbia lacked the power of eminent domain.  (App., Vol. 1, pp. 25-40.)

Because the District Court clearly erred in concluding that Columbia does not possess the power of eminent domain, Columbia requests that the Court grant it immediate possession of the easements sought in the Complaints.  As set forth more fully below, if Columbia is unable to begin replacement of the Pipeline prior to determination of just compensation, the timely completion of the project will be jeopardized.  Further, there is a risk of harm to the public if Columbia cannot replace the pipeline to satisfy the stringent requirements of pipeline safety.

There is no doubt that the District Court was empowered to grant Columbia's request.  In a case remarkably similar to this one, the Fourth Circuit held that a condemnor may be given immediate possession of property through the issuance of a preliminary injunction after the court determines that the condemnor has a substantive right to condemn the property under the Natural Gas Act.  <u>E.</u>

Tenn. Natural Gas Co. v. Sage, 361 F.3d 808, 831 (4th Cir. 2004); see also Steckman Ridge GP v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less, 08-168, 2008 U.S. Dist. LEXIS 71302, at *44-56 (W.D. Pa. Sept. 19, 2008).[11]

Because Columbia established that it is authorized to condemn the easements, the District Court should have determined whether Columbia satisfied the elements of a preliminary injunction. This Court has considered four factors when ruling on a motion for preliminary injunction: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest." Am. Express Travel Related Servs. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012) (quotations omitted).

---

[11] These decisions are consistent with the significant body of authority from other jurisdictions which recognize the power of district courts to grant possession of easements prior to the determination of just compensation. See Tennessee Gas Pipeline Co. v. New England Power, C.T.L., Inc., 6 F.Supp.2d 102, 104 (D. Mass. 1998); Northern Border Pipeline Co. v. 127.79 Acres of Land, 520 F.Supp. 170, 172 (D. N.D. 1981); USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee, 1 F.Supp.2d 816, 825 (E.D. Tenn. 1998).

As illustrated below, Columbia has satisfied each prong of this test and is therefore entitled to a preliminary injunction granting it immediate possession of the easements.

### A.     Columbia's Success on the Merits of Its Complaints.

For the reasons stated in Part I *supra*, Columbia is authorized to condemn the easements, and the District Court's holdings to the contrary are erroneous.  As a result, Columbia has met the first prong of the injunction standard.   See Steckman Ridge GP, 2008 U.S. Dist. LEXIS 71302, at *48 (finding that Steckman established its right to exercise eminent domain and thus "established compliance with this first factor").

### B.     Columbia Will Suffer Irreparable Injury if This Court Does Not Issue the Requested Injunctive Relief.

Similar to the plaintiffs in Sage and Steckman Ridge, Columbia will be irreparably harmed if it cannot obtain immediate possession of the easements.  See Sage, 361 F.3d at 828-29; Steckman Ridge GP, 2008 U.S. Dist. LEXIS 71302, at *48-52.  In order to replace the Pipeline, Columbia must acquire easements across properties throughout York County.   (App., Vol. 2, pp. 263, 293, 322, 359.) Because of the limited construction season, a delay in the acquisition of the easements for one property can delay the entire project.   Therefore, without immediate access to the Easements, Columbia cannot begin and complete the work as scheduled.

The pipeline construction season is relatively short and late to begin. (App., Vol. 2, pp. 263, 293, 322, 359.)  The preference in the industry is to commence construction in June.  The weather from November through February generally makes construction impractical and expensive.  (Id.)  In addition, the potential for inclement weather also must be taken into account.  If Columbia is not able to begin construction on the Properties by September 1, 2014, weather events could have a significant disruptive effect and potentially jeopardize the timeline for the replacement of the Pipeline.  (Am. Mot. for Expedited Appeal, Frederick Aff. ¶ 21.)  Due to the delays caused by the litigation below, the project is already late because Columbia had planned to begin construction on June 29, 2013.  (App., Vol. 2, pp. 263, 293, 322, 359.)

In Sage, the Fourth Circuit affirmed the district court's finding that "without a preliminary injunction the [project] would suffer 'undue delay' and that this delay would cause 'significant financial harm both to [East Tennessee] and some of its putative customers.'"  361 F.3d at 828.  As was the case in Sage, Columbia and the general public would suffer harm if Columbia is denied access until the completion of separate compensation hearings for the Landowners' properties. Merely scheduling, much less conducting such hearings, will take an extended period of time.  In order to complete the Pipeline replacement, Columbia must be able to begin construction on all properties by September 1, 2014, so that the

39

project can be completed prior to the in-service deadline of October 31, 2014, and the winter months.  (Frederick Aff. ¶ 20.)

The harm resulting from the aging Pipeline and construction delays weighs decidedly in favor of granting the preliminary injunction requested by Columbia where the only undecided issue is the amount of just compensation.

### C.    Granting Columbia Relief Will Not Result in Greater Harm to the Landowners.

Granting the requested relief will not harm the Landowners, as the Fifth Amendment guarantees the Landowners' right to just compensation for the condemned property "no matter when the condemnor takes possession." <u>Sage</u>, 361 F.3d at 829.  Thus, regardless of whether this Court grants the requested relief, the Landowners will be compensated monetarily during the compensation phase below.

Further, the Pipeline is going to be replaced at some point in time.  There is nothing about the properties which indicates that they would suffer any greater harm if Columbia is granted immediate possession of the easements and allowed to begin construction according to the contractor's schedule than they will if Columbia is not allowed access to the easements until the Court determines the amount of just compensation due to the Landowners.  (App., Vol. 2, pp. 264-65, 294-95, 323-24, 360-61.)

Moreover, Columbia is willing to deposit a sum of money representing Columbia's determined value of the easements into a District Court account or post bond as a condition of the requested relief. This will ensure that the Landowners' interests will be protected. Accordingly, the harm to the Landowners resulting from pre-judgment possession is "slight at best." Sage, 361 F.3d at 829; see also Steckman Ridge GP, 2008 U.S. Dist. LEXIS 71302, at *53 (finding any harm to Defendants "will be minimal and can readily be compensated for from the bond amount which Steckman will be required to pay into the Court").

### D.    A Preliminary Injunction is in the Public Interest.

"Congress passed the Natural Gas Act and gave gas companies condemnation power to ensure that consumers would have access to an adequate supply of natural gas at reasonable prices." Sage, 361 F.3d at 830. By virtue of the blanket FERC Certificate, FERC found that the operation, maintenance, and repair of the Pipeline promote these congressional goals. (App., Vol 2, p. 104.) The replacement of a portion of the Pipeline in order to meet rigorous standards of pipeline safety clearly serves the public interest, as does its expeditious completion. Denying immediate possession of the easements would result in a delay in construction, thus delaying the benefit of a pipeline that meets the rigorous standards of pipeline safety and posing a risk of harm to the public.

Because Columbia possesses the right to condemn the easements, and because Columbia has satisfied the elements of a preliminary injunction, the District Court abused its discretion in denying the Motions for Immediate Possession.

## Conclusion

Based on the foregoing, Columbia Gas Transmission, LLC, by counsel, respectfully requests the Court to reverse the District Court's October 24, 2013, Order denying Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements, the November 15, 2013, Order granting the Landowners' Motions for Summary Judgment, and the May 20, 2014, Order denying Columbia's Rule 59(e) Motions to Alter, Amend and/or Reconsider Judgment; and to grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Anastasia P. Cordova
John D. Wilburn
Anastasia P. Cordova
Stephen P. Mulligan
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia  22102
P: 703-712-5000
F: 703-712-5050
E-mail: jwilburn@mcguirewoods.com
E-mail: acordova@mcguirewoods.com
E-mail: smulligan@mcguirewoods.com

Erin N. Fischer
McGuireWoods LLP
EQT Plaza
625 Liberty Avenue
23rd Floor
Pittsburgh, PA 15222
P: 412-667-6000
F: 412-667-6050
E-mail: efischer@mcguirewoods.com

*Counsel for Appellant*

## Certificate of Bar Membership

I hereby certify that I am a member in good standing of the United States Court of Appeals for the Third Circuit.

/s/ Anastasia P. Cordova
Anastasia P. Cordova

## Certificate of Compliance

I hereby certify that this brief conforms to the rules contained in FRAP 32(a)(5)(A) for a brief produced with 14 point Times New Roman, proportional font.  This brief contains 9,998 words, not including the Table of Contents and Table of Authorities, permitted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ Anastasia P. Cordova
Anastasia P. Cordova

## Certificate of Digital Submission

I hereby certify that a copy of the foregoing Brief of Appellant was submitted in digital format, is an exact copy of the written document filed with the Clerk, and has been scanned for viruses with the Symantec Endpoint Protection, Small Business Edition, Version 12.0.1001.95 and according to the program, is free of viruses.

/s/ Anastasia P. Cordova
Anastasia P. Cordova

## Certificate of Filing and Service

I hereby certify on this 6th day of June, 2014, I caused this Brief of Appellant and Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Michael F. Faherty
> LAVERTY FAHERTY PATTERSON
> 225 Market Street, Suite 304
> Harrisonburg, Pennsylvania  17108
> (717) 233-6633

> *Counsel for Appellee*

I further certify that on this 6th day of June, 2014, I caused the required number of copies of this Brief of Appellant and Appendix to be filed with the Clerk's Office of the United States Court of Appeals for the Third Circuit, via UPS Next Day Air and a copy of the Appendix to be served, via UPS Ground Transportation to Counsel for Appellee at the above address.

/s/ Anastasia P. Cordova
Anastasia P. Cordova

**RECORD NOS. 13-4458(L), 13-4459, 13-4460, 13-4461**

In The

# United States Court of Appeals

For The Third Circuit

## COLUMBIA GAS TRANSMISSION, LLC,

*Plaintiff – Appellant*,

v.

## 1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000 OWNED BY DWAYNE P. BROWN AND ANN M. BROWN; DWAYNE P. BROWN; ANN M. BROWN, 101 ACRES, AND 41,342 SQ. FT MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID #30000EE1600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR; BRADLEY E. HERR; ELIZABETH M. HERR, 1.5561 ACRES, MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID #30000ED010300000000, OWNED BY MYRON A. HERR AND MARY JO HERR; MYRON A. HERR; MARY JO HERR, 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY PENNSYLVANIA, LOCATED ON TAX ID #440002800240000000, OWNED BY DOUGLAS W. HILYARD AND TESSA J. HILYARD; DOUGLAS W. HILYARD; TESSA J. HILYARD,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

## APPENDIX
## VOLUME I OF IV
## (Pages 1 – 61)

---

| | | |
|---|---|---|
| **Anastasia P. Cordova** | **Erin N. Fischer** | **Michael F. Faherty** |
| **Stephen P. Mulligan** | **MCGUIREWOODS, LLP** | **LAVERTY FAHERTY PATTERSON** |
| **John D. Wilburn** | **625 Liberty Avenue, 23rd Floor** | **225 Market Street, Suite 304** |
| **MCGUIREWOODS, LLP** | **Dominion Tower** | **Harrisonburg, Pennsylvania 17108** |
| **1750 Tysons Boulevard, Suite 1800** | **Pittsburgh, Pennsylvania 15222** | **(717) 233-6633** |
| **Tysons Corner, Virginia 22102** | **(412) 667-7919** | |
| **(703) 712-5004** | | |
| | | |
| *Counsel for Appellant* | *Counsel for Appellant* | *Counsel for Appellees* |

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS[12]
## VOLUME I OF IV

<u>**Appendix Page**</u>

**Plaintiff's Notice of Appeal**
**(4:13-cv-00778)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Plaintiff's Notice of Appeal**
**(4:13-cv-00783)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Plaintiff's Notice of Appeal**
**(4:13-cv-00785)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Plaintiff's Notice of Appeal**
**(4:13-cv-00786)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Plaintiff's Amended Notice of Appeal**
**(4:13-cv-00778)**
      **filed May 22, 2014** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Plaintiff's Amended Notice of Appeal**
**(4:13-cv-00783)**
      **filed May 22, 2014** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

---

[1] Because Case Nos. 4:13-cv-00783-MWB, 4:13-cv-00778-MWB, 4:13-cv-00785-MWB, and 4:13-cv-00786-MWB present the same issues on appeal and give rise to the same assignments of error, the designated parts of the record in each of the four cases are identical and have been included here solely for the purposes of providing a complete record.

[2] Pursuant to Rule 30(b)(1), counsel for Columbia contacted counsel for the Landowners on Friday, May 30, 2014, to discuss the contents of the appendix. Later that day, counsel for Columbia sent counsel for the Landowners Columbia's Designation of Parts of the Record by regular mail and electronic mail. To date, counsel for Columbia has not heard from counsel for the Landowners. As a result, this Appendix consists solely of the parts of the record designated by Columbia.

Plaintiff's Amended Notice of Appeal
(4:13-cv-00785)
     filed May 22, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiff's Amended Notice of Appeal
(4:13-cv-00786)
     filed May 22, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Memorandum of
The Honorable Matthew W. Brann
Re:  Denying Plaintiff's Motion for Partial Summary Judgment
And for Immediate Possession of the Easements
(4:13-cv-00778, 4:13-cv-00783, 4:13-cv-00785, 4:13-cv-00786)
     filed October 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Order of
The Honorable Matthew W. Brann
Re:  Denying Plaintiff's Motion for Partial Summary Judgment
And for Immediate Possession of the Easements
(4:13-cv-00778, 4:13-cv-00783, 4:13-cv-00785, 4:13-cv-00786)
     filed October 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Order of
The Honorable Matthew W. Brann
Re:  Granting Defendants' Motion for Summary Judgment
(4:13-cv-00778, 4:13-cv-00783, 4:13-cv-00785, 4:13-cv-00786)
     filed November 15, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Order of
The Honorable Matthew W. Brann
Re:  Denying Plaintiff's Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment
(4:13-cv-00778, 4:13-cv-00783, 4:13-cv-00785, 4:13-cv-00786)
     filed May 20, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Memorandum Opinion of
The Honorable Matthew W. Brann
(4:13-cv-00778, 4:13-cv-00783, 4:13-cv-00785, 4:13-cv-00786)
     filed May 20, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**Judgment in a Civil Action**
**(4:13-cv-00778)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **58**

**Judgment in a Civil Action**
**(4:13-cv-00783)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **59**

**Judgment in a Civil Action**
**(4:13-cv-00785)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **60**

**Judgment in a Civil Action**
**(4:13-cv-00786)**
      **filed November 15, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **61**

# TABLE OF CONTENTS
## VOLUME II OF IV

**Appendix Page**

**Docket Entries**
**(4:13-cv-00778)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

**Docket Entries**
**(4:13-cv-00783)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

**Docket Entries**
**(4:13-cv-00785)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

**Docket Entries**
**(4:13-cv-00786)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

**Plaintiff's Complaint in Condemnation,**
**With Attachments and Exhibits,**
**(4:13-cv-00778)**
    filed March 26, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

    Attachments:

    **Civil Cover Sheet**
        dated March 26, 2013  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

    **Table of Exhibits**
        undated  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

    Exhibits:

    1.    **Plats**
            dated October 2, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

    2.    **FERC Certificate**
            dated January 7, 1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

    3.    **Right of Way Agreement and Easement Drawing**
            undated  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107

**Plaintiff's Complaint in Condemnation,**
**With Attachments and Exhibits,**
**(4:13-cv-00778)**
    filed March 26, 2013, continued:

    <u>Exhibits</u>, continued:

    4.    **Columbia Gas' Minimum Guidelines**
        undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

    **Plaintiff's Notice of Filing Complaint in Condemnation**
        dated March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

**Plaintiff's Complaint in Condemnation,**
**With Attachments and Exhibits,**
**(4:13-cv-00783)**
    filed March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

    <u>Attachments</u>:

    **Civil Cover Sheet**
        dated March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133

    **Table of Exhibits**
        undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

    <u>Exhibits</u>:

    1.    **Plats**
        dated October 2, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

    3.    **Right of Way Agreement and Easement Drawing**
        undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

**Plaintiff's Complaint in Condemnation,**
**With Attachments and Exhibits,**
**(4:13-cv-00785)**
      filed March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 154

      <u>Attachments:</u>

      **Civil Cover Sheet**
            dated March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

      **Table of Exhibits**
            undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 167

      <u>Exhibits:</u>

      1.    **Plats**
                dated October 2, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 168

      3.    **Right of Way Agreement and Easement Drawing**
                undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 170

**Plaintiff's Complaint in Condemnation,**
**With Attachments and Exhibits,**
**(4:13-cv-00786)**
      filed March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180

      <u>Attachments:</u>

      **Civil Cover Sheet**
            dated March 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 189

      **Table of Exhibits**
            undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 193

      <u>Exhibits:</u>

      1.    **Plats**
                dated October 2, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 194

      3.    **Right of Way Agreement and Easement Drawing**
                undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 196

**Plaintiff's Complaint in Condemnation,**
**With Attachments and Exhibits,**
**(4:13-cv-00786)**
        **filed March 26, 2013, continued:**

        <u>**Exhibits**</u>**, continued:**

        **Plaintiff's Notice of Filing Complaint in Condemnation**
                **dated March 26, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 206

**Defendants Myron and Mary Jo Herr's**
**Answer to Plaintiff's Complaint in Condemnation**
**(4:13-cv-00785)**
        **filed April 24, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 210

**Defendants Douglas and Tessa Hilyard's**
**Answer to Plaintiff's Complaint in Condemnation**
**(4:13-cv-00786)**
        **filed April 24, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 217

**Plaintiff's Motion for Partial Summary Judgment**
**And for Immediate Possession of the Easements**
**(4:13-cv-00778)**
        **filed May 24, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224

**Plaintiff's Motion for Partial Summary Judgment**
**And for Immediate Possession of the Easements**
**With Attachments,**
**(4:13-cv-00783)**
        **filed May 24, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 229

        <u>**Attachment**</u>**:**

        **Affidavit of Doug Holley,**
        **With Exhibits,**
                **dated May 23, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 234

        **Proposed Order**
                **undated** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 236

**Plaintiff's Motion for Partial Summary Judgment
And for Immediate Possession of the Easements,
With Attachments,
(4:13-cv-00785)**
      filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 238

     <u>Attachments</u>:

     **Plaintiff's Certificate of Non-Concurrence for Its Motion for
Partial Summary Judgment and for
Immediate Possession of the Easements**
         dated May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 243

     **Proposed Order**
         undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 245

**Plaintiff's Motion for Partial Summary Judgment
And for Immediate Possession of the Easements,
With Attachments,
(4:13-cv-00786)**
      filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 247

     <u>Attachments</u>:

     **Plaintiff's Certificate of Non-Concurrence for Its Motion for
Partial Summary Judgment and for
Immediate Possession of the Easements**
         dated May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 252

     **Proposed Order**
         undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 254

**Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, With Attachment, (4:13-cv-00778)**

      filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 256

      <u>Attachment</u>:

      **Affidavit of Doug Holley, With Exhibits,**

           **dated May 23, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 261

**Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, With Attachment, (4:13-cv-00783)**

      filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 286

      <u>Attachment</u>:

      **Affidavit of Doug Holley, With Exhibits,**

           **dated May 23, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 291

**Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, With Attachment, (4:13-cv-00785)**

      filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 315

      <u>Attachment</u>:

      **Affidavit of Doug Holley, With Exhibits,**

           **dated May 23, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 320

laintiffs' Rule 56.1 Statement of Undisputed Material Facts in
Support of Plaintiff's Motion for Partial Summary Judgment,
With Attachment,
(4:13-cv-00786)
    filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 352

        Attachment:

        Affidavit of Doug Holley,
        With Exhibits,
            dated May 23, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 357

Plaintiff's Memorandum in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements,
With Attached Table of Exhibits and Exhibits,
(4:13-cv-00778)
    filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 389

        Exhibits:

        1.    *Steckman Ridge GP v. An Exclusive Natural Gas
              Storage Easement Beneath 11.078 Acres, More or Less*,
                  2008 U.S. Dist. LEXIS 71302 (W.D. Pa. Sept. 19, 2008) . . 408

        2.    *Hardy Storage Co., LLC v. Property Interests
              Necessary to Conduct Gas Storage Operations*,
                  2009 U.S. Dist. LEXIS 18124 (N.D. W. Va. 2009) . . . . . . . 427

        3.    *Am. Energy Corp. v. Rockies Express Pipeline LLC*,
                  2009 U.S. Dist.
                  LEXIS 55972 (S.D. Ohio July 14, 2009) . . . . . . . . . . . . . . 436

        4.    *East Tennessee Natural Gas, LLC v.
              3.62 Acres in Tazewell County, VA*,
                  2006 U.S. Dist.
                  LEXIS 31136 (W.D. Va. May 18, 2006) . . . . . . . . . . . . . . 442

        5.    *East Tennessee Natural Gas, LLC v.
              1.28 Acres in Smyth County, Va.*,
                  2006 U.S. Dist.
                  LEXIS 24450 (W.D. Va. Apr. 26, 2006) . . . . . . . . . . . . . . 445

**Plaintiff's Memorandum in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements,
With Attached Table of Exhibits,
(4:13-cv-00783)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 459

**Plaintiff's Memorandum in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements,
With Attached Table of Exhibits,
(4:13-cv-00785)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 478

**Plaintiff's Memorandum in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements,
With Attached Table of Exhibits,
(4:13-cv-00786)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 497

**Plaintiff's Request for Hearing on Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements
(4:13-cv-00778)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 517

**Plaintiff's Request for Hearing on Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements
(4:13-cv-00783)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 520

**Plaintiff's Request for Hearing on Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements
(4:13-cv-00785)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 523

**Plaintiff's Request for Hearing on Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easements
(4:13-cv-00786)**
     filed May 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 526

# TABLE OF CONTENTS
## VOLUME III OF IV

**Appendix Page**

**Defendants Myron and Mary Jo Herr's Brief in
Opposition to Plaintiff's Motion for Partial Summary
Judgment and for Immediate Possession of the Easements
(4:13-cv-00785)**
     filed June 10, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 529

**Defendants Douglas and Tessa Hilyard's Brief in Opposition to
Plaintiff's Motion for Partial Summary
Judgment and for Immediate Possession of the Easements
(4:13-cv-00786)**
     filed June 10, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 547

**Defendants Myron and Mary Jo Herr's Rule 56.1
Statement of Material Facts in Opposition to
Plaintiff's Motion for Partial Summary Judgment
(4:13-cv-00785)**
     filed June 10, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 564

**Defendants Douglas and Tessa Hilyard's
Statement of Material Facts in Opposition to
Plaintiff's Motion for Partial Summary Judgment
(4:13-cv-00786)**
     filed June 10, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 568

**Defendants Myron and Mary Jo Herr's Motion for Summary Judgment,
With Attachments,
(4:13-cv-00785)**
     filed June 12, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 572

   **Attachments:**

   **Defendants Myron and Mary Jo Herr's Certificate of
   Non-Concurrence for Its Motion for Summary Judgment**
        dated June 12, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 576

**Defendants Myron and Mary Jo Herr's Motion for Summary Judgment,**
**With Attachments,**
**(4:13-cv-00785)**
     filed June 12, 2013, continued:

     <u>Attachments</u>, continued:

       **Proposed Order**
           undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 579

**Defendants Douglas and Tessa Hilyard's Motion for Summary Judgment,**
**With Attachments,**
**(4:13-cv-00786)**
     filed June 12, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 581

     <u>Attachments</u>:

       **Defendants Douglas and Tessa Hilyard's Certificate of**
       **Non-Concurrence for Its Motion for Summary Judgment**
           dated June 12, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 585

       **Proposed Order**
           undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 588

**Defendants Myron and Mary Jo Herr's Brief in**
**Support of Its Motion for Summary Judgment**
**(4:13-cv-00785)**
     filed June 12, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 590

**Defendants Douglas and Tessa Hilyard's Brief in**
**Support of Its Motion for Summary Judgment**
**(4:13-cv-00786)**
     filed June 12, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 594

**Defendants Dwayne and Ann Brown's Answer to**
**Plaintiff's Complaint in Condemnation**
**(4:13-cv-00778)**
     filed June 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 598

**Defendants Dwayne and Ann Brown's Rule 56.1 Statement of
Material Facts in Opposition to Plaintiff's
Motion for Partial Summary Judgment
(4:13-cv-00778)**
        filed June 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 605

**Defendants Dwayne and Ann Brown's Brief in Opposition to
Plaintiff's Motion for Summary Judgment and for
Immediate Possession of the Easements
(4:13-cv-00778)**
        filed June 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 609

**Defendants Dwayne and Ann Brown's Motion for Summary Judgment,
With Attached Proposed Order,
(4:13-cv-00778)**
        filed June 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 626

**Defendants D. Brown and A. Brown's Brief in
Support of Its Motion for Summary Judgment
(4:13-cv-00778)**
        filed June 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 635

**Plaintiff's Notice of Filing Corrected Exhibit,
With Attached Exhibit A,
(4:13-cv-00785)**
        filed June 21, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 639

**Plaintiff's Reply in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easement,
With Exhibit,
(4:13-cv-00778)**
        filed June 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 652

        **Exhibit:**

        **1.**    *Shaw v. Philadelphia Housing Authority, et al.*,
                **1991 U.S. Dist. LEXIS 7416 (E.D. Pa. 1991)** . . . . . . . . . . . 663

Plaintiff's Reply in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easement
(4:13-cv-00785)
      filed June 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 675

Plaintiff's Reply in Support of Its Motion for Partial Summary
Judgment and for Immediate Possession of the Easement
(4:13-cv-00786)
      filed June 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 686

Plaintiff's Brief in Opposition to Defendants
Dwayne and Ann Brown's Motion for Summary Judgment,
With Exhibit,
(4:13-cv-00778)
      filed July 3, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 697

      <u>Exhibit:</u>

      1.    *Kaleta v. Clausi, et al.*,
              2013 U.S. Dist. LEXIS 73741 (M.D. Pa. 2013) . . . . . . . . . . 704

Plaintiff's Brief in Opposition to Defendants
Myron and Mary Jo Herr's Motion for Summary Judgment
(4:13-cv-00785)
      filed July 3, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 707

Plaintiff's Brief in Opposition to Defendants
Myron and Mary Jo Herr's Motion for Summary Judgment
(4:13-cv-00786)
      filed July 3, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 714

Defendants Bradley and Elizabeth Herr's Answer to
Plaintiff's Complaint in Condemnation
(4:13-cv-00783)
      filed September 16, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 721

**Letter to**
**The Honorable Matthew W. Brann from**
**Courtney S. Schorr**
**Re: Request Order on Motion for Summary Judgment**
**(4:13-cv-00778)**
    **filed October 1, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 728

**Letter to**
**The Honorable Matthew W. Brann from**
**Courtney S. Schorr**
**Re: Request Order on Motion for Summary Judgment**
**(4:13-cv-00783)**
    **filed October 1, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 730

**Letter to**
**The Honorable Matthew W. Brann from**
**Courtney S. Schorr**
**Re: Request Order on Motion for Summary Judgment**
**(4:13-cv-00785)**
    **filed October 1, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 732

**Letter to**
**The Honorable Matthew W. Brann from**
**Courtney S. Schorr**
**Re: Request Order on Motion for Summary Judgment**
**(4:13-cv-00786)**
    **filed October 1, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 734

**Defendants Bradley and Elizabeth Herr's Motion for Summary Judgment,**
**With Attached Proposed Order and Attachments,**
**(4:13-cv-00783)**
    **filed October 3, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 736

    <u>**Attachments:**</u>

    **1.**    **Eligible Facilities Plan**
        **undated** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 743

    **2.**    **Eligible Facilities Plan**
        **undated** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 745

**Defendants Bradley and Elizabeth Herr's Motion for Summary Judgment,**
**With Attached Proposed Order and Attachments,**
**(4:13-cv-00783)**
    **filed October 3, 2013, continued:**

    <u>**Attachments,**</u> **continued:**

      **3.**     **Plat**
             **undated** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **747**

**Letter to**
**The Honorable Matthew W. Brann from**
**Michael F. Faherty**
**Re:  Objecting to October 1, 2013 Letter**
**(4:13-cv-00778)**
    **filed October 4, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **749**

**Letter to**
**The Honorable Matthew W. Brann from**
**Michael F. Faherty**
**Re:  Objecting to October 1, 2013 Letter**
**(4:13-cv-00783)**
    **filed October 4, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **751**

**Letter to**
**The Honorable Matthew W. Brann from**
**Michael F. Faherty**
**Re:  Objecting to October 1, 2013 Letter**
**(4:13-cv-00785)**
    **filed October 4, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **753**

**Letter to**
**The Honorable Matthew W. Brann from**
**Michael F. Faherty**
**Re:  Objecting to October 1, 2013 Letter**
**(4:13-cv-00786)**
    **filed October 4, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **755**

**Plaintiff's Opposition to Defendants' Motion for Summary Judgment**
**(4:13-cv-00783)**
    **filed October 9, 2013** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **757**

Transcript of Oral Argument before
The Honorable Matthew W. Brann
     on October 10, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 767

Defendants Bradley and Elizabeth Herr's Brief in
Support of Its Motion for Summary Judgment
(4:13-cv-00783)
     filed October 16, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 829

Defendants Dwayne and Ann Brown's
Supplemental Brief Following Oral Argument,
With Attached Appendix,
(4:13-cv-00778)
     filed October 17, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 834

Defendants Bradley and Elizabeth Herr's
Supplemental Brief Following Oral Argument,
With Attached Appendix,
(4:13-cv-00783)
     filed October 17, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 857

Defendants Myron and Mary Jo Herr's
Supplemental Brief Following Oral Argument,
With Attached Appendix,
(4:13-cv-00785)
     filed October 17, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 880

Defendants Douglas and Tessa Hilyard's
Supplemental Brief Following Oral Argument,
With Attached Appendix,
(4:13-cv-00786)
     filed October 17, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 903

Plaintiff's Brief in Opposition to Defendants Dwayne and
Ann Brown's Supplemental Brief Following Oral Argument
(4:13-cv-00778)
     filed October 18, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 926

Plaintiff's Brief in Opposition to Defendants Bradley and
Elizabeth Herr's Supplemental Brief Following Oral Argument
(4:13-cv-00783)
        filed October 18, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 932

Plaintiff's Brief in Opposition to Defendants Myron and
Mary Jo Herr's Supplemental Brief Following Oral Argument
(4:13-cv-00785)
        filed October 18, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 938

Plaintiff's Brief in Opposition to Defendants Douglas and Tessa Hilyard's
Supplemental Brief Following Oral Argument
(4:13-cv-00786)
        filed October 18, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 944

Plaintiff's Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment,
With Attachments,
(4:13-cv-00778)
        filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 950

        Attachments:

        Plaintiff's Certificate of Non-Concurrence for its Rule 59(e)
        Motion to Alter, Amend, and/or Reconsider Judgment
                dated December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 953

        Proposed Order
                undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 956

Plaintiff's Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment,
With Attachments,
(4:13-cv-00783)
        filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 958

        Attachments:

        Plaintiff's Certificate of Non-Concurrence for its Rule 59(e)
        Motion to Alter, Amend, and/or Reconsider Judgment
                dated December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 961

**Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment,**
**With Attachments,**
**(4:13-cv-00783)**
  filed December 13, 2013, continued:

  <u>Attachments</u>, continued:

   **Proposed Order**
    undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 964

**Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment,**
**With Attachments,**
**(4:13-cv-00785)**
  filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 966

  <u>Attachments</u>:

   **Plaintiff's Certificate of Non-Concurrence for its Rule 59(e)**
   **Motion to Alter, Amend, and/or Reconsider Judgment**
    dated December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 969

   **Proposed Order**
    undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972

**Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment,**
**With Attachments,**
**(4:13-cv-00786)**
  filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 974

  <u>Attachments</u>:

   **Plaintiff's Certificate of Non-Concurrence for its Rule 59(e)**
   **Motion to Alter, Amend, and/or Reconsider Judgment**
    dated December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 977

   **Proposed Order**
    undated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 980

# TABLE OF CONTENTS
## VOLUME IV OF IV

**Appendix Page**

Plaintiff's Memorandum in Support of Its Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment,
With Exhibits,
(4:13-cv-00778)
    filed December 13, 2013 ..................................... 982

**Exhibits:**

    1.    18 C.F.R. Parts 2, 157, and 380 ........................... 996

    2.    Guidance on Repairs to Interstate Natural Gas
        Pipelines Pursuant to FERC Regulations
            dated July 2005 ................................. 1082

    3.    *Allstate Ins. Co. v. Drumheller, et al.,*
            2006 U.S. Dist. LEXIS 16138 (3d Cir. 2006) ........... 1096

Plaintiff's Memorandum in Support of Its Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment
(4:13-cv-00783)
    filed December 13, 2013 .................................... 1106

Plaintiff's Memorandum in Support of Its Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment
(4:13-cv-00785)
    filed December 13, 2013 .................................... 1120

Plaintiff's Memorandum in Support of Its Rule 59(e) Motion to Alter,
Amend, and/or Reconsider Judgment
(4:13-cv-00786)
    filed December 13, 2013 .................................... 1134

Letter to
The Honorable Matthew W. Brann from
John D. Wilburn
Re:  Requesting Expedited Ruling
(4:13-cv-00778)
        filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1148

Letter to
The Honorable Matthew W. Brann from
John D. Wilburn
Re:  Requesting Expedited Ruling
(4:13-cv-00783)
        filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1149

Letter to
The Honorable Matthew W. Brann from
John D. Wilburn
Re:  Requesting Expedited Ruling
(4:13-cv-00785)
        filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1150

Letter to
The Honorable Matthew W. Brann from
John D. Wilburn
Re:  Requesting Expedited Ruling
(4:13-cv-00786)
        filed December 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1151

Defendants Dwayne and Ann Brown's Answer to Plaintiff's
Rule 59(e) Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00778)
        filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1152

Defendants Bradley and Elizabeth Herr's Answer to Plaintiff's
Rule 59(e) Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00783)
        filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1155

**Defendants Myron and Mary Jo Herr's Answer to Plaintiff's
Rule 59(e) Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00785)**
      filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1158

**Defendants Douglas and Tessa Hilyard's Answer to Plaintiff's
Rule 59(e) Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00786)**
      filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1161

**Defendants Dwayne and Ann Brown's
Memorandum in Opposition to Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment,
With Attached Proposed Order,
(4:13-cv-00778)**
      filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1164

**Defendants Bradley and Elizabeth Herr's
Memorandum in Opposition to Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment,
With Attached Proposed Order,
(4:13-cv-00783)**
      filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1174

**Defendants Myron and Mary Jo Herr's
Memorandum in Opposition to Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment,
With Attached Proposed Order,
(4:13-cv-00785)**
      filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1184

**Defendants Douglas and Tessa Hilyard's
Memorandum in Opposition to Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment,
With Attached Proposed Order,
(4:13-cv-00786)**
      filed December 31, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1194

Plaintiff's Reply in Support of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00778)
      filed January 14, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1204

Plaintiff's Reply in Support of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00783)
      filed January 14, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1212

Plaintiff's Reply in Support of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00785)
      filed January 14, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1220

Plaintiff's Reply in Support of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00786)
      filed January 14, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1228

Plaintiff's Request for Hearing on Its Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00778)
      filed January 30, 2014  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1236

Plaintiff's Request for Hearing on Its Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00783)
      filed January 30, 2014  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1239

Plaintiff's Request for Hearing on Its Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00785)
      filed January 30, 2014  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1242

Plaintiff's Request for Hearing on Its Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00786)
      filed January 30, 2014  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1245

**Plaintiff's Motion to Set Hearing Date or Hold**
**Joint Status Conference on Plaintiff's Rule 59(e)**
**Motion to Alter, Amend, and/or Reconsider Judgment**
**(4:13-cv-00778)**
      filed February 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1248

**Plaintiff's Motion to Set Hearing Date or Hold**
**Joint Status Conference on Plaintiff's Rule 59(e)**
**Motion to Alter, Amend, and/or Reconsider Judgment**
**(4:13-cv-00783)**
      filed February 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1252

**Plaintiff's Motion to Set Hearing Date or Hold**
**Joint Status Conference on Plaintiff's Rule 59(e)**
**Motion to Alter, Amend, and/or Reconsider Judgment**
**(4:13-cv-00785)**
      filed February 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1256

**Plaintiff's Motion to Set Hearing Date or Hold**
**Joint Status Conference on Plaintiff's Rule 59(e)**
**Motion to Alter, Amend, and/or Reconsider Judgment**
**(4:13-cv-00786)**
      filed February 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1260

**Defendants' Reply to Plaintiff's Motion to Set**
**Hearing Date or Hold Joint Status Conference,**
**With Attached Proposed Order and Exhibit,**
**(4:13-cv-00778)**
      filed February 20, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1264

     <u>Exhibit:</u>

    A.    18 C.F.R. Part 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1273

**Defendants' Reply to Plaintiff's Motion to Set**
**Hearing Date or Hold Joint Status Conference,**
**With Attached Proposed Order,**
**(4:13-cv-00783)**
      filed February 20, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1275

Defendants' Reply to Plaintiff's Motion to Set
Hearing Date or Hold Joint Status Conference,
With Attached Proposed Order,
(4:13-cv-00785)
         filed February 20, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1283

Defendants' Reply to Plaintiff's Motion to Set
Hearing Date or Hold Joint Status Conference,
With Attached Proposed Order,
(4:13-cv-00786)
         filed February 20, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1291

Plaintiff's Response to Substantive Arguments
Raised in Defendants' Reply to Motion to Set Hearing
Date or Hold Joint Status Conference
(4:13-cv-00778)
         filed March 5, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1299

Plaintiff's Response to Substantive Arguments
Raised in Defendants' Reply to Motion to Set Hearing
Date or Hold Joint Status Conference
(4:13-cv-00783)
         filed March 5, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1305

Plaintiff's Response to Substantive Arguments
Raised in Defendants' Reply to Motion to Set Hearing
Date or Hold Joint Status Conference
(4:13-cv-00785)
         filed March 5, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1311

Plaintiff's Response to Substantive Arguments
Raised in Defendants' Reply to Motion to Set Hearing
Date or Hold Joint Status Conference
(4:13-cv-00786)
         filed March 5, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1317

**Defendants Douglas and Tessa Hilyard's Motion for Reconsideration,**
**With Exhibits and Attachment**
**(4:13-cv-00786)**
>    filed April 4, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1323


>    Attachment:


>    Certificate of Concurrence/Noncurrence
>> dated April 7, 2014   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1330


>    Certificate of Service
>> dated April 4, 2014   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1332


**Defendants Douglas and Tessa Hilyard's Brief in**
**Support of Their Motion for Reconsideration**
**(4:13-cv-00786)**
>    filed April 4, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1333


**Defendants Dwayne and Ann Brown's Motion for Reconsideration,**
**With Exhibits and Attachment,**
**(4:13-cv-00778)**
>    filed April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1340


>    Exhibits:


>    A.    FERC Financial Report
>> dated 2012   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1346


>    B.    Columbia Gas Modernization Program Eligible Facilities Plan
>> dated August 9, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1349


>    Attachment:


>    Certificate of Concurrence/Noncurrence
>> dated April 7, 2014   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1354

**Defendants Bradley and Elizabeth Herr's Motion for Reconsideration,**
**With Attachment,**
**(4:13-cv-00783)**
  filed April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1357

   <u>Attachment</u>:

  **Certificate of Concurrence/Noncurrence**
    dated April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1363

**Defendants Myron and Mary Jo Herr's Motion for Reconsideration,**
**With Attachment,**
**(4:13-cv-00785)**
  filed April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1366

   <u>Attachment</u>:

  **Certificate of Concurrence/Noncurrence**
    dated April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1372

**Defendants Dwayne and Ann Brown's Brief in**
**Support of Their Motion for Reconsideration**
**(4:13-cv-00778)**
  filed April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1375

**Defendants Bradley and Elizabeth Herr's Brief in**
**Support of Their Motion for Reconsideration**
**(4:13-cv-00783)**
  filed April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1382

**Defendants Myron and Mary Jo Herr's Brief in**
**Support of Their Motion for Reconsideration**
**(4:13-cv-00785)**
  filed April 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1389

**Plaintiff's Opposition to Defendants Bradley and
Elizabeth Herr's Brief in Support of Their Motion for Reconsideration,
With Exhibits,
(4:13-cv-00783)**
    filed April 11, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1396

    Exhibits:

    A.    **Letter to
          Kimberly D. Bose from
          Fredric J. George
          Re:  Requesting Waiver
                dated March 21, 2014** . . . . . . . . . . . . . . . . . . . . . . . . . . 1408

    B.    **Letter to
          Fredric J. George from
          Michael J. McGehee
          Re:  Request for Waiver
                dated March 28, 2014** . . . . . . . . . . . . . . . . . . . . . . . . . . 1411

**Plaintiff's Motion to Hold Joint Status
Conference on the Status of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00778)**
    filed May 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1415

**Plaintiff's Motion to Hold Joint Status
Conference on the Status of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00783)**
    filed May 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1419

**Plaintiff's Motion to Hold Joint Status
Conference on the Status of Plaintiff's Rule 59(e)
Motion to Alter, Amend, and/or Reconsider Judgment
(4:13-cv-00785)**
    filed May 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1423

**Plaintiff's Motion to Hold Joint Status**
**Conference on the Status of Plaintiff's Rule 59(e)**
**Motion to Alter, Amend, and/or Reconsider Judgment**
**(4:13-cv-00786)**
         filed May 7, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1427

**Plaintiff's Certificate That No Transcript of the March 7, 2014**
**Hearing on Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment Will be Ordered**
**(4:13-cv-00778)**
         filed May 23, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1431

**Plaintiff's Certificate That No Transcript of the March 7, 2014**
**Hearing on Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment Will be Ordered**
**(4:13-cv-00783)**
         filed May 23, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1434

**Plaintiff's Certificate That No Transcript of the March 7, 2014**
**Hearing on Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment Will be Ordered**
**(4:13-cv-00785)**
         filed May 23, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1437

**Plaintiff's Certificate That No Transcript of the March 7, 2014**
**Hearing on Plaintiff's Rule 59(e) Motion to Alter,**
**Amend, and/or Reconsider Judgment Will be Ordered**
**(4:13-cv-00786)**
         filed May 23, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1440

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| Plaintiff, | |
| v. | Civil Action # 4:13-cv-00778-MWB |
| 1.01 ACRES MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, *et al.,* | |
| Defendants. | |

## <u>NOTICE OF APPEAL</u>

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, gives notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39) and from the Order entered in this action on November 15, 2013 (ECF No. 42), as well as from all other adverse rulings in this case.

Dated:  November 15, 2013          Respectfully submitted,

**COLUMBIA GAS TRANSMISSION, LLC**

By Counsel

_____/s/ John D. Wilburn_____
Erin N. Fischer
PA Bar No. 93155
McGuireWoods LLP

1

625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222-3142
P: 412-667-7919
F: 412-667-7974
E-Mail:  efischer@mcguirewoods.com

*Of Counsel:*
M. Melissa Glassman (VA Bar No. 27526)
(admitted *pro hac vice*)
John D. Wilburn (VA Bar No. 41141)
(admitted *pro hac vice*)
Courtney S. Schorr (VA Bar No. 65971)
(admitted *pro hac vice*)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: mglassman@mcguirewoods.com
E-mail: jwilburn@mcguirewoods.com
E-mail: cschorr@mcguirewoods.com

*Counsel for Plaintiff*
*Columbia Gas Transmission, LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of November, 2013 a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*

    /s/ John D. Wilburn
John D. Wilburn
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: jwilburn@mcguirewoods.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### *Williamsport Division*

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| Plaintiff, | |
| v. | Civil Action # 4:13-CV-00783-MWB |
| 101 ACRES AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, *et al.,* | |
| Defendants. | |

## <u>NOTICE OF APPEAL</u>

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, gives notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39) and from the Order entered in this action on November 15, 2013 (ECF No. 42), as well as from all other adverse rulings in this case.

Dated: November 15, 2013      Respectfully submitted,

**COLUMBIA GAS TRANSMISSION, LLC**

By Counsel

      /s/ John D. Wilburn      
Erin N. Fischer
PA Bar No. 93155

1

McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222-3142
P: 412-667-7919
F: 412-667-7974
E-Mail:  efischer@mcguirewoods.com

*Of Counsel:*
M. Melissa Glassman (VA Bar No. 27526)
(admitted *pro hac vice*)
John D. Wilburn (VA Bar No. 41141)
(admitted *pro hac vice*)
Courtney S. Schorr (VA Bar No. 65971)
(admitted *pro hac vice*)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: mglassman@mcguirewoods.com
E-mail: jwilburn@mcguirewoods.com
E-mail: cschorr@mcguirewoods.com

*Counsel for Plaintiff*
*Columbia Gas Transmission, LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of November, 2013 a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*


    /s/ John D. Wilburn
John D. Wilburn
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: jwilburn@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

COLUMBIA GAS TRANSMISSION, LLC,

    Plaintiff,

    v.

1.5561 ACRES, MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, et al.,

    Defendants.

Civil Action # 4:13-CV-00785-MWB

## NOTICE OF APPEAL

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, gives notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39) and from the Order entered in this action on November 15, 2013 (ECF No. 42), as well as from all other adverse rulings in this case.

Dated: November 15, 2013    Respectfully submitted,

**COLUMBIA GAS TRANSMISSION, LLC**

By Counsel

    /s/ John D. Wilburn
Erin N. Fischer
PA Bar No. 93155
McGuireWoods LLP

1

- 7 -

625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222-3142
P: 412-667-7919
F: 412-667-7974
E-Mail: efischer@mcguirewoods.com

*Of Counsel:*
M. Melissa Glassman (VA Bar No. 27526)
(admitted *pro hac vice*)
John D. Wilburn (VA Bar No. 41141)
(admitted *pro hac vice*)
Courtney S. Schorr (VA Bar No. 65971)
(admitted *pro hac vice*)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: mglassman@mcguirewoods.com
E-mail: jwilburn@mcguirewoods.com
E-mail: cschorr@mcguirewoods.com

*Counsel for Plaintiff*
*Columbia Gas Transmission, LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of November, 2013 a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*

   /s/ John D. Wilburn

John D. Wilburn
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: jwilburn@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| Plaintiff, | |
| v. | Civil Action # 4:13-CV-00786-MWB |
| 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, et al., | |
| Defendants. | |

## <u>NOTICE OF APPEAL</u>

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, gives notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39) and from the Order entered in this action on November 15, 2013 (ECF No. 42), as well as from all other adverse rulings in this case.

Dated:  November 15, 2013          Respectfully submitted,

**COLUMBIA GAS TRANSMISSION, LLC**

By Counsel

_____/s/ John D. Wilburn_____
Erin N. Fischer

1

PA Bar No. 93155
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222-3142
P: 412-667-7919
F: 412-667-7974
E-Mail:  efischer@mcguirewoods.com

*Of Counsel:*
M. Melissa Glassman (VA Bar No. 27526)
(admitted *pro hac vice*)
John D. Wilburn (VA Bar No. 41141)
(admitted *pro hac vice*)
Courtney S. Schorr (VA Bar No. 65971)
(admitted *pro hac vice*)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: mglassman@mcguirewoods.com
E-mail: jwilburn@mcguirewoods.com
E-mail: cschorr@mcguirewoods.com

*Counsel for Plaintiff*
*Columbia Gas Transmission, LLC*

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 15th day of November, 2013 a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*

    /s/ John D. Wilburn
John D. Wilburn
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: jwilburn@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

COLUMBIA GAS TRANSMISSION,
LLC,

      Plaintiff,

      v.

1.010 ACRES, MORE OR LESS IN
PENN TOWNSHIP, YORK COUNTY,
PENNSYLVANIA, et al.,

      Defendants.

Case No. 4:13-CV-00778-MWB

## **AMENDED NOTICE OF APPEAL**

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, and pursuant to Fed. R. of App. P. 4(B)(ii), gives amended notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39), from the Order entered in this action on November 15, 2013 (ECF No. 42), and from the Order entered in this action on May 20, 2014 (ECF No. 66), as well as from all other adverse rulings in this case.

Dated:  May 22, 2014                    Respectfully submitted,

                                        **COLUMBIA GAS TRANSMISSION,
                                        LLC**

                                        By Counsel

                                        _____/s/ Anastasia P. Cordova_____
                                        Erin N. Fischer
                                        PA Bar No. 93155
                                        McGuireWoods LLP
                                        625 Liberty Avenue, 23rd Floor
                                        Pittsburgh, Pennsylvania 15222-3142
                                        P: 412-667-7919
                                        F: 412-667-7974
                                        E-Mail:  efischer@mcguirewoods.com

                                        *Of Counsel:*
                                        M. Melissa Glassman (VA Bar No. 27526)
                                        (admitted *pro hac vice*)
                                        John D. Wilburn (VA Bar No. 41141)
                                        (admitted *pro hac vice*)
                                        Anastasia P. Cordova (VA Bar No. 78936)
                                        (admitted *pro hac vice*)
                                        McGuireWoods LLP
                                        1750 Tysons Boulevard, Suite 1800
                                        Tysons Corner, Virginia 22102
                                        P: 703-712-5000
                                        F: 703-712-5050
                                        E-mail: mglassman@mcguirewoods.com
                                        E-mail: jwilburn@mcguirewoods.com
                                        E-mail: acordova@mcguirewoods.com

                                        *Counsel for Plaintiff*
                                        *Columbia Gas Transmission, LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of May, 2014, a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*


    /s/ Anastasia P. Cordova
Anastasia P. Cordova
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: acordova@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| Plaintiff, | |
| v. | Case No. 4:13-CV-00783-MWB |
| 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, et al., | |
| Defendants. | |

## <u>AMENDED NOTICE OF APPEAL</u>

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, and

pursuant to Fed. R. of App. P. 4(B)(ii), gives amended notice of its appeal to the

United States Court of Appeals for the Third Circuit from the Order entered in this

action on October 24, 2013 (ECF No. 39), from the Order entered in this action on

November 15, 2013 (ECF No. 42), and from the Order entered in this action on

May 20, 2014 (ECF No. 66), as well as from all other adverse rulings in this case.

Dated:  May 22, 2014                        Respectfully submitted,

                                            **COLUMBIA GAS TRANSMISSION,
                                            LLC**

                                            By Counsel

                                            _____/s/ Anastasia P. Cordova_____
                                            Erin N. Fischer
                                            PA Bar No. 93155
                                            McGuireWoods LLP
                                            625 Liberty Avenue, 23rd Floor
                                            Pittsburgh, Pennsylvania 15222-3142
                                            P: 412-667-7919
                                            F: 412-667-7974
                                            E-Mail:  efischer@mcguirewoods.com

                                            *Of Counsel:*
                                            M. Melissa Glassman (VA Bar No. 27526)
                                            (admitted *pro hac vice*)
                                            John D. Wilburn (VA Bar No. 41141)
                                            (admitted *pro hac vice*)
                                            Anastasia P. Cordova (VA Bar No. 78936)
                                            (admitted *pro hac vice*)
                                            McGuireWoods LLP
                                            1750 Tysons Boulevard, Suite 1800
                                            Tysons Corner, Virginia 22102
                                            P: 703-712-5000
                                            F: 703-712-5050
                                            E-mail: mglassman@mcguirewoods.com
                                            E-mail: jwilburn@mcguirewoods.com
                                            E-mail: acordova@mcguirewoods.com

                                            *Counsel for Plaintiff*
                                            *Columbia Gas Transmission, LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of May, 2014, a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*

   /s/ Anastasia P. Cordova
Anastasia P. Cordova
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: acordova@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | |
| Plaintiff, | |
| v. | Case No. 4:13-CV-00785-MWB |
| 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, et al., | |
| Defendants. | |

## <u>AMENDED NOTICE OF APPEAL</u>

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, and pursuant to Fed. R. of App. P. 4(B)(ii), gives amended notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39), from the Order entered in this action on November 15, 2013 (ECF No. 42), and from the Order entered in this action on May 20, 2014 (ECF No. 66), as well as from all other adverse rulings in this case.

Dated:  May 22, 2014                    Respectfully submitted,

                                        **COLUMBIA GAS TRANSMISSION, LLC**

                                        By Counsel

                                        _____/s/ Anastasia P. Cordova_____
                                        Erin N. Fischer
                                        PA Bar No. 93155
                                        McGuireWoods LLP
                                        625 Liberty Avenue, 23rd Floor
                                        Pittsburgh, Pennsylvania 15222-3142
                                        P: 412-667-7919
                                        F: 412-667-7974
                                        E-Mail:  efischer@mcguirewoods.com

                                        *Of Counsel:*
                                        M. Melissa Glassman (VA Bar No. 27526)
                                        (admitted *pro hac vice*)
                                        John D. Wilburn (VA Bar No. 41141)
                                        (admitted *pro hac vice*)
                                        Anastasia P. Cordova (VA Bar No. 78936)
                                        (admitted *pro hac vice*)
                                        McGuireWoods LLP
                                        1750 Tysons Boulevard, Suite 1800
                                        Tysons Corner, Virginia 22102
                                        P: 703-712-5000
                                        F: 703-712-5050
                                        E-mail: mglassman@mcguirewoods.com
                                        E-mail: jwilburn@mcguirewoods.com
                                        E-mail: acordova@mcguirewoods.com

                                        *Counsel for Plaintiff*
                                        *Columbia Gas Transmission, LLC*

2

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 22nd day of May, 2014, a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

Michael F. Faherty, Esquire
225 Market Street, Suite 304
P. O. Box 1245
Harrisburg, PA 17108-1245
*Counsel for Defendants*


<u>  /s/ Anastasia P. Cordova      </u>
Anastasia P. Cordova
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: acordova@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
*Williamsport Division*

COLUMBIA GAS TRANSMISSION,
LLC,

     Plaintiff,

     v.

1.010 ACRES, MORE OR LESS IN
PENN TOWNSHIP, YORK COUNTY,
PENNSYLVANIA, et al.,

     Defendants.

Civil Action # 4:13-CV-00786-MWB

## AMENDED NOTICE OF APPEAL

Plaintiff Columbia Gas Transmission, LLC, by its undersigned counsel, and pursuant to Fed. R. of App. P. 4(B)(ii), gives amended notice of its appeal to the United States Court of Appeals for the Third Circuit from the Order entered in this action on October 24, 2013 (ECF No. 39), from the Order entered in this action on November 15, 2013 (ECF No. 42), and from the Order entered in this action on May 20, 2014 (ECF No. 66), as well as from all other adverse rulings in this case.

Dated:  May 22, 2014   Respectfully submitted,

**COLUMBIA GAS TRANSMISSION, LLC**

By Counsel

   /s/ Anastasia P. Cordova  
Erin N. Fischer
PA Bar No. 93155
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222-3142
P: 412-667-7919
F: 412-667-7974
E-Mail:  efischer@mcguirewoods.com

*Of Counsel:*
M. Melissa Glassman (VA Bar No. 27526)
(admitted *pro hac vice*)
John D. Wilburn (VA Bar No. 41141)
(admitted *pro hac vice*)
Anastasia P. Cordova (VA Bar No. 78936)
(admitted *pro hac vice*)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
P: 703-712-5000
F: 703-712-5050
E-mail: mglassman@mcguirewoods.com
E-mail: jwilburn@mcguirewoods.com
E-mail: acordova@mcguirewoods.com

*Counsel for Plaintiff*
*Columbia Gas Transmission, LLC*

2

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 22nd day of May, 2014, a true copy of the foregoing Notice of Appeal was filed electronically and thereby served on:

> Michael F. Faherty, Esquire
> 225 Market Street, Suite 304
> P. O. Box 1245
> Harrisburg, PA 17108-1245
> *Counsel for Defendants*

>    /s/ Anastasia P. Cordova
> Anastasia P. Cordova
> McGuireWoods LLP
> 1750 Tysons Boulevard, Suite 1800
> Tysons Corner, Virginia 22102
> P: 703-712-5000
> F: 703-712-5050
> E-mail: acordova@mcguirewoods.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00778 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000, OWNED BY DWAYNE P. BROWN AND ANN M. BROWN, et al., | : | |
| Defendants. | : | |
| | • | |
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00783 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 101 ACRES, AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000EE01600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR, et al., | : | |
| Defendants. | : | |

| COLUMBIA GAS | : | Case No. 4:13-cv-00785 |
| TRANSMISSION, LLC, | : | |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.5561 ACRES, MORE OR LESS | : | |
| IN HEIDELBERG TOWNSHIP, | : | |
| YORK COUNTY, | : | |
| PENNSYLVANIA, LOCATED ON | : | |
| TAX ID# 30000ED010300000000, | : | |
| OWNED BY MYRON A. HERR | : | |
| AND MARY JO HERR, et al., | : | |
| | : | |
| Defendants. | : | |
| | • | |
| COLUMBIA GAS | : | Case No. 4:13-cv-00786 |
| TRANSMISSION, LLC, | : | |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.010 ACRES, MORE OR LESS | : | |
| IN PENN TOWNSHIP, YORK | : | |
| COUNTY, PENNSYLVANIA, | : | |
| LOCATED ON TAX | : | |
| ID# 440002800240000000, OWNED | : | |
| BY DOUGLAS W. HILYARD AND | : | |
| TESSA J. HILYARD, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

## October 24, 2013

For the following reasons, the Court denies the motions of Columbia Gas

2

Transmission, LLC (hereinafter, "Columbia Gas") for partial summary judgment and for immediate possession of certain easements.

## I.    Background

The parties agree[1] that Columbia Gas is an interstate natural gas company subject to the jurisdiction of the Federal Energy Regulatory Commission (hereinafter, "FERC"). Columbia Gas currently operates a natural gas pipeline that runs in and around York County, Pennsylvania. The pipeline has been designated "Line 1655," and the Court will adopt this nomenclature.

Columbia Gas comes to this Court because it wants to replace and reroute a portion of Line 1655 away from the Line's current location, which has become heavily populated.[2] Columbia Gas envisions a new and improved Line 1655 that, at the widest point, diverts approximately a quarter-mile from the old one. This diversion in effect takes Line 1655 out from under the land where Columbia Gas

---

[1] The facts recited are taken from the parties's respective L.R. 56.1 statements of fact filed in each case, as well as from the parties admissions at oral argument on October 10, 2013.

[2] "[Line 1655] was placed in service about 60 years ago. . . . It goes through what has now been identified as a high consequence area, an HCA. . . . To sort of put it in laymen's terms, you put a pipeline in the ground in 1950 and the communities grow up around it. So it's no longer an area that you necessarily want to have a pipeline in, particularly one that is 60 years old." (Oral Ar. Tr., Oct. 10, 2013).

3

currently has pipeline easements, and removes it some distance yonder to plots where Columbia Gas does not possess such easements. Columbia Gas negotiated with distant landowners to obtain the easements necessary to construct the replacement Line 1655, but no satisfactory arrangement could be struck with respect to the property of at least four landowning couples: Dwayne and Ann Brown; Bradley and Elizabeth Herr; Myron and Mary Jo Herr; and Douglas and Tessa Hilyard. Negotiations having failed, in March, 2013, Columbia Gas filed suit in this Court, naming the land of the four couples and the couples themselves as defendants (hereinafter, the "landowners"), and asserting the right to take the easements by power of eminent domain.

On May 24, 2013, eager to commence and complete construction of the replacement pipeline, Columbia Gas filed a motion for partial summary judgment and for immediate possession of the necessary easements.

## II.    Standard of Review

The "right to condemn the property in question" is a "threshold requirement" for awarding Columbia Gas immediate possession of the necessary easements. E. Tennessee Natural Gas Co. v. Sage, 361 F.3d 808, 825 (4th Cir. 2004). Accordingly, the Court should first determine whether Columbia Gas's motion for partial summary judgment – which purportedly establishes Columbia Gas's right to

4

condemn the easements – is meritorious. If the motion lacks merit, then there is no
need to consider the additional factors that control whether Columbia Gas is
entitled to immediate possession of the easements.

Summary judgment is appropriate where "the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a). A fact is "material" where it "might affect the
outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986). A dispute is "genuine" where "the evidence is such that
a reasonable [fact-finder]," giving credence to the evidence favoring the
nonmovant and making all reasonable inferences in the nonmovant's favor, "could
return a verdict for the nonmoving party." Id.

## III.   Discussion

Columbia Gas's argument for summary judgment sends the Court page-
flipping through the Code of Federal Regulations as follows. On or about January
7, 1983, FERC issued Columbia Gas a certificate of public convenience and
necessity (hereinafter, the "certificate") that authorizes Columbia Gas to "conduct
many routine activities . . . on a self-implementing basis without further
authorization by the Commission." (Ex. 2, ECF No. 1-4, at 2 (hereinafter, "Ex.

5

2")).[3] Among other things, the certificate automatically authorizes Columbia Gas's performance of "the activities specified in Subpart F of Part 157 of the Commission's Regulations, as amended from time to time." (Ex. 2, at 4). Subpart F of Part 157 of the Commission's Regulations provides, in turn, that as long as the project does not cost more than $11,000,000, Columbia Gas is automatically "authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility."18 C.F.R. §§ 157.203(a)-(b), 157.208(a) & (d). In relevant part, "eligible facility" includes "main line, lateral, and compressor replacements that do not qualify under § 2.55(b) of [Chapter I of C.F.R. Title 18] because they will result in an incidental increase in the capacity of main line facilities, or because they will not satisfy the location or work space requirements of § 2.55(b)." 18 C.F.R. § 157.202(b)(2)(i).

Section 2.55(b) is an exemptive provision that relieves natural gas companies from the generally applicable requirement of having to obtain a certificate of public convenience for "the construction or extension of any facilities." 15 U.S.C. § 717f(c). Specifically, it exempts "[f]acilities which constitute the replacement of existing facilities that have or will soon become

_____

[3]Citations to record documents refer to the docket in 4:13-cv-00778 unless otherwise noted.

6

physically deteriorated or obsolete, to the extent that replacement is deemed

advisable, if . . . [t]he replacement facilities . . . will be located in the same

right-of-way or on the same site as the facilities being replaced, and will be

constructed using the temporary work space used to construct the original facility."

Given these provisions, Columbia Gas argues that replacement Line 1655 is

an automatically authorized "replace[ment]" of an "eligible facility" because the

project "will not satisfy the location or work space requirements of § 2.55(b)."

That is, the diverted pipeline will <u>not</u> be "located in the same right-of-way or on

the same site as the facilities being replaced," as required by § 2.55(b), with the

upshot that the replacement Line 1655 is an "eligible facility" that Columbia Gas's

certificate automatically authorizes. (Pl. Supp. Br., ECF No. 14, at 1-6).

As far as the authority to take the necessary easements goes, Columbia Gas

relies on 15 U.S.C. §717f(h), which provides that:

> When any holder of a certificate of public convenience and necessity
> cannot acquire by contract, or is unable to agree with the owner of
> property to the compensation to be paid for, the necessary right-of-way
> to construct, operate, and maintain a pipe line or pipe lines for the
> transportation of natural gas, and the necessary land or other property,
> in addition to right-of-way, for the location of compressor stations,
> pressure apparatus, or other stations or equipment necessary to the
> proper operation of such pipe line or pipe lines, it may acquire the same
> by the exercise of the right of eminent domain in the district court of the
> United States for the district in which such property may be located, or
> in the State courts.

7

Columbia Gas argues that, taken altogether, the applicable regulations and its eminent domain authority give it the right to condemn the necessary easements.

The Court, however, sees a fly in the ointment. Specifically, the Court disagrees with Columbia Gas's position that replacement Line 1655 can be relocated approximately a quarter-mile away from the old Line 1655 to circumvent a population center and still be considered an "eligible facility."

Columbia Gas's contention (as expressed by counsel at oral argument on October 10, 2013) is that its certificate automatically authorizes relocation of replacement Line 1655 literally anywhere on earth, so long as the replacement "will not satisfy the location or work space requirements of § 2.55(b)." But this interpretation of the regulations puts an excessively expansive gloss on the common meaning of "replace," see Webster's Third New International Dictionary, Unabridged, s.v. "replace," accessed October 23, 2013, http://unabridged.merriam-webster.com ("1: to place again:  restore to a former place, position, or condition"), a term that generally does not imply significant relocation. Moreover, Columbia Gas's interpretation is seemingly contrary to the structure of the regulations, which equate the "relocation of existing facilities" with another defined term, "miscellaneous rearrangement," see 18 C.F.R. §

8

157.202(b)(6), not with "replacement[]," <u>see</u> 18 C.F.R. § 157.202(b)(2)(i). The

meaning of "replacements that do not qualify under § 2.55(b) of this chapter

because they . . . will not satisfy the location or work space requirements of §

2.55(b)," is, at best, ambiguous as it relates to Columbia Gas's replacement Line

1655.

     In the face of this ambiguity, the Court looks to the relevant agency's

interpretation of its own regulations. <u>See Decker v. Nw. Envtl. Def. Ctr.</u>, 133 S.Ct.

1326, 1337 (2013) ("When an agency interprets its own regulation, the Court, as a

general rule, defers to it unless that interpretation is plainly erroneous or

inconsistent with the regulation.") (internal quotation marks omitted). Here, the

relevant agency is FERC, which provided a fairly definitive interpretation of the

operative provisions in 2003 when it proposed new rules to give pipeline

companies greater flexibility to reconstruct pipelines during emergencies caused by

"deliberate effort[s] to disrupt the flow of natural gas." <u>See Emergency</u>

<u>Reconstruction of Interstate Natural Gas Facilities Under the Natural Gas Act</u>, 68

Fed. Reg. 4120 (proposed Jan. 17, 2003) (to be codified at 18 C.F.R. pt. 157).

     Speaking of the authority then-available to pipeline companies, the agency

explained:

     [P]art 157, subpart F, permits replacement construction that uses

9

> temporary workspace beyond the bounds of the temporary workspace previously used to construct the original facilities as necessary to install replacement facilities. These regulations also permit locating a portion of mainline, lateral, or compressor replacement facilities outside, but presumably adjacent to, an existing right-of-way where, for whatever reason, the new facilities could not be placed entirely within the original facilities' existing right-of-way. These regulations, however, do not appear to contemplate mainline construction over an entirely different route as may be necessary to circumvent the site of a disaster if immediate replacement is necessary before the original site is again available.

Emergency Reconstruction, 68 Fed. Reg. at 4122. The agency repeated this general idea a number of times: "part 157 . . . does not permit the extensive deviation from an existing right-of-way that would presumably be necessary to circumvent a restricted or quarantined area," id. at 4123; "[part 157] was broadened incrementally in 1999 to [allow] mainline replacements . . . that . . . did not lie within the original facilities' footprint, and consequently were outside of the section 2.55(b) replacement parameters . . . [but] this modification in the breadth of eligible facilities did not contemplate the more extensive rerouting that would be required to reach around a cordoned accident area," id.; "[the 1999 broadening of part 157] recognized the need to grant natural gas companies the flexibility to act under blanket certificate authority to replace facilities where construction of new facilities might spill over the original temporary workspace or permanent right-of-way . . . [but did not] envision[] replacement of facilities outside the

10

existing right-of-way by the creation of an entirely new route due to the need to circumvent an accident site," id. at 4123 n.20.

Part 157 ultimately was amended to give pipeline companies additional authority during emergencies, see 68 Fed. Reg. 31596 (May 19, 2003), but Columbia Gas concedes that there is no emergency here (Oral Ar. Tr., Oct. 10, 2013). Accordingly, Columbia Gas must rely on the provisions of Part 157 that FERC interpreted in its 2003 notice of proposed rulemaking, quoted at length supra.

Applying the regulations as interpreted by FERC (the Court does not find FERC's interpretation "plainly erroneous or inconsistent with the regulation") to replacement Line 1655, it is plain that the project is not automatically authorized as "replace[ment]" of an "eligible facility" pursuant to 18 C.F.R. §§157.202(b)(2)(i) & 157.208(a). The right-of-way necessary for replacement Line 1655 is not "outside, but . . . adjacent to" old Line 1655's right-of-way; it does not merely "spill over [from] the original temporary workspace or permanent right-of-way." Rather, Columbia Gas is avowedly rerouting replacement Line 1655 to avoid a congested area, necessitating a new right-of-way approximately a quarter-mile distant. It is, to paraphrase, "creat[ing] . . . an entirely new route due to the need to circumvent [a congested area]." Accordingly, replacement Line 1655 cannot be

11

properly characterized as the "replace[ment]" of an "eligible facility."

For that reason alone, Columbia Gas's motion for partial summary judgment must be denied, and because Columbia Gas has not established the right to condemn the necessary easements at this time, its motion for immediate possession must also be denied.[4]

Since Columbia Gas has expressly disavowed that replacement Line 1655 constitutes a "miscellaneous rearrangement" (Oral Ar. Tr., Oct. 10, 2013) – defined in relevant part by regulation as "any rearrangement of a facility . . ., including . . . relocation of existing facilities: . . . (ii) [w]hen required by . . . encroachment of

---

[4]The Court notes two things. First, defendants Bradley E. Herr and Elizabeth M. Herr (and their property) failed to respond to Columbia Gas's motion for partial summary judgment. In accordance with Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168 (3d Cir. 1990), and L.R. 7.6 & 56.1, this effects a "waiver of the [Herr's] right to controvert the facts asserted by [Columbia Gas] in the motion for summary judgment or the supporting material accompanying it." Anchorage Assoc., 922 F.2d at 175-76. This does not result in Columbia Gas's victory on the motion, however, because even accepting that all of the facts asserted by Columbia Gas are undisputed, the analysis supra reveals that Columbia Gas is not entitled to judgment as a matter of law. Id. at 176.

Second, for those defendants other than Bradley E. Herr and Elizabeth M. Herr, the Court is inclined to deny Columbia Gas's motion for partial summary judgment at this time for the additional reason that the defendants should be given the opportunity to properly controvert Columbia Gas's assertion that the replacement Line 1655 project meets the cost requirements of 18 C.F.R. § 157.208(d), including the opportunity for additional discovery beyond the 60 days allowed after the July 9, 2013 case management conference. See Fed. R. Civ. P. 16(b)(4) & 56(e)(1).

residential, commercial, or industrial areas" – the Court does not consider whether the replacement Line 1655 project could have been automatically authorized as such.[5]

## IV. Conclusion

For the foregoing reasons, the Court denies the motions of Columbia Gas Transmission, LLC (hereinafter, "Columbia Gas") for partial summary judgment and for immediate possession of certain easements.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[5]Both parties apparently agree that a "miscellaneous rearrangement" of facilities can be performed only on the same property as the existing facilities. (See Def. Opp'n Br., ECF 19, at 7-8; Oral Ar. Tr., Oct. 10, 2013). It is not clear to the Court why this should be so. See 18 C.F.R. § 157.202(b)(6) (listing three characteristics of "miscellaneous rearrangements" in the disjunctive, indicating that the first listed characteristic – that the rearrangement occur "(i) on the same property" – is not required if one of the other two apply). See also Texas E. Transmission Corp., 82 FERC P 62071 (1998) (holding that relocation of pipeline "35 feet to the northeast of the existing pipeline and [affecting] approximately 3.51 acres of land and one landowner, in addition to [the landowner of the location of the existing facilities and requiring] new permanent right-of-way," qualified as "miscellaneous rearrangement").

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00778 |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000, OWNED BY DWAYNE P. BROWN AND ANN M. BROWN, et al., | : | |
| | : | |
|     Defendants. | : | |
| | • | |
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00783 |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 101 ACRES, AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000EE01600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR, et al., | : | |
| | : | |
|     Defendants. | : | |

|  |  |  |
|---|---|---|
| • | | |
| COLUMBIA GAS | : | Case No. 4:13-cv-00785 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.5561 ACRES, MORE OR LESS | : | |
| IN HEIDELBERG TOWNSHIP, | : | |
| YORK COUNTY, | : | |
| PENNSYLVANIA, LOCATED ON | : | |
| TAX ID# 30000ED010300000000, | : | |
| OWNED BY MYRON A. HERR | : | |
| AND MARY JO HERR, et al., | : | |
| | : | |
|     Defendants. | : | |
| • | | |
| COLUMBIA GAS | : | Case No. 4:13-cv-00786 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.010 ACRES, MORE OR LESS | : | |
| IN PENN TOWNSHIP, YORK | : | |
| COUNTY, PENNSYLVANIA, | : | |
| LOCATED ON TAX | : | |
| ID# 440002800240000000, OWNED | : | |
| BY DOUGLAS W. HILYARD AND | : | |
| TESSA J. HILYARD, et al., | : | |
| | : | |
|     Defendants. | : | |

## ORDER

AND NOW, this 24th day of October, 2013, it is hereby ORDERED in

accordance with a memorandum of this same date:

1. The motions of Columbia Gas Transmission, LLC for partial summary judgment and for immediate possession of certain easements (4:13-cv-00778, ECF No. 12; 4:13-cv-00783, ECF No. 13; 4:13-cv-00785, ECF No. 16; 4:13-cv-00786, ECF No. 16) are DENIED.

2. A telephonic status conference in this matter is scheduled for November 5, 2013, at 10:00 a.m. Plaintiff's counsel shall initiate a conference call. The Court may be reached in chambers at 570-323-9772.

                              BY THE COURT:

                              s/ Matthew W. Brann
                              Matthew W. Brann
                              United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS | : | Case No. 4:13-cv-00778 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.01 ACRES, MORE OR LESS | : | |
| IN PENN TOWNSHIP, YORK | : | |
| COUNTY, PENNSYLVANIA, | : | |
| LOCATED ON TAX | : | |
| ID# 440002800150000000, OWNED | : | |
| BY DWAYNE P. BROWN AND | : | |
| ANN M. BROWN, et al., | : | |
| | : | |
|     Defendants. | : | |
| | • | |
| COLUMBIA GAS | : | Case No. 4:13-cv-00783 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 101 ACRES, AND 41,342 SQ. FT. | : | |
| MORE OR LESS IN HEIDELBERG | : | |
| TOWNSHIP, YORK COUNTY, | : | |
| PENNSYLVANIA, LOCATED ON | : | |
| TAX ID# 30000EE01600000000, | : | |
| OWNED BY BRADLEY E. HERR | : | |
| AND ELIZABETH M. HERR, et al., | : | |
| | : | |
|     Defendants. | : | |

|  | : |  |
| COLUMBIA GAS | : | Case No. 4:13-cv-00785 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.5561 ACRES, MORE OR LESS | : | |
| IN HEIDELBERG TOWNSHIP, | : | |
| YORK COUNTY, | : | |
| PENNSYLVANIA, LOCATED ON | : | |
| TAX ID# 30000ED010300000000, | : | |
| OWNED BY MYRON A. HERR | : | |
| AND MARY JO HERR, et al., | : | |
| | : | |
|     Defendants. | : | |
|  | : |  |
| COLUMBIA GAS | : | Case No. 4:13-cv-00786 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.010 ACRES, MORE OR LESS | : | |
| IN PENN TOWNSHIP, YORK | : | |
| COUNTY, PENNSYLVANIA, | : | |
| LOCATED ON TAX | : | |
| ID# 440002800240000000, OWNED | : | |
| BY DOUGLAS W. HILYARD AND | : | |
| TESSA J. HILYARD, et al., | : | |
| | : | |
|     Defendants. | : | |

## ORDER

AND NOW, this 15th day of November, 2013, in light of:

1.    The Court's Memorandum and Order of October 24, 2013 denying the

motions of plaintiff Columbia Gas Transmission, LLC for partial summary

judgment;

2. A November 5, 2013 status conference between the parties and the Court at

which it was agreed that the analysis underlying the Court's October 24,

2013 Memorandum supports a decision to grant summary judgment in favor

of the respective defendants;

it is hereby ORDERED:

1. The motion of defendants for summary judgment in 4:13-cv-00778 (ECF

No. 20) is GRANTED; defendants's motion at ECF No. 28 is DENIED as

moot; final judgment is entered in favor of defendants and against plaintiff;

the Clerk of Court is directed to close the case file.

2. The motion of defendants to set aside default in 4:13-cv-00783 (ECF No.

25) is GRANTED; defendants's motion for summary judgment (ECF No.

28) is GRANTED; all other pending motions (ECF Nos. 16, 19, 23) are

DENIED as moot; final judgment is entered in favor of defendants and

against plaintiff; the Clerk of Court is directed to close the case file.

3. The motion of defendants for summary judgment in 4:13-cv-00785 (ECF

No. 23) is GRANTED; defendants's motion at ECF No. 30 is DENIED as

moot; final judgment is entered in favor of defendants and against plaintiff;

the Clerk of Court is directed to close the case file.

4.    The motion of defendants for summary judgment in 4:13-cv-00786 (ECF No. 23) is GRANTED; defendants's motion at ECF No. 29 is DENIED as moot; final judgment is entered in favor of defendants and against plaintiff; the Clerk of Court is directed to close the case file.


BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00778 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000, OWNED BY DWAYNE P. BROWN AND ANN M. BROWN, et al., | : | |
| | : | |
| Defendants. | : | |
| | • | |
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00783 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 101 ACRES, AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000EE01600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR, et al., | : | |
| | : | |
| Defendants. | : | |

|  | • |  |
| COLUMBIA GAS | : | Case No. 4:13-cv-00785 |
| TRANSMISSION, LLC, | : |  |
|     Plaintiff | : |  |
|  | : | (Judge Brann) |
|     v. | : |  |
|  | : |  |
| 1.5561 ACRES, MORE OR LESS | : |  |
| IN HEIDELBERG TOWNSHIP, | : |  |
| YORK COUNTY, | : |  |
| PENNSYLVANIA, LOCATED ON | : |  |
| TAX ID# 30000ED010300000000, | : |  |
| OWNED BY MYRON A. HERR | : |  |
| AND MARY JO HERR, et al., | : |  |
|  | : |  |
|     Defendants. | : |  |
|  | • |  |
| COLUMBIA GAS | : | Case No. 4:13-cv-00786 |
| TRANSMISSION, LLC, | : |  |
|     Plaintiff | : |  |
|  | : | (Judge Brann) |
|     v. | : |  |
|  | : |  |
| 1.010 ACRES, MORE OR LESS | : |  |
| IN PENN TOWNSHIP, YORK | : |  |
| COUNTY, PENNSYLVANIA, | : |  |
| LOCATED ON TAX | : |  |
| ID# 440002800240000000, OWNED | : |  |
| BY DOUGLAS W. HILYARD AND | : |  |
| TESSA J. HILYARD, et al., | : |  |
|  | : |  |
|     Defendants. | : |  |

## ORDER

## May 20, 2014

In accordance with the Memorandum filed this same date **IT IS HEREBY**

**ORDERED**:

1.   Plaintiff's motion to alter or amend judgment in 4:13-cv-00778 (ECF No. 47) is DENIED; defendants's motion at ECF No. 60 is DENIED as moot; and plaintiff's motion at ECF No. 63 is DENIED as moot.

2.   Plaintiff's motion to alter or amend judgment in 4:13-cv-00783 (ECF No. 47) is DENIED; defendants's motion at ECF No. 60 is DENIED as moot; and plaintiff's motion at ECF No. 64 is DENIED as moot.

3.   Plaintiff's motion to alter or amend judgment in 4:13-cv-00785 (ECF No. 50) is DENIED; defendants's motion at ECF No. 63 is DENIED as moot; and plaintiff's motion at ECF No. 66 is DENIED as moot.

4.   Plaintiff's motion to alter or amend judgment in 4:13-cv-00786 (ECF No. 49) is DENIED; defendants's motion at ECF No. 62 is DENIED as moot; and plaintiff's motion at ECF No. 65 is DENIED as moot.

                                        BY THE COURT:

                                        s/ Matthew W. Brann
                                        Matthew W. Brann
                                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS<br>TRANSMISSION, LLC,<br>    Plaintiff | : <br> : <br> : | Case No. 4:13-cv-00778 |
| | : | (Judge Brann) |
|     v. | : <br> : | |
| 1.01 ACRES, MORE OR LESS<br>IN PENN TOWNSHIP, YORK<br>COUNTY, PENNSYLVANIA,<br>LOCATED ON TAX<br>ID# 440002800150000000, OWNED<br>BY DWAYNE P. BROWN AND<br>ANN M. BROWN, et al., | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| | : | |
|     Defendants. | : <br> • | |
| COLUMBIA GAS<br>TRANSMISSION, LLC,<br>    Plaintiff | : <br> : <br> : | Case No. 4:13-cv-00783 |
| | : | (Judge Brann) |
|     v. | : <br> : | |
| 101 ACRES, AND 41,342 SQ. FT.<br>MORE OR LESS IN HEIDELBERG<br>TOWNSHIP, YORK COUNTY,<br>PENNSYLVANIA, LOCATED ON<br>TAX ID# 30000EE01600000000,<br>OWNED BY BRADLEY E. HERR<br>AND ELIZABETH M. HERR, et al., | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| | : | |
|     Defendants. | : | |

| | | |
|---|---|---|
| COLUMBIA GAS | : | Case No. 4:13-cv-00785 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.5561 ACRES, MORE OR LESS | : | |
| IN HEIDELBERG TOWNSHIP, | : | |
| YORK COUNTY, | : | |
| PENNSYLVANIA, LOCATED ON | : | |
| TAX ID# 30000ED010300000000, | : | |
| OWNED BY MYRON A. HERR | : | |
| AND MARY JO HERR, et al., | : | |
| | : | |
|     Defendants. | : | |
| | • | |
| COLUMBIA GAS | : | Case No. 4:13-cv-00786 |
| TRANSMISSION, LLC, | : | |
|     Plaintiff | : | |
| | : | (Judge Brann) |
|     v. | : | |
| | : | |
| 1.010 ACRES, MORE OR LESS | : | |
| IN PENN TOWNSHIP, YORK | : | |
| COUNTY, PENNSYLVANIA, | : | |
| LOCATED ON TAX | : | |
| ID# 440002800240000000, OWNED | : | |
| BY DOUGLAS W. HILYARD AND | : | |
| TESSA J. HILYARD, et al., | : | |
| | : | |
|     Defendants. | : | |

## MEMORANDUM

### May 20, 2014

For the following reasons, the Court denies the motions of Columbia Gas

Transmission, LLC (hereinafter, "Columbia Gas") to alter or amend judgment.

## I.    Background

On December 13, 2013, plaintiff Columbia Gas timely moved to alter or

amend judgment under Fed. R. Civ. P. 59(e). The judgment in question is the

Court's November 15, 2013 grant of summary judgment in favor of the various

defendant landowners. The Court's reasons for granting summary judgment are set

forth in an October 24, 2013 memorandum opinion, which is available on the four

dockets set forth in the caption and at 2013 WL 5773414.

To avoid redundancy, the Court assumes familiarity with its previous

opinion. In short, faced with ambiguous regulatory provisions, 18 C.F.R. §§

157.202(b)(2)(I) & 157.208(a), the Court deferred to the Federal Energy

Regulatory Commission's (hereinafter, "FERC") interpretation of its own

regulations and held that Columbia Gas's Line 1655 project in York County,

Pennsylvania does not constitute a "replacement" of existing pipeline because the

project involves rerouting the pipeline around a densely populated area. Corollary

to this holding, the Line 1655 project does not qualify for pre-authorization under

Columbia Gas's certificate of public convenience and necessity (hereinafter,

Columbia Gas's "blanket certificate"), and Columbia Gas lacks authority to

condemn pipeline easements from the landowners as necessary to complete Line

3

1655 project. Accordingly, the Court granted summary judgment in favor of the defendant landowners, who seek to prevent Columbia Gas's taking of the easements by condemnation.

Columbia Gas's motion to alter or amend judgment is prompted by FERC's Final Rule entitled Revisions to Auxiliary Installations, Replacement Facilities, and Siting and Maintenance Regulations, issued on November 22, 2013, just one week after the Court's final order in the landowners's favor. 78 Fed. Reg. 72794 (Dec. 4, 2013) (to be codified at 18 C.F.R. §§ 157 & 380). In a footnote to the discussion of the new Rule, FERC states the following:

> We note that in instances where a pipeline company needs to rely on its Part 157 certificate to construct auxiliary or replacement facilities because they do not satisfy the location or work space limitations of section 2.55, the Part 157 blanket certificate regulations impose no limitations on the placement of the facilities. While the Commission has indicated previously that it is contemplated that replacement facilities constructed under blanket authority would usually be located adjacent to, if not within, an existing right-of-way, sections 157.202(b)(2)(i) and 157.210 permit the construction of non-main line facilities and main line facilities, respectively, without restriction on their location. For example, a company can rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be located at considerable distance from the old pipeline in order to avoid a housing development constructed since the old pipeline was installed or to install auxiliary facilities such as anodes offset from the existing right-of-way to provide cathodic protection.

Revisions to Auxiliary Installations, 78 Fed. Reg. at 72,804 n.78. Columbia Gas argues that this footnote runs contrary to the Court's decision, which, based on

4

what FERC concedes it had "indicated previously," held that a company <u>could not</u>, in FERC's words, "rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be located at considerable distance from the old pipeline in order to avoid a housing development constructed since the old pipeline was installed . . . ." <u>Id.</u> Accordingly, Columbia Gas seeks reversal of the Court's holding and an order vacating judgment in favor of the landowners.[1]

---

[1]Columbia Gas also advances the risible argument that "a quarter-mile distance between two objects qualifies the objects as adjacent to each other as a matter of law." (Pl. Supp. Br., Dec. 13, 2013, ECF No. 48 at 10). Even if this were true <u>per force</u> – and none of the cases cited by Columbia Gas establish that it is – the point is feckless because the Court's holding, contrary to Columbia Gas's mischaracterization, does not rise and fall based on the definition of adjacency. The Court's holding, rather, turns on what FERC had "indicated previously" with respect to whether a pipeline could be rerouted around an sizable obstacle and still be classified as a "replacement."

Recall that the Court drew FERC's interpretation of the regulations relevant to this case from a proposed rule intended to expedite pipeline reconstruction caused by "a deliberate effort to disrupt the flow of natural gas," <u>i.e.</u>, terrorism. <u>See Emergency Reconstruction of Interstate Natural Gas Facilities Under the Natural Gas Act</u>, 68 Fed. Reg. 4120 (proposed Jan. 17, 2003) (to be codified at 18 C.F.R. pt. 157). The proposed rule arose from an April 22, 2002 "technical conference to consider whether to, or how to, clarify, expedite, and streamline permitting and approvals for interstate pipeline reconstruction following a sudden unanticipated service disruption." <u>Emergency Reconstruction</u>, 68 Fed. Reg. at 4120.

Reviewing the existing authority that a blanket certificate holder such as Columbia Gas might use in response to an emergency, FERC opined, "These regulations [<u>i.e.</u>, the regulations under which Columbia Gas claims automatic authority to undertake the Line 1655 project] . . . do not appear to contemplate mainline construction over an entirely different route as may be necessary to

5

## II. Standard of Review

As Columbia Gas recognizes, "[a] proper Rule 59(e) motion [to alter or amend a judgment] . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam).

Columbia Gas vacillates on the grounds for its motion (see Pl. Supp. Br., Dec. 13, 2013, ECF No. 48 (not stating grounds with particularity); Pl. Reply Br.,

---

circumvent the site of a disaster if immediate replacement is necessary before the original site is again available." Id. at 4122. FERC further explained that the regulations under which Columbia Gas claims pre-authorization are intended to meet gas companies's need for "flexibility . . . to replace facilities where construction of new facilities might spill over the original temporary workspace or permanent right-of-way," and do not provide authority for the "replacement of facilities outside the existing right-of-way by the creation of an entirely new route due to the need to circumvent an accident site." Id. at 4123 n.20 (emphasis added).

In considering the dimensions the agency had in mind, it is worth remembering that the "Ground Zero" site in Manhattan (9/11 being the terrorist attack that likely prompted the conferences culminating in FERC's proposed rule) measures sixteen acres, a mere one-quarter of the quarter-mile distance Columbia Gas seeks to move Line 1655. Dan Barry, New York Carries On, but Test of Its Grit Has Just Begun, N.Y. Times, Oct. 11, 2001, at B1 ("A month later, the extraordinary devastation of a 16-acre tract in Lower Manhattan has become almost an accepted condition by a city turning its attention to war"). This is not to say the physical damage wrought by 9/11 was not wider (indeed there was a "restricted zone" surrounding the World Trade Center complex), but merely to suggest FERC's likely view at the time: that a quarter-mile relocation of pipeline was not pre-authorized under the regulations cited by Columbia Gas.

6

Jan. 14, 2014, ECF No. 54 at 2 (Columbia moves . . . based principally on the third

rationale); id. at 3 n.2 ("Columbia argues, in the alternative, that [FERC's Nov. 22,

2013 footnote] is an intervening change in FERC regulations.")), ultimately

deciding that straight-faced characterization FERC's footnote as "controlling law"

is a forlorn hope and resting on the argument that the Court based its judgment on a

clear error of law.

## III.   Discussion

Notwithstanding the landowner defendants's vain attempts to argue

otherwise, it is clear that FERC would now have the Court hold that Columbia

Gas's Line 1655 project is eligible for pre-authorization as a "replacement" of an

"eligible facility," despite FERC's pre- November 22, 2013 statements to the

contrary.

What effect under Fed. R. Civ. P. 59(e), then, should be given to FERC's

about-face? Citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467

U.S. 837 (1984), Columbia Gas asserts that FERC's November 22, 2013 footnote

"is entitled to deference," and "unequivocally establishes that the Court's

interpretation of the term 'eligible facility' to include a limitation on distance is

incorrect." (Pl. Supp. Br. at 10). Having committed clear error, argues Columbia

Gas, the Court should correct course.

7

The Court disagrees. Had they read <u>Decker v. Nw. Envtl. Def. Ctr.</u>, 133 S.Ct. 1326 (2013), an opinion cited by the Court in its October 24, 2013 memorandum, Columbia Gas's counsel would know that the relevant principle is <u>Auer</u> deference (after <u>Auer v. Robbins</u>, 519 U.S. 452 (1997)), not <u>Chevron</u> deference. More importantly, <u>Auer</u> deference is sometimes "inappropriate," such as "when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question,'" suspicion which "might [arise] when the agency's interpretation conflicts with a prior interpretation." <u>Christopher v. SmithKline Beecham Corp.</u>, 132 S.Ct. 2156, 2166 (2012) (quoting <u>Auer</u>, 519 U.S. at 462). Indeed "an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is entitled to considerably less deference than a consistently held agency view." <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 515 (1994) (internal quotation marks omitted).

Had FERC's prior interpretation been abandoned long ago, followed by consistent adherence to the interpretation set forth in FERC's November 22, 2013 footnote, more than minimal deference to the latter interpretation might be warranted. But there is no indication that this is the case. Neither FERC nor Columbia Gas points to evidence tending to show that FERC changed its interpretation at any time prior to November 22, 2013, and despite Columbia Gas's

representation that it has "litigated this issue in other courts" (Oral Arg. Tr., Nov. 4, 2013, pg. 52), this Court is still waiting for evidence, if any, of how those courts decided the issue in Columbia Gas's (or any other companies's) favor, which, at least theoretically, could allow Columbia Gas to argue that FERC acquiesced in the decisions of those Courts. In short, Columbia Gas adduces no evidence to rebut the inference to be drawn from the circumstances – i.e., FERC's November 22, 2013 footnote does not reflect the fair and considered judgment of the agency.

Under the circumstances, the Court is not convinced that it clearly erred. Columbia Gas's attack does not point to an actual error in reasoning behind the Court's judgment. Instead, Columbia Gas asserts that the Court should wholly defer to an agency interpretation that – according to precedent that Columbia Gas ignores – is properly due very little deference, if any beyond its power to persuade. Accordingly, although FERC's November 22, 2013 footnote provides a "possible reading" of the relevant regulations, see Decker, 133 S.Ct. at 1337, it is not the only possible reading, and almost by definition fails to establish that this Court clearly erred in adopting a contrary construction.

The Court is not without humility. The United States Court of Appeals for the Third Circuit – after considering the regulatory text, this Court's memorandum, and FERC's November 22, 2013 footnote – may ultimately side with Columbia

9

Gas. Nevertheless, in this procedural posture, the absence of <u>clear</u> error proffered by Columbia Gas dictates that this Court should stand by its previous ruling.

## IV. Conclusion

For the foregoing reasons, the Court denies the motions of Columbia Gas to alter or amend judgment.

BY THE COURT:

<u>s/ Matthew W. Brann</u>
Matthew W. Brann
United States District Judge

10

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## MIDDLE DISTRICT of PENNSYLVANIA

| | |
|---|---|
| Columbia Gas Transmission, LLC | ) |
| *Plaintiffs* | ) |
| v. | )    Civil Action No.    3:13-CV-00778 |
| 1.01 Acres, More or Less in Penn Township, York, County, PA, | ) |
| et al., | )    (Judge Brann) |
| *Defendants* | ) |

### JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐   the plaintiff _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐    the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

x    other:    The motion of defendants for summary judgment (ECF No. 20) is GRANTED; final judgment is entered in favor of defendants and against plaintiff; the Clerk of Court is directed to close the case file.

This action was *(check one)*:

☐   tried by a jury with Judge or Magistrate Judge   Matthew W. Brann   presiding, and the jury has rendered a verdict.

☐   tried by Judge or Magistrate Judge _____ without a jury and the above decision

x   decided by Judge or Magistrate Judge    United States District Judge Matthew W. Brann   on a motion for

for summary judgment. Defendants' motion for summary judgment (ECF No. 20) is GRANTED; final judgment is entered in favor of defendants and against plaintiff. The Clerk is directed to close the file. (Order of 11/15/2013, ECF No. 42).

Date:    Nov 15, 2013          ACTING CLERK OF COURT, GARY L. HOLLINGER

                                 s/Kathy A. McLaughlin, Deputy Clerk

                                     *Signature of Clerk or Deputy Clerk*

**FILED
WILLIAMSPORT**

NOV 15 2013

PER _____
**DEPUTY CLERK**

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## MIDDLE DISTRICT of PENNSYLVANIA

| | | |
|---|---|---|
| Columbia Gas Transmission, LLC | ) | |
| *Plaintiffs* | ) | |
| v. | ) | Civil Action No.    4:13-CV-00783 |
| 101 Acres, and 41,342 Sq. Ft. More or Less in Heidelberg | ) | (Judge Brann) |
| Township, York County, PA, et al. | ) | |
| *Defendant*s | ) | |

### JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

x  other:  The motion of defendants for summary judgment (ECF No. 28) is GRANTED; final judgment is entered in favor of defendants and against plaintiff; the Clerk of Court is directed to close the case file.

This action was *(check one)*:
☐ tried by a jury with Judge or Magistrate Judge  Matthew W. Brann _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge or Magistrate Judge _____ without a jury and the above decision

x  decided by Judge or Magistrate Judge  United States District Judge Matthew W. Brann _____ on a motion for

for summary judgment.  Defendants' motion for summary judgment (ECF No. 28) is GRANTED; final judgment is entered in favor of defendants and against plaintiff.  The Clerk is directed to close the file.  (Order of 11/15/2013, ECF No. 42).

Date: _____ Nov 15, 2013 _____

**FILED
WILLIAMSPORT**

NOV 15 2013

PER _____

**DEPUTY CLERK**

Acting Clerk of Court, Gary L. Hollinger

s/Kathy A. McLaughlin, Deputy Clerk

_____
*Signature of Clerk or Deputy Clerk*

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## MIDDLE DISTRICT of PENNSYLVANIA

| | |
|---|---|
| Columbia Gas Transmission, LLC | ) |
| *Plaintiffs* | ) |
| v. | ) |
| 1.5561 Acres, More or Less in Heidelberg Township, York | ) |
| County, PA, et al. | ) |
| *Defendants* | ) |

Civil Action No.  4:13-CV-00785

(Judge Brann)

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐   the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

x   other:   The motion of defendants for summary judgment (ECF No. 23) is GRANTED; final judgment is entered in favor of defendants and against plaintiff; the Clerk of Court is directed to close the case file.

This action was *(check one)*:

☐  tried by a jury with Judge or Magistrate Judge _____ presiding, and the jury has rendered a verdict.

☐  tried by Judge or Magistrate Judge _____ without a jury and the above decision

x  decided by Judge or Magistrate Judge    United States District Judge Matthew W. Brann    on a motion for

for summary judgment.  Defendants' motion for summary judgment (ECF No. 23) is GRANTED; final judgment is entered in favor of defendants and against plaintiff.  The Clerk is directed to close the file.  (Order of 11/15/2013, ECF No. 45).

Date: _____ Nov 15, 2013 _____

Acting Clerk of Court, Gary L. Hollinger

s/Kathy A. McLaughlin, Deputy Clerk

_____
*Signature of Clerk or Deputy Clerk*

**FILED**
**WILLIAMSPORT**

NOV 15 2013

PER _____
**DEPUTY CLERK**

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## MIDDLE DISTRICT of PENNSYLVANIA

| | | |
|---|---|---|
| Columbia Gas Transmission, LLC | ) | |
| *Plaintiffs* | ) | |
| v. | ) | Civil Action No.   4:13-CV-00786 |
| 1.010 Acres, More or Less in Penn Township, York County, | ) | (Judge Brann) |
| Pennsylvania, et al., | ) | |
| *Defendants* | ) | |

### JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

☐  the plaintiff _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐    the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)*
_____ recover costs from the plaintiff *(name)*
_____ .

x    other:   The motion of defendants for summary judgment (ECF No. 23) is GRANTED;  final judgment is entered in favor of defendants and against plaintiff; the Clerk of Court is directed to close the case file.

This action was *(check one)*:

☐  tried by a jury with Judge or Magistrate Judge _____ presiding, and the jury has rendered a verdict.

☐  tried by Judge or Magistrate Judge _____ without a jury and the above decision

x  decided by Judge or Magistrate Judge    United States District Judge Matthew W. Brann    on a motion for

for summary judgment.  Defendants' motion for summary judgment (ECF No. 23) is GRANTED; final judgment is entered in favor of defendants and against plaintiff.  The Clerk is directed to close the file. (Order of 11/15/2013, ECF No. 44).

Date: _____ Nov 15, 2013 _____

Acting Clerk of Court, Gary L. Hollinger

s/Kathy A. McLaughlin, Deputy Clerk
_____
*Signature of Clerk or Deputy Clerk*

**FILED
WILLIAMSPORT**

NOV 15 2013

PER _____
**DEPUTY CLERK**

# ADDENDUM



UNITED STATES CODE SERVICE
Copyright © 2014 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** Current through PL 113-107, approved 5/24/14 ***

TITLE 15. COMMERCE AND TRADE
CHAPTER 15B. NATURAL GAS

**Go to the United States Code Service Archive Directory**

*15 USCS § 717f*

§ 717f.  Construction, extension, or abandonment of facilities

(a) Extension or improvement of facilities on order of court; notice and hearing.   Whenever the Commission, after notice and opportunity for hearing, finds such action necessary or desirable in the public interest, it may by order direct a natural-gas company to extend or improve its transportation facilities, to establish physical connection of its transportation facilities with the facilities of, and sell natural gas to, any person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public, and for such purpose to extend its transportation facilities to communities immediately adjacent to such facilities or to territory served by such natural-gas company, if the Commission finds that no undue burden will be placed upon such natural-gas company thereby: *Provided,* That the Commission shall have no authority to compel the enlargement of transportation facilities for such purposes, or to compel such natural-gas company to establish physical connection or sell natural gas when to do so would impair its ability to render adequate service to its customers.

(b) Abandonment of facilities or services; approval of Commission.   No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.

(c) Certificate of public convenience and necessity.
    (1) (A) No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations: *Provided, however,* That if any such natural-gas company or predecessor in interest was bona fide engaged in transportation or sale of natural gas, subject to the jurisdiction of the Commission, on the effective date of this amendatory Act, over the route or routes or within the area for which application is made and has so operated since that time, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate is made to the Commission within ninety days after the effective date of this amendatory Act. Pending the determination of any such application, the continuance of such operation shall be lawful.
        (B) In all other cases the Commission shall set the matter for hearing and shall give such reasonable notice of the hearing thereon to all interested persons as in its judgment may be necessary under rules and regulations to be pre-

scribed by the Commission; and the application shall be decided in accordance with the procedure provided in subsection (e) of this section and such certificate shall be issued or denied accordingly: *Provided, however,* That the Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application for a certificate, and may by regulation exempt from the requirements of this section temporary acts or operations for which the issuance of a certificate will not be required in the public interest.

(2) The Commission may issue a certificate of public convenience and necessity to a natural-gas company for the transportation in interstate commerce of natural gas used by any person for one or more high-priority uses, as defined, by rule, by the Commission, in the case of--

    (A) natural gas sold by the producer to such person; and

    (B) natural gas produced by such person.

(d) Application for certificate of public convenience and necessity.   Application for certificates shall be made in writing to the Commission, be verified under oath, and shall be in such form, contain such information, and notice thereof shall be served upon such interested parties and in such manner as the Commission shall, by regulation, require.

(e) Granting of certificate of public convenience and necessity.   Except in the cases governed by the provisos contained in subsection (c)(1) of this section, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of the Act [*15 USCS §§ 717* et seq.] and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.

(f) Determination of service area; jurisdiction of transportation to ultimate customers.

    (1) The Commission, after a hearing had upon its own motion or upon application, may determine the service area to which each authorization under this section is to be limited. Within such service area as determined by the Commission a natural-gas company may enlarge or extend its facilities for the purpose of supplying increased market demands in such service area without further authorization; and

    (2) If the Commission has determined a service area pursuant to this subsection, transportation to ultimate consumers in such service area by the holder of such service area determination, even if across State lines, shall be subject to the exclusive jurisdiction of the State commission in the State in which the gas is consumed. This section shall not apply to the transportation of natural gas to another natural gas company.

(g) Certificate of public convenience and necessity for service of area already being served.   Nothing contained in this section shall be construed as a limitation upon the power of the Commission to grant certificates of public convenience and necessity for service of an area already being served by another natural-gas company.

(h) Right of eminent domain for construction of pipelines, etc.   When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $ 3,000.

**HISTORY:**

(June 21, 1938, ch 556, § 7, 52 Stat. 824; Feb. 7, 1942, ch 49, 56 Stat. 83; July 25, 1947, ch 333, 61 Stat. 459; Nov. 9, 1978, P.L. 95-617, Title VI, § 608, 92 Stat. 3173; Oct. 6, 1988, P.L. 100-474, § 2, 102 Stat. 2302.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

References in text:
   "The effective date of this amendatory Act", referred to in this section, is probably intended to be a reference to the date of enactment of ch 49, which amended this section, and which was enacted on Feb. 7, 1942.

Amendments:

1942. Act Feb. 7, 1942, substituted subsec. (c) for one which read: "No natural-gas company shall undertake the construction or extension of any facilities for the transportation of natural gas to a market in which natural gas is already being served by another natural-gas company, or acquire or operate any such facilities or extensions thereof, or engage in transportation by means of any new or additional facilities, or sell natural gas in any such market, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require such new construction or operation of any such facilities or extensions thereof: *Provided, however*, That a natural-gas company already serving a market may enlarge or extend its facilities for the purpose of supplying increased market demands in the territory in which it operates. Whenever any natural-gas company shall make application for a certificate of convenience and necessity under the provisions of this subsection, the Commission shall set the matter for hearing and shall give such reasonable notice of the hearing thereon to all interested persons as in its judgment may be necessary under rules and regulations to be prescribed by the Commission. In passing on applications for certificates of convenience and necessity, the Commission shall give due consideration to the applicant's ability to render and maintain adequate service at rates lower than those prevailing in the territory to be served, it being the intention of Congress that natural gas shall be sold in interstate commerce for resale for ultimate public consumption for domestic, commercial, industrial, or any other use at the lowest possible reasonable rate consistent with the maintenance of adequate service in the public interest."; and added subsecs. (d)-(g).

1947. Act July 25, 1947, added subsec. (h).

1978. Act Nov. 9, 1978, in subsec. (c), designated the first undesignated para. as "(1)(A)", designated the second undesignated para. as "(B)", and added para. (2); and in subsec. (e), substituted "(c)(1)" for "(c)".

1988. Act Oct. 6, 1988 (effective 120 days after enactment on 10/6/88, as provided by § 3 of such Act, which appears as a note to this section), in subsec. (f) inserted "(1)" preceding "The Commission", and substituted "; and" for the concluding period; and added para. (2).

Transfer of functions:
   For transfer of all executive and administrative functions of Federal Power Commission (with certain exceptions) to Chairman of that Commission, with authority in him to authorize performance by others, see Reorg. Plan No. 9 of 1950, §§ 1, 2, effective May 24, 1950, *15 Fed. Reg. 3175,* 64 Stat. 1265, which appears as *5 USCS § 903* note.
   The Federal Power Commission was terminated and its functions with regard to issuance of certificates of public convenience and necessity, including abandonment of facilities or services, and the establishment of physical connections were transferred to the Federal Energy Regulatory Commission by *42 USCS §§ 7172(a)(1)(D)* and *7293.*

Enforcement functions of Secretary or other official in Department of Energy and Commission, Commissioners, or other official in Federal Energy Regulatory Commission related to compliance with certificates of public convenience and necessity issued under this section with respect to pre-construction, construction, and initial operation of transportation system for Canadian and Alaskan natural gas were transferred to the Federal Inspector, Office of Federal Inspector for the Alaska Natural Gas Transportation System, until the first anniversary of date of initial operation of the Alaska Natural Gas Transportation System; see Reorg. Plan No. 1 of 1979, §§ 102(d), 203(a), *44 Fed. Reg. 33663, 33666,* 93 Stat. 1373, 1376, effective July 1, 1979, which appears as *15 USCS § 719e* note.

Other provisions:
**Effective date of Act Oct. 6, 1988.** Act Oct 6, 1988, P.L. 100-474, § 3, 102 Stat. 2302, provides: "The provisions of this Act [amending subsec. (f) of this section and adding *15 USCS § 717w* note] shall become effective one hundred and twenty days after the date of enactment.".



UNITED STATES CODE SERVICE
Copyright © 2014 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** Current through PL 113-107, approved 5/24/14 ***

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 85. DISTRICT COURTS; JURISDICTION

**Go to the United States Code Service Archive Directory**

*28 USCS § 1331*

THE CASE NOTES SEGMENT OF THIS DOCUMENT HAS BEEN SPLIT INTO 2 DOCUMENTS.
THIS IS PART 1.
USE THE BROWSE FEATURE TO REVIEW THE OTHER PART(S).

§ 1331.  Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**HISTORY:**
   (June 25, 1948, ch 646, 62 Stat. 930; July 25, 1958, P.L. 85-554, § 1, 72 Stat. 415; Oct. 21, 1976, P.L. 94-574, § 2, 90 Stat. 2721; Dec. 1, 1980, P.L. 96-486, § 2(a), 94 Stat. 2369.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

Prior law and revision:
   Based on *title 28, U.S.C., 1940 ed., § 41(1)* (Mar. 3, 1911, ch. 231, § 24, P 1, 36 Stat. 1091; May 14, 1934, ch. 283, § 1, 48 Stat. 775; Aug. 21, 1937, ch. 726, § 1, 50 Stat. 738; Apr. 20, 1940, ch. 117, 54 Stat. 143).
   Jurisdiction of federal questions arising under other sections of this chapter is not dependent upon the amount in controversy. (See annotations under former *section 41 of title 28, U.S.C.A.*, and 35 C.J.S., p. 833 et seq., Sec. 30-43. See, also, reviser's note under section 1332 of this title.)
   Words "wherein the matter in controversy exceeds the sum or value of $ 3,000, exclusive of interest and costs," were added to conform to rulings of the Supreme Court. See construction of provision relating to jurisdictional amount requirement in cases involving a Federal question in *United States v. Sayward, 16 S.Ct. 371, 160 U.S. 493, 40 L.Ed. 508; Fishback v. Western Union Tel. Co., 16 S.Ct. 506, 161 U.S. 96, 40 L.Ed. 630;* and *Halt v. Indiana Manufacturing Co., 1900, 20 S.Ct. 272, 176 U.S. 68, 44 L.Ed. 374.*
   Words "all civil actions" were substituted for "all suits of a civil nature, at common law or in equity" to conform with *Rule 2 of the Federal Rules of Civil Procedure.*
   Words "or treaties" were substituted for "or treaties made, or which shall be made under their authority," for purposes of brevity.

The remaining provisions of *section 41(1) of title 28, U.S.C.*, 1940 ed., are incorporated in sections 1332, 1341, 1342, 1345, 1354, and 1359 of this title.

Changes were made in arrangement and phraseology.

**Amendments:**

1958. Act July 25, 1958 (applicable to actions commenced after 7/25/1958, as provided by § 3 of such Act, which appears as a note to this section), in the section catchline, inserted "; costs"; designated the existing provisions as subsec. (a); in subsec. a, as so designated, substituted "$ 10,000" for "$ 3,000"; and added subsec. (b).

1976. Act Oct. 21, 1976, in subsec. (a), inserted ", except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity".

1980. Act Dec. 1, 1980 (applicable to any civil action pending on the date of enactment, as provided by § 4 of such Act, which appears as a note to this section), substituted this section and catchline for ones which read:

"§ 1331. Federal question; amount in controversy; costs

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $ 10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

"(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $ 10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.".

**Other provisions:**

   **Application of July 25, 1958 amendment.** Act July 25, 1958, P.L. 85-554, § 3, 72 Stat. 415, provided: "This Act [amending *28 USCS §§ 1331, 1332, prec. 1441, 1445*] shall apply only in the case of actions commenced after the date of the enactment of this Act [enacted July 25, 1958].".

   **Application of Dec. 1, 1980 amendments.** Act Dec. 1, 1980, P.L. 96-486, § 4, 94 Stat. 2370, provided: "This Act [amending *28 USCS §§ 1331, 1332, prec. 1441, 1445*] shall apply to any civil action pending on the date of enactment of this Act.".



UNITED STATES CODE SERVICE
Copyright © 2014 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** Current through PL 113-108, approved 5/30/14 ***

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 83. COURTS OF APPEALS

**Go to the United States Code Service Archive Directory**

*28 USCS § 1291*

THE CASE NOTES SEGMENT OF THIS DOCUMENT HAS BEEN SPLIT INTO 2 DOCUMENTS.
THIS IS PART 1.
USE THE BROWSE FEATURE TO REVIEW THE OTHER PART(S).

§ 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this *title [28 USCS §§ 1292(c)* and (d) and 1295].

**HISTORY:**
    (June 25, 1948, ch 646, 62 Stat. 929; Oct. 31, 1951, ch 655, § 48, 65 Stat. 726; July 7, 1958, P.L. 85-508, § 12(e), 72 Stat. 348; April 2, 1982, P.L. 97-164, Title I, Part A, § 124, 96 Stat. 36.)

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

Prior law and revision:
    Based on *title 28, U.S.C., 1940 ed., §§ 225(a), 933(a)(1)*, and *section 1356 of title 48, U.S.C.*, 1940 ed., Territories and Insular Possessions, and sections 61 and 62 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, § 128, 36 Stat. 1133; Aug. 24, 1912, ch. 390, § 9, 37 Stat. 566; Jan. 28, 1915, ch. 22, § 2, 38 Stat. 804; Feb. 7, 1925, ch. 150, 43 Stat. 813; Sept. 21, 1922, ch. 370, § 3, 42 Stat. 1006; Feb. 13, 1925, ch. 229, § 1, 43 Stat. 936; Jan. 31, 1928, ch. 14, § 1, 45 Stat. 54; May 17, 1932, ch. 190, 47 Stat. 158; Feb. 16, 1933, ch. 91, § 3, 47 Stat. 817; May 31, 1935, ch. 160, 49 Stat. 313; June 20, 1938, ch. 526, 52 Stat. 779; Aug. 2, 1946, ch. 753, Sec. 412(a)(1), 60 Stat. 844).
    This section rephrases and simplifies paragraphs "First", "Second", and "Third" of *section 225(a) of title 28, U.S.C.*, 1940 ed., which referred to each Territory and Possession separately, and to sections 61 and 62 of the Canal Zone Code, section 933(a)(1) of said title relating to jurisdiction of appeals in tort claims cases, and the provisions of *section 1356 of title 48, U.S.C.*, 1940 ed., relating to jurisdiction of appeals from final judgments of the district court for the Canal Zone.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States."

(See definitive section 451 of this title.)

Paragraph "Fourth" of *section 225(a) of title 28, U.S.C.*, 1940 ed., is incorporated in section 1293 of this title.

Words "Fifth. In the United States Court for China, in all cases" in said section 225(a) were omitted. (See reviser's note under section 411 of this title.)

Venue provisions of *section 1356 of title 48, U.S.C.*, 1940 ed., are incorporated in section 1295 of this title.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1295 of this title.

In addition to the jurisdiction conferred by this chapter, the courts of appeals also have appellate jurisdiction in proceedings under Title 11, Bankruptcy, and jurisdiction to review:

(1) Orders of the Secretary of the Treasury denying an application for, suspending, revoking, or annulling a basic permit under chapter 8 of title 27;

(2) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(3) Orders of the Secretary of the Army under sections 504, 505 and 516 of title *33, U.S.C., 1940* ed., Navigation and Navigable Waters;

(4) Orders of the Civil Aeronautics Board under chapter 9 of title 49, except orders as to foreign air carriers which are subject to the President's approval;

(5) Orders under chapter 1 of title 7, refusing to designate boards of trade as contract markets or suspending or revoking such designations, or excluding persons from trading in contract markets;

(6) Orders of the Federal Power Commission under chapter 12 of title 16;

(7) Orders of the Federal Security Administrator under section 371(e) of title 21, in a case of actual controversy as to the validity of any such order, by any person adversely affected thereby;

(8) Orders of the Federal Power Commission under chapter 15B of title 15;

(9) Final orders of the National Labor Relations Board;

(10) Cease and desist orders under section 193 of title 7;

(11) Orders of the Securities and Exchange Commission;

(12) Orders to cease and desist from violating section 1599 of title 7;

(13) Wage orders of the Administrator of the Wage and Hour Division of the Department of Labor under section 208 of title 29;

(14) Orders under sections 81r and 1641 of title *19, U.S.C., 1940* ed., Customs Duties.

The courts of appeals also have jurisdiction to enforce:

(1) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System, and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(2) Final orders of the National Labor Relations Board;

(3) Orders to cease and desist from violating section 1599 of title 7.

The Court of Appeals for the District of Columbia also has jurisdiction to review orders of the Post Office Department under section 576 of title 39 relating to discriminations in sending second-class publications by freight; Maritime Commission orders denying transfer to foreign registry of vessels under subsidy contract; sugar allotment orders; decisions of the Federal Communications Commission granting or refusing applications for construction permits for radio stations, or for radio station licenses, or for renewal or modification of radio station licenses, or suspending any radio operator's license.

Changes were made in phraseology.


Amendments:


1951. Act Oct. 31, 1951 inserted "the District Court of Guam".

1958. Act July 7, 1958 (effective 1/3/1959, as provided by § 12 of such Act, which appears as *28 USCS § 81A* note), deleted "the District Court for the Territory of Alaska,". For the effective date of this amendment, see the Other provisions note to this section.

1982. Act April 2, 1982 (effective 10/1/82, as provided by § 402 of such Act, which appears as *28 USCS § 171* note) inserted "(other than the United States Court Appeals for the Federal Circuit)"; and added the sentence beginning "The jurisdiction of . . . .".

Other provisions:
   **Termination of United States District Court for the District of the Canal Zone.** For termination of the United States District Court for the District of the Canal Zone at end of the "transition period", being the 30-month period beginning Oct. 1, 1979, and ending midnight March 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and Act Sept. 27, 1979, P.L. 96-70, Title II, §§ 2101, 2201-2203, 93 Stat. 493, which formerly appeared as *22 USCS §§ 3831*, and *3841-3843*, respectively.

## NOTES:

Related Statutes & Rules:
   Prize cases, allowance of appeal, *10 USCS § 7680*.
   Trademark actions, appellate jurisdiction, *15 USCS § 1121*.
   Antitrust Civil Process Act judicial proceedings subject to appeal pursuant to this section, *15 USCS § 1314*.
   Criminal cases, direct appeals to Supreme Court, and appeals to courts of appeals, *18 USCS § 3731*.
   Vesting and liquidation of Bulgarian, Hungarian, and Rumanian property, final orders or decrees of district courts of the United States reviewable as provided in this section, *22 USCS § 1631e*.
   Direct appeals to *Supreme Court, 28* USCS § 1253.
   Time for appeal, *28 USCS § 2107*.
   Procedure on appeal, *USCS Federal Rules of Appellate Procedure, Rules 1* et seq.
   Procedure on appeal, *USCS Federal Rules of Criminal Procedure, Rules 38, 46*.
   This section is referred to in *11 USCS § 305*; *15 USCS §§ 29, 57b-1, 78aa, 79y, 80a-43, 80b-14, 1314, 1719*; *16 USCS §§ 825p, 1456*; *18 USCS § 3145*; *28 USCS §§ 1295, 1334, 1452, 2072*; *31 USCS § 3733*; *39 USCS § 3016*; *42 USCS § 2000e-5*; *45 USCS §§ 153, 719, 743, 1105*; *50 USCS Appx § 17*.

 LexisNexis®

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2014, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** This document is current through the May 29, 2014 ***
*** issue of the Federal Register ***

TITLE 18 -- CONSERVATION OF POWER AND WATER RESOURCES
CHAPTER I -- FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF ENERGY
SUBCHAPTER W -- REVISED GENERAL RULES
PART 375 -- THE COMMISSION
SUBPART C -- DELEGATIONS

**Go to the CFR Archive Directory**

*18 CFR 375.308*

§ 375.308 Delegations to the Director of the Office of Energy Projects.

The Commission authorizes the Director or the Director's designee to:

(a) Take appropriate action on uncontested applications and on applications for which the only motion or notice of intervention in opposition is filed by a competing preliminary permit or exemption applicant that does not propose and substantiate materially different plans to develop, conserve, and utilize the water resources of the region for the following:

(1) Licenses (including original, new, and transmission line licenses) under part I of the Federal Power Act;

(2) Exemptions from all or part of the licensing requirements of part I of the Federal Power Act; and

(3) Preliminary permits for proposed projects.

(b) Take appropriate action on uncontested applications for:

(1) Amendments (including changes in the use or disposal of water power project lands or waters or in the boundaries of water power projects) to licenses (including original, new, and transmission line licenses) under part I of the Federal Power Act, exemptions from all or part of the requirements of part I of the Federal Power Act, and preliminary permits; and

(2) Surrenders of licenses (including original and new), exemptions, and preliminary permits.

(c) Take appropriate action on the following:

(1) Determinations or vacations with respect to lands of the United States reserved from entry, location, or other disposal under section 24 of the Federal Power Act;

(2) Transfer of a license under section 8 of the Federal Power Act;

(3) Applications for the surrender of transmission line licenses pursuant to part 6 of this chapter;

(4) Motions filed by licensees, permittees, exemptees, applicants, and others requesting an extension of time to file required submittals, reports, data, and information and to do other acts required to be done at or within a specific time

period by any rule, regulation, license, exemption, permit, notice, letter, or order of the Commission in accordance with § 385.2008 of this chapter;

(5) Declarations of intent and petitions for declaratory orders concerning the Commission's jurisdiction over a hydropower project under the Federal Power Act;

(6) New or revised exhibits, studies, plans, reports, maps, drawings, or specifications, or other such filings made voluntarily or in response to a term or condition in a preliminary permit, license, or exemption issued for a hydropower project, or in response to the requirements of an order of the Commission or presiding officer's initial decision concerning a hydropower project;

(7) Requests by applicants to withdraw, pursuant to § 385.216 of this chapter, any pleadings under part I of the Federal Power Act and any pleadings related to exemptions from all or part of part I of the Federal Power Act;

(8) Requests by licensees for exemption from:

(i) The requirement of filing FERC Form No. 80, Licensed Projects Recreation, under § 8.11 of this chapter; and

(ii) The fees prescribed in § 381.302(a) of this chapter in accordance with § 381.302(c) of this chaper and the fees in § 381.601 of this chapter, in accordance with § 381.106 of this chapter;

(9) Requests for waivers incidental to the exercise of delegated authority provided the request conforms to the requirements of § 385.2001 of this chapter;

(10) Proposals for the development of water resources projects submitted by other agencies of the Federal government for Commission review or comment. The Director shall direct comments, when necessary, to the sponsoring agency on matters including, but not limited to, the need for, and appropriate size of, any hydroelectric power installation proposed by any other agency of the Federal government;

(11) The reasonableness of disputed agency cost statements pursuant to § 4.303(e) of this chapter.

(d) Issue an order pursuant to section 5 of the Federal Power Act to cancel a preliminary permit if the permittee fails to comply with the specific terms and conditions of the permit; provided:

(1) The Director gives notice to the permittee of probable cancellation no less than 30 days prior to the issuance of the cancellation order, and

(2) The permittee does not oppose the issuance of the cancellation order.

(e) Issue an order to revoke an exemption of a small conduit hydroelectric facility from the licensing provisions of part I of the Federal Power Act granted pursuant to § 4.93 of this chapter, or an exemption of a small hydroelectric power project from the licensing provisions of part I of the Federal Power Act granted pursuant to § 4.105 of this chapter if the exemption holder fails to begin or complete actual construction of the exempted facility or project within the time specified in the order granting the exemption or in Commission regulations at § 4.94(c) or § 4.106(c) of this chapter, provided:

(1) The Director gives notice to the exemption holder by certified mail of probable revocation no less than 30 days prior to the issuance of the revocation order, and

(2) The holder of the exemption does not oppose the issuance of the revocation order.

(f) Issue an order pursuant to section 13 of the Federal Power Act to terminate a license granted under part I of the Federal Power Act if the licensee fails to commence actual construction of the project works within the time prescribed in the license, provided:

(1) The Director gives notice by certified mail to the licensee of probable termination no less than 30 days prior to the issuance of the termination order, and

(2) The licensee does not oppose the issuance of the termination order.

(g) Require licensees and applicants for water power projects to make repairs to project works, take any related actions for the purpose of maintaining the safety and adequacy of such works, make or modify emergency action plans, have inspections by independent consultants, and perform other actions necessary to comply with part 12 of this chapter or otherwise protect human life, health, property, or the environment.

18 CFR 375.308

(h) For any unlicensed or unexempted hydropower project, take the following actions:

(1) Conduct investigations to ascertain the Commission's jurisdiction,

(2) Make preliminary jurisdictional determinations, and

(3) If a project has been preliminarily determined to require a license, issue notification of the Commission's jurisdiction; require the filing of a license application; and require that actions necessary to comply with part 12 of this chapter or otherwise protect human life, health, property, or the environment are taken.

(i) Take appropriate action on uncontested settlements among non-Federal parties involving headwater benefits.

(j) Dismiss applications for licenses and approve the withdrawal of applications for hydropower project licenses, in instances where no petition for or notice of intervention contending that licensing is required under part I of the Federal Power Act has been filed and the Director determines that licensing is not required by such Part I.

(k) Reject or dismiss an application filed under Part I of the Federal Power Act or an application for an exemption from some or all of the requirements of Part I of the Federal Power Act if:

(1) An application is patently deficient under § 4.32(e)(2)(i);

(2) A revised application

(i) Does not conform to the requirements of §§ 4.32(a), 4.32(b), or 4.38, under § 4.32(d)(1) or

(ii) If revisions to an application are not timely submitted under § 4.32(e)(1)(iii); or

(3) The applicant fails to provide timely additional information, documents, or copies of submitted materials under § 4.32(g).

(l) Redesignate proceedings, licenses, and other authorizations and filings to reflect changes in the names of persons and municipalities subject to or invoking Commission jurisdiction under the Federal Power Act, where no substantive changes in ownership, corporate structure or domicile, or jurisdictional operation are involved.

(m) Determine payments for headwater benefits from the operation of Federal reservoir projects.

(n) Determine whether to allow a credit against annual charges for the use of government dams or other structures billed to licensees each year for contractual payments for the construction, operation, and maintenance of a Federal dam.

(o) Prepare and issue comments on general water policy and planning issues for the use of the Director of the Water Resources Council or the Assistant Secretaries of the Department of Energy.

(p) Prepare and transmit letters concerning power site lands to the Bureau of Land Management and the U.S. Geological Survey; respond to routine requests for information and any non-docketed correspondence; prepare and transmit letters requesting comments or additional information on applications for hydropower project licenses, preliminary permits, exemptions, amendments of licenses, permits, or exemptions, and other similar matters from Federal, state, and local agencies, from applicants, and from other appropriate persons; and prepare and transmit letters regarding whether transmission lines are works of a hydropower project and are required to be licensed.

(q) Reject an application or other filing under Section 405 of the Public Utility Regulatory Policies Act of 1978, unless accompanied by a request for waiver in conformity with § 385.2001 of this chapter, if it fails patently to comply with applicable statutory requirements or Commission rules, regulations, and orders.

(r) Pass upon petitions filed under §§ 292.210 and 292.211 of this chapter.

(s) Make any preliminary determination of inconsistency between a fish and wildlife agency's fish and wildlife recommendation and applicable law, and conduct through staff whatever consultation with the agency that is necessary or appropriate in order to attempt to resolve any inconsistency, under section 10(j) of the Federal Power Act, and to take such related actions as are required under that section.

(t) Waive the pre-filing consultation requirements in §§ 4.38 and 16.8 of this title whenever the Director, in his discretion, determines that an emergency so requires, or that the potential benefit of expeditiously considering a proposed improvement in safety, environmental protection, efficiency, or capacity outweighs the potential benefit of requiring completion of the consultation process prior to the filing of an application.

(u) Approve, on a case-specific basis, and issue such orders as may be necessary in connection with the use of alternative procedures, under § 4.34(i) of this chapter, for the development of an application for an original, new or subsequent license, exemption, or license amendment subject to the pre-filing consultation process, and assist in the pre-filing consultation and related processes.

(v) Take appropriate action on the following types of uncontested applications for authorizations and uncontested amendments to applications and authorizations and impose appropriate conditions:

(1) Applications or amendments requesting authorization for the construction or acquisition and operation of facilities that have a construction or acquisition cost less than the limits specified in column 2 of table I in § 157.208(d) of this chapter;

(2) Applications by a pipeline for the abandonment of pipeline facilities;

(3) Applications for temporary certificates for facilities pursuant to § 157.17 of this chapter;

(4) Petitions to amend certificates to conform to actual construction;

(5) Applications for temporary certificates for facilities pursuant to § 157.17 of this chapter;

(6) Dismiss any protest to prior notice filings made pursuant to § 157.205 of this chapter and involving pipeline facilities that does not raise a substantive issue and fails to provide any specific detailed reason or rationale for the objection;

(7) Applications for temporary or permanent certificates (and for amendments thereto) for the transportation, exchange or storage of natural gas, provided that the cost of construction of the applicant's related facility is less than the limits specified in column 2 of table 1 in § 157.208(d) of this chapter; and

(8) Applications for blanket certificates of public convenience and necessity pursuant to subpart F of part 157 of this chapter, including waiver of project cost limitations in §§ 157.208 and 157.215 of this chapter, and the convening of informal conferences during the 30-day reconciliation period pursuant to the procedures in § 157.205(f).

(w) Take appropriate action on the following:

(1) Any notice of intervention or petition to intervene, filed in an uncontested application for pipeline facilities;

(2) An uncontested request from one holding an authorization, granted pursuant to the Director's delegated authority, to vacate all or part of such authorization;

(3) Petitions to permit after an initial 60-day period one additional 60-day period of exemption pursuant to § 284.264(b) of this chapter where the application or extension arrives at the Commission later than 45 days after the commencement of the initial period of exemption when the emergency requires installation of facilities;

(4) Applications for extensions of time to file required reports, data, and information and to perform other acts required at or within a specific time by any rule, regulation, license, permit, certificate, or order by the Commission; and

(5) Requests for waiver of the landowner notification requirements in § 157.203(d) of this chapter.

(x) Undertake the following actions:

(1) Compute, for each calendar year, the project limits specified in table I of § 157.208 and table II of § 157.215(a) of this chapter, adjusted for inflation, and publish such limits as soon as possible thereafter in the Federal Register;

(2) Issue reports for public information purposes. Any report issued without Commission approval must:

(i) Be of a noncontroversial nature, and

(ii) Contain the statement, "This report does not necessarily reflect the view of the Commission," in bold face type on the cover;

(3) Issue and sign deficiency letters regarding natural gas applications;

(4) Accept for filing, data and reports required by Commission orders, or presiding officers' initial decisions upon which the Commission has taken no further action, if such filings are in compliance with such orders or decisions and, when appropriate, notify the filing party of such acceptance;

(5) Reject requests which patently fail to comply with the provisions of 157.205(b) of this chapter;

(6) Take appropriate action on requests or petitions for waivers of any action incidental to the exercise of delegated authority, including waiver of notice as provided in section 4(d) of the Natural Gas Act, provided the request conforms to the requirements of § 385.2001 of this chapter; and

(7) Take whatever steps are necessary to ensure the protection of all environmental resources during the construction or operation of natural gas facilities, including authority to design and implement additional or alternative measures and stop work authority.

(y) Take appropriate action on the following:

(1) Any action incidental to the exercise of delegated authority, including waiver of notice as provided in section 4(d) of the Natural Gas Act, provided the request conforms to the requirements of § 385.2001 of this chapter; and

(2) Requests or petitions for waivers of filing requirements for statements and reports under §§ 260.8 and 260.9 of this chapter.

(z) Approve, on a case-specific basis, and make such decisions and issue guidance as may be necessary in connection with the use of the pre-filing procedures in § 157.21, "Pre-filing procedures and review process for LNG terminal facilities and other natural gas facilities prior to filing of applications."

(aa) Take the following actions to implement part 5 of this chapter on or after October 23, 2003:

(1) Act on requests for approval to use the application procedures of parts 4 or 16, pursuant to § 5.3 of this chapter;

(2) Approve a potential license applicant's proposed study plan with appropriate modifications pursuant to § 5.13 of this chapter;

(3) Resolve formal study disputes pursuant to § 5.14 of this chapter; and

(4) Resolve disagreements brought pursuant to § 5.15 of this chapter.

(bb) Establish a schedule for each Federal agency or officer, or State agency or officer acting pursuant to delegated Federal authority, to issue or deny Federal authorizations required for natural gas projects subject to section 3 or 7 of the Natural Gas Act.

**HISTORY:** *[53 FR 16065,* May 5, 1988; *53 FR 21992,* June 13, 1988; *53 FR 27005,* July 18, 1988; *56 FR 23154,* May 20, 1991; *58 FR 51223,* Oct. 1, 1993; *62 FR 59802, 59812,* Nov. 5, 1997; redesignated and amended at *64 FR 73403, 73406,* Dec. 30, 1999; *68 FR 31596, 31605,* May 28, 2003; *68 FR 51070, 51142,* Aug. 25, 2003; *70 FR 60439, 60442,* Oct. 18, 2005; *71 FR 62912, 62921,* Oct. 27, 2006; *72 FR 45320, 45328,* Aug. 14, 2007]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*5 U.S.C. 551-557; 15 U.S.C. 717-717w, 3301-3432; 16 U.S.C. 791-825r, 2601-2645; 42 U.S.C. 7101-7352.*

**NOTES:** [EFFECTIVE DATE NOTE: *71 FR 62912, 62921,* Oct. 27, 2006, added paragraph (bb), effective Dec. 26, 2006; *72 FR 45320, 45328,* Aug. 14, 2007, amended paragraph (a), effective Aug. 14, 2007.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Applications and entries conflicting with lands reserved or classified as power sites, or covered by power applications: See Public Lands, Interior, 43 CFR subpart 2320.
Interstate Commerce Commission: See Transportation, 49 CFR chapter X.
Irrigation projects; electrification, Bureau of Indian Affairs, Department of the Interior: See Indians, 25 CFR part 175
Regulations of the Bureau of Land Management relating to rights-of-way for power, telephone, and telegraph purposes: See Public Lands, Interior, 43 CFR Group 2800.
Rights-of-way over Indian lands: See Indians, 25 CFR parts 169, 170, and 265.
Securities and Exchange Commission: See Commodity and Securities Exchanges, 17 CFR chapter II.
Withdrawal of public lands: See Public Lands, Interior, 43 CFR Group 2300.


NOTES APPLICABLE TO ENTIRE CHAPTER:

18 CFR 375.308

ABBREVIATIONS: The following abbreviations are used in this chapter: M.c.f.=Thousand cubic feet. B.t.u.=British thermal units. ICC=Interstate Commerce Commission.

[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Notice terminating proceedings, see: *73 FR 79316,* Dec. 29, 2008.]

[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Policy Statements, see: *74 FR 37098,* July 27, 2009.]


NOTES APPLICABLE TO ENTIRE PART:

[PUBLISHER'S NOTE: For Federal Register citations concerning Part 375 Orders, see: *60 FR 15868,* Mar. 28, 1995; *69 FR 5268,* Feb. 4, 2004; *75 FR 4689,* Jan. 29, 2010.]



LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2014, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** This document is current through the May 29, 2014 ***
*** issue of the Federal Register ***

TITLE 18 -- CONSERVATION OF POWER AND WATER RESOURCES
CHAPTER I -- FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF ENERGY
SUBCHAPTER E -- REGULATIONS UNDER NATURAL GAS ACT
PART 157 -- APPLICATIONS FOR CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY AND
FOR ORDERS PERMITTING AND APPROVING ABANDONMENT UNDER SECTION 7 OF THE NATURAL
GAS ACT
SUBPART F -- INTERSTATE PIPELINE BLANKET CERTIFICATES AND AUTHORIZATION UNDER SEC-
TION 7 OF THE NATURAL GAS ACT FOR CERTAIN TRANSACTIONS AND ABANDONMENT

**Go to the CFR Archive Directory**

*18 CFR 157.203*

§ 157.203 Blanket certification.

(a) Effect. A blanket certificate issued pursuant to this subpart authorizes the certificate holder, in accordance with the provisions of this subpart, to engage in any of the activities specified in § 157.208 through § 157.218 (as may be amended from time to time).

(b) Automatic authorization. A blanket certificate issued pursuant to this subpart authorizes the certificate holder to engage in transactions described in §§ 157.208(a), 157.209(a), 157.211(a)(1), 157.213(a), 157.215, 157.216(a), or 157.218 without further Commission approval.

(c) Prior notice required. A blanket certificate issued pursuant to this subpart authorizes the certificate holder to engage in activities described in §§ 157.208(b), 157.210, 157.211(a)(2), 157.212, 157.213(b), 157.214, or 157.216(b), if the requirements of § 157.205 have been fulfilled.

(d) Landowner notification.

(1) Except as identified in paragraph (d)(3) of this section, no activity described in paragraph (b) of this section is authorized unless the company makes a good faith effort to notify in writing all affected landowners, as defined in § 157.6(d)(2), at least 45 days prior to commencing construction or at the time it initiates easement negotiations, which-ever is earlier. A landowner may waive the 45-day prior notice requirement in writing as long as the notice has been provided. For activity required to restore service in an emergency, the 45-day prior notice period is satisfied in the event a company obtains all necessary easements. The notification shall include at least:

(i) A brief description of the facilities to be constructed or replaced and the effect the construction activity will have on the landowner's property;

(ii) The name and phone number of a company representative who is knowledgeable about the project;

(iii) A description of the company's environmental complaint resolution procedure that must:

(A) Provide landowners with clear and simple directions for identifying and resolving their environmental mitigation problems and concerns during construction of the project and restoration of the right-of way;

(B) Provide a local or toll-free phone number and a name of a specific person to be contacted by landowners and with responsibility for responding to landowner problems and concerns, and who will indicate when a landowner should expect a response;

(C) Instruct landowners that if they are not satisfied with the response, they may call the company's Hotline; and

(D) Instruct landowners that, if they are still not satisfied with the response, they may contact the Commission's Dispute Resolution Service at the current telephone number and e-mail address, which is to be provided in the notification.

(2) For activities described in paragraph (c) of this section, the company shall make a good faith effort to notify in writing all affected landowners, as defined in § 157.6(d)(2), within at least three business days following the date that a docket number is assigned to the application or at the time it initiates easement negotiations, whichever is earlier. The notice should include at least:

(i) A brief description of the company and the proposed project, including the facilities to be constructed or replaced and the location (including a general location map), the purpose, and the timing of the project and the effect the construction activity will have on the landowner's property;

(ii) A general description of what the company will need from the landowner if the project is approved, and how the landowner may contact the company, including a local or toll-free phone number and a name of a specific person to contact who is knowledgeable about the project;

(iii) The docket number (if assigned) for the company's application;

(iv) A general description of the blanket certificate program and procedures, as posted on the Commission's Web site at the time the landowner notification is prepared, and the link to the information on the Commission's Web site;

(v) A brief summary of the rights the landowner has in Commission proceedings and in proceedings under the relevant eminent domain rules; and

(vi) The following paragraph: This project is being proposed under the prior notice requirements of the blanket certificate program administered by the Federal Energy Regulatory Commission. Under the Commission's regulations, you have the right to protest this project within 60 days of the date the Commission issues a notice of the pipeline's filing. If you file a protest, you should include the docket number listed in this letter and provide the specific reasons for your protest. The protest should be mailed to the Secretary of the Federal Energy Regulatory Commission, 888 First St., NE, Room 1A, Washington, DC 20426. A copy of the protest should be mailed to the pipeline at [pipeline address]. If you have any questions concerning these procedures you can call the Commission's Office of External Affairs at (202) 208-1088; and

(vii) The description of the company's environmental complaint resolution procedure as described in paragraph (d)(1)(iii) of this section.

(3) Exceptions.

(i) No landowner notice is required for replacements which would have been done under § 2.55 of this chapter but for the fact that the replacement facilities are not of the same capacity as long as they meet the location requirements of § 2.55(b)(1)(ii) of this chapter and do not cause any ground disturbance; or any replacement done for safety, DOT compliance, environmental, or unplanned maintenance reasons that are not foreseen and that require immediate attention by the certificate holder.

(ii) No landowner notice is required for abandonments which involve only the sale or transfer of the facilities, and the easement will continue to be used for transportation of natural gas.

(iii) No landowner notice is required if there is only one landowner and that landowner has requested the service or facilities.

(iv) No landowner notice is required for activities that do not involve ground disturbance or changes to operational air and noise emissions.

(4) If paragraphs (d)(1) or (d)(2) of this section require an applicant to reveal Critical Energy Infrastructure Information (CEII), as defined by § 388.113(c) of this chapter, to any person, the applicant shall follow the procedures set out in § 157.10(d).

**HISTORY:** *[47 FR 24266,* June 4, 1982, as amended by *48 FR 34888,* Aug. 1, 1983; *50 FR 42490,* Oct. 18, 1985; *56 FR 52395,* Oct. 18, 1991, as amended by *56 FR 58845,* Nov. 22, 1991, and withdrawn at *58 FR 15418,* Mar. 23, 1993; *64 FR 26572, 26607,* May 14, 1999; *64 FR 57374, 57391,* Oct. 25, 1999; *65 FR 15234, 15238,* Mar. 22, 2000; *68 FR 31596, 31605,* May 28, 2003; *68 FR 52089, 52096,* Sept. 2, 2003; *71 FR 63680, 63692,* Oct. 31, 2006; *72 FR 37431, 37436,* July 10, 2007; *75 FR 21503, 21505,* Apr. 26, 2010; *78 FR 72794, 72812,* Dec. 4, 2013]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*15 U.S.C. 717-717z.*

**NOTES:** [EFFECTIVE DATE NOTE: *78 FR 72794, 72812,* Dec. 4, 2013, revised paragraph (d)(3)(i), effective Feb. 3, 2014.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Applications and entries conflicting with lands reserved or classified as power sites, or covered by power applications: See Public Lands, Interior, 43 CFR subpart 2320.
Interstate Commerce Commission: See Transportation, 49 CFR chapter X.
Irrigation projects; electrification, Bureau of Indian Affairs, Department of the Interior: See Indians, 25 CFR part 175
Regulations of the Bureau of Land Management relating to rights-of-way for power, telephone, and telegraph purposes: See Public Lands, Interior, 43 CFR Group 2800.
Rights-of-way over Indian lands: See Indians, 25 CFR parts 169, 170, and 265.
Securities and Exchange Commission: See Commodity and Securities Exchanges, 17 CFR chapter II.
Withdrawal of public lands: See Public Lands, Interior, 43 CFR Group 2300.


NOTES APPLICABLE TO ENTIRE CHAPTER:
ABBREVIATIONS: The following abbreviations are used in this chapter: M.c.f.=Thousand cubic feet. B.t.u.=British thermal units. ICC=Interstate Commerce Commission.
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Notice terminating proceedings, see: *73 FR 79316,* Dec. 29, 2008.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Policy Statements, see: *74 FR 37098,* July 27, 2009.]


NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: For Federal Register citations regarding Part 157 Orders, see: *75 FR 4689,* Jan. 29, 2010.]



LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2014, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** This document is current through the May 29, 2014 ***
*** issue of the Federal Register ***

TITLE 18 -- CONSERVATION OF POWER AND WATER RESOURCES
CHAPTER I -- FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF ENERGY
SUBCHAPTER E -- REGULATIONS UNDER NATURAL GAS ACT
PART 157 -- APPLICATIONS FOR CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY AND
FOR ORDERS PERMITTING AND APPROVING ABANDONMENT UNDER SECTION 7 OF THE NATURAL
GAS ACT
SUBPART F -- INTERSTATE PIPELINE BLANKET CERTIFICATES AND AUTHORIZATION UNDER SEC-
TION 7 OF THE NATURAL GAS ACT FOR CERTAIN TRANSACTIONS AND ABANDONMENT

**Go to the CFR Archive Directory**

*18 CFR 157.208*

§ 157.208 Construction, acquisition, operation, replacement, and miscellaneous rearrangement of facilities.

(a) Automatic authorization. If the project cost does not exceed the cost limitations set forth in column 1 of Table I, under paragraph (d) of this section, or if the project is required to restore service in an emergency, the certificate holder is authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility. The certificate holder shall not segment projects in order to meet the cost limitations set forth in column 1 of Table I.

(b) Prior notice. If the project cost is greater than the amount specified in column 1 of Table I, but less than the amount specified in column 2 of Table I, the certificate holder is authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility. The certificate holder shall not segment projects in order to meet the cost limitations set forth in column 2 of Table I.

(c) Contents of request. In addition to the requirements of § 157.205(b), requests filed for activities described under paragraph (b) of this section shall contain:

(1) A description of the purpose of the proposed facilities including their relationship to other existing or planned facilities;

(2) A detailed description of the proposed facilities specifying length, diameter, wall thickness and maximum operating pressure for pipeline; and for compressors, the size, type, and number of compressor units, horsepower required, horsepower existing and proposed, volume of fuel gas, suction and discharge pressure and compression ratio;

(3) A USGS 7 1/2 minute series (scale 1:24000) topographic map (or map of equivalent or greater detail, as appropriate) showing the location of the proposed facilities, and indicating the location of any sensitive environmental areas within one-quarter mile of project-related construction activities;

(4) A map showing the relationship of the proposed facilities to the applicant's existing facilities;

(5) A flow diagram or comparative study showing daily design capacity, daily maximum capacity and operating pressures with and without the proposed facilities for that portion of the certificate holder's system affected by the proposal;

(6) The estimated cost and method of financing the proposed facilities;

(7) A statement explaining how the public convenience and necessity requires the approval of the project;

(8) For acquisitions of facilities:

(i) A statement referencing the date of issuance, docket number and title of the proceeding for any certificate issued by the Commission authorizing the facilities proposed to be acquired; and

(ii) The amounts recorded in the accounts of the vendor (seller or lessor) that apply to the facilities proposed to be acquired and the accumulated provisions for depreciation, depletion, and amortization;

(9) A concise analysis discussing the relevant issues outlined in § 380.12 of this chapter. The analysis must identify the existing environmental conditions and the expected significant impacts that the proposed action, including proposed mitigation measures, will cause to the quality of the human environment, including impact expected to occur to sensitive environmental areas. When compressor facilities are proposed, the analysis must also describe how the proposed action will be made to comply with applicable State Implementation Plans developed under the Clean Air Act. The analysis must also include a description of the contacts made, reports produced, and results of consultations which took place to ensure compliance with the Endangered Species Act, National Historic Preservation Act and the Coastal Zone Management Act. Include a copy of the agreements received for compliance with the Endangered Species Act, National Historic Preservation Act, and Coastal Zone Management Act, or if no written concurrence is issued, a description of how the agency relayed its opinion to the company. Describe how drilling for wells or horizontal direction drilling would be designed to meet the goal of limiting the perceived noise at NSAs to an L[dn] of 55 dBA or what mitigation would be offered to landowners.

(10) A commitment to having the Environmental Inspector's report filed every week.

(d) Limits and inflation adjustment. The limits specified in Tables I and II shall be adjusted each calendar year to reflect the "GDP implicit price deflator" published by the Department of Commerce for the previous calendar year. The Director of the Office of Energy Projects is authorized to compute and publish limits for future calendar years as a part of Tables I and II, pursuant to § 375.308(x)(1) of this chapter.

Table I

| Year | Auto. proj. cost limit (Col. 1) | Prior notice proj. cost limit (Col. 2) |
|------|---------------------------------|----------------------------------------|
| | | Limit |
| 1982 | $ 4,200,000 | $ 12,000,000 |
| 1983 | 4,500,000 | 12,800,000 |
| 1984 | 4,700,000 | 13,300,000 |
| 1985 | 4,900,000 | 13,800,000 |
| 1986 | 5,100,000 | 14,300,000 |
| 1987 | 5,200,000 | 14,700,000 |
| 1988 | 5,400,000 | 15,100,000 |
| 1989 | 5,600,000 | 15,600,000 |
| 1990 | 5,800,000 | 16,000,000 |
| 1991 | 6,000,000 | 16,700,000 |
| 1992 | 6,200,000 | 17,300,000 |
| 1993 | 6,400,000 | 17,700,000 |
| 1994 | 6,600,000 | 18,100,000 |
| 1995 | 6,700,000 | 18,400,000 |
| 1996 | 6,900,000 | 18,800,000 |

Table I

| Year | Limit | |
| | Auto. proj. cost limit (Col. 1) | Prior notice proj. cost limit (Col. 2) |
| --- | --- | --- |
| 1997 | 7,000,000 | 19,200,000 |
| 1998 | 7,100,000 | 19,600,000 |
| 1999 | 7,200,000 | 19,800,000 |
| 2000 | 7,300,000 | 20,200,000 |
| 2001 | 7,400,000 | 20,600,000 |
| 2002 | 7,500,000 | 21,000,000 |
| 2003 | 7,600,000 | 21,200,000 |
| 2004 | 7,800,000 | 21,600,000 |
| 2005 | 8,000,000 | 22,000,000 |
| 2006 | 9,600,000 | 27,400,000 |
| 2007 | 9,900,000 | 28,200,000 |
| 2008 | 10,200,000 | 29,000,000 |
| 2009 | 10,400,000 | 29,600,000 |
| 2010 | 10,500,000 | 29,900,000 |
| 2011 | 10,600,000 | 30,200,000 |
| 2012 | 10,800,000 | 30,800,000 |
| 2013 | 11,000,000 | 31,400,000 |
| 2014 | 11,200,000 | 31,900,000 |

(e) Reporting requirements. For each facility completed during the calendar year pursuant to paragraph (a) of this section and § 157.213(a), the certificate holder shall file in the manner prescribed in §§ 157.6(a) and 385.2011 of this chapter as part of the required annual report under § 157.207(a) the information described in paragraphs (e)(1)-(5) of this section. For each facility completed during the calendar year pursuant to paragraph (b) of this section and §§ 157.210, 157.212, and 157.213(b), the certificate holder shall file in the manner prescribed above only the information described in paragraph (e)(3) of this section.

(1) A description of the facilities installed pursuant to this section, including a description of the length and size of pipelines, compressor horsepower, metering facilities, taps, valves, and any other facilities constructed;

(2) The specific purpose, location, and beginning and completion date of construction of the facilities installed, the date service commenced, and, if applicable, a statement indicating the extent to which the facilities were jointly constructed;

(3) The actual installed cost of each facility item listed pursuant to paragraph (e)(1), separately stating the cost of materials and labor as well as other costs allocable to the facilities;

(4)(i) A description of the contacts made, reports produced, and results of consultations which took place to ensure compliance with the Endangered Species Act, the National Historic Preservation Act and the Coastal Zone Management Act;

(ii) Documentation, including images, that restoration of work areas is progressing appropriately;

(iii) A discussion of problems or unusual construction issues, including those identified by affected landowners, and corrective actions taken or planned; and

(iv) For new or modified compression, a noise survey verifying compliance with § 157.206(b)(5).

(5) For acquisitions of facilities:

(i) A statement referencing the date of issuance, docket number and title of the proceeding for any certificate issued by the Commission authorizing the facilities acquired; and

(ii) The amounts recorded in the accounts of the vendor (seller or lessor) that apply to the facilities acquired and the accumulated provisions for depreciation, depletion, and amortization.

(f) Special conditions. (1) For purposes of comparing the project cost of leased facilities with the per-project cost limitations in Table I of this section, the project cost of leased facilities shall be the annual lease charge multiplied by the number of years of the lease.

(2) In the interest of safety and reliability of service, facilities authorized by the certificate shall not be operated at pressures exceeding the maximum operating pressure set forth in the request. In the event that the certificate holder thereafter wishes to change the maximum operating pressure of supply or delivery lateral facilities constructed under section 7(c) of the Natural Gas Act or facilities constructed under this section, it shall file an appropriate request pursuant to the procedures set forth in § 157.205(b). Such request shall include the reasons for the proposed change. Nothing contained herein authorizes the certificate holder to operate any facility at a pressure above the maximum prescribed by state law, if such law requires a lower pressure than authorized hereby.

(g) If the actual cost of the project exceeds the per-project cost authorized under a blanket certificate in Table I of this section, the certificate holder shall apply to the Director of the Office of Energy Projects for a waiver of those project cost limits.

**HISTORY:** *[47 FR 24266,* June 4, 1982, as amended by *52 FR 47910,* Dec. 17, 1987; *53 FR 15030,* Apr. 27, 1988; *56 FR 7565,* Feb. 25, 1991; *57 FR 4717,* Feb. 10, 1992; *58 FR 6893,* Feb. 3, 1993; *59 FR 5947,* Feb. 9, 1994; *60 FR 6658,* Feb. 3, 1995, as corrected at *60 FR 7821,* Feb. 9, 1995; *61 FR 8213,* Mar. 4, 1996; *62 FR 5913, 5914,* Feb. 10, 1997; *63 FR 6476, 6477,* Feb. 9, 1998; *64 FR 8239,* Feb. 19, 1999; *64 FR 26572, 26608,* May 14, 1999; *64 FR 54522, 54536,* Oct. 7, 1999; *65 FR 12115,* Mar. 8, 2000; *66 FR 14486,* Mar. 13, 2001; *67 FR 6167, 6168,* Feb. 11, 2002; *68 FR 8710, 8711,* Feb. 25, 2003; *68 FR 31596, 31605,* May 28, 2003; *69 FR 9205, 9206,* Feb. 27, 2004; *70 FR 6340,* Feb. 7, 2005; *71 FR 8201, 8202,* Feb. 16, 2006; *71 FR 63680, 63693,* Oct. 31, 2006; *72 FR 5614,* Feb. 7, 2007; *72 FR 37431, 37436,* July 10, 2007; *72 FR 45320, 45325,* Aug. 14, 2007; *73 FR 8190, 8191,* Feb. 13, 2008; *74 FR 6539,* Feb. 10, 2009; *75 FR 8245, 8246,* Feb. 24, 2010; *76 FR 8293,* Feb. 14, 2011; *77 FR 8724,* Feb. 15, 2012; *78 FR 8389, 8390,* Feb. 6, 2013; *79 FR 6808,* Feb. 5, 2014]*

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*15 U.S.C. 717-717z.*

**NOTES:** [EFFECTIVE DATE NOTE: *77 FR 8724,* Feb. 15, 2012, revised Table I in paragraph (d), effective Feb. 15, 2012, and "establishes cost limits applicable from January 1, 2012 through December 31, 2012."; *78 FR 8389, 8390,* Feb. 6, 2013, revised Table I in paragraph (d), effective Feb. 6, 2013, "and establishes cost limits applicable from January 1, 2013 through December 31, 2013."; *79 FR 6808,* Feb. 5, 2014, revised Table I in paragraph (d), effective Feb. 5, 2014, and "establishes cost limits applicable form January 1, 2014 through December 31, 2014."]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Applications and entries conflicting with lands reserved or classified as power sites, or covered by power applications: See Public Lands, Interior, 43 CFR subpart 2320.
Interstate Commerce Commission: See Transportation, 49 CFR chapter X.
Irrigation projects; electrification, Bureau of Indian Affairs, Department of the Interior: See Indians, 25 CFR part 175
Regulations of the Bureau of Land Management relating to rights-of-way for power, telephone, and telegraph purposes: See Public Lands, Interior, 43 CFR Group 2800.
Rights-of-way over Indian lands: See Indians, 25 CFR parts 169, 170, and 265.
Securities and Exchange Commission: See Commodity and Securities Exchanges, 17 CFR chapter II.
Withdrawal of public lands: See Public Lands, Interior, 43 CFR Group 2300.


NOTES APPLICABLE TO ENTIRE CHAPTER:
ABBREVIATIONS: The following abbreviations are used in this chapter: M.c.f.=Thousand cubic feet. B.t.u.=British thermal units. ICC=Interstate Commerce Commission.
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Notice terminating proceedings, see: *73 FR 79316,* Dec. 29, 2008.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Policy Statements, see: *74 FR 37098,* July 27, 2009.]

NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: For Federal Register citations regarding Part 157 Orders, see: *75 FR 4689,* Jan. 29, 2010.]



LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2014, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** This document is current through the May 29, 2014 ***
*** issue of the Federal Register ***

TITLE 18 -- CONSERVATION OF POWER AND WATER RESOURCES
CHAPTER I -- FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF ENERGY
SUBCHAPTER E -- REGULATIONS UNDER NATURAL GAS ACT
PART 157 -- APPLICATIONS FOR CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY AND
FOR ORDERS PERMITTING AND APPROVING ABANDONMENT UNDER SECTION 7 OF THE NATURAL
GAS ACT
SUBPART F -- INTERSTATE PIPELINE BLANKET CERTIFICATES AND AUTHORIZATION UNDER SEC-
TION 7 OF THE NATURAL GAS ACT FOR CERTAIN TRANSACTIONS AND ABANDONMENT

**Go to the CFR Archive Directory**

*18 CFR 157.202*

§ 157.202 Definitions.

(a) General rule. Terms defined in the Natural Gas Policy Act of 1978 (NGPA) shall have the same meaning for the purposes of this subpart as they have under the Natural Gas Policy Act of 1978.

(b) Subpart F definitions. For purposes of this subpart:

(1) Certificate holder means any interstate pipeline with an effective blanket certificate issued pursuant to this subpart.

(2)(i) Eligible facility means, except as provided in paragraph (b)(2)(ii) of this section, any facility subject to the Natural Gas Act jurisdiction of the Commission that is necessary to provide service within existing certificated levels. Eligible facility also includes any gas supply facility or any facility, including receipt points, needed by the certificate holder to receive gas into its system for further transport or storage, and interconnecting facilities between transporters that transport natural gas under part 284 of this chapter. Further, eligible facility includes main line, lateral, and compressor replacements that do not qualify under § 2.55(b) of this chapter because they will result in an incidental increase in the capacity of main line facilities, or because they will not satisfy the location or work space requirements of § 2.55(b). Replacements must be done for sound engineering purposes. Replacements for the primary purpose of creating additional main line capacity are not eligible facilities; however, replacements and the modification of facilities to rearrange gas flows or increase compression for the primary purpose of restoring service in an emergency due to sudden unforeseen damage to main line facilities are eligible facilities. Eligible facility also includes auxiliary installations and observation wells which do not qualify under § 2.55(a) of this chapter because they will not satisfy the location or work space requirements of § 2.55(a).

(ii) Exclusions. "Eligible facility" does not include:

(A) A main line of a transmission system, except replacement facilities covered under § 157.202(b)(2)(i).

(B) An extension of a main line, except replacement facilities covered under § 157.202(b)(2)(i).

(C) A facility, including compression and looping, that alters the capacity of a main line, except replacement facilities and facility modifications covered under paragraph (b)(2)(i) of this section;

(D) A facility required to test or develop an underground storage field or that alters the certificated capacity, deliverability, or storage boundary, or a facility required to store gas above ground in either a gaseous or liquified state, or a facility used to receive gas from plants manufacturing synthetic gas or from plants gasifying liquefied natural gas, or wells needed to utilize an underground storage field.

(E) Delivery points under § 157.211.

(F) Temporary compression under § 157.209.

(G) A facility that crosses a stste line and is constructed for the primary purpose of transporting gas which is also transported by an intrastate pipeline under section 311(a)(2) of the NGPA;

(3) Facility does not include the items described in § 2.55 of this chapter.

(4) Temporary compression means compressor facilities installed and operated at existing compressor locations for the limited purpose of temporarily replacing existing permanent compressor facilities that are undergoing maintenance or repair or that are pending permanent replacement.

(5) Main line means the principal transmission facilities of a pipeline system extending from supply areas to market areas and does not include small diameter supply or delivery laterals or gathering lines.

(6) Miscellaneous rearrangement of any facility means any rearrangement of a facility, excluding underground storage injection/withdrawal wells, that does not result in any change of service rendered by means of the facilities involved, including changes in existing field operations or relocation of existing facilities:

(i) On the same property;

(ii) When required by highway construction, dam construction, encroachment of residential, commercial, or industrial areas, erosion, or the expansion or change of course of rivers, streams or creeks, or

(iii) To respond to other natural forces beyond the certificate holder's control when necessary to ensure safety or maintain the operational integrity of the certificate holder's facilities.

(7) Project means a unit of improvement or construction that is used and useful upon completion.

(8) Project cost means the total actual cost of constructing the jurisdictional portions of a project. In the case of a project constructed jointly by more than one interstate pipeline, the project cost is the total cost, irrespective of the amount paid by each pipeline.

(9) Right-of-way grantor means (i) a person who grants a right-of-way easement to the certificate holder; or (ii) any successor to an interest which is subject to the easement.

(10) Delivery point means a tap and/or metering and appurtenant facilities, such as heaters, minor gas conditioning, treatment, odorization, and similar equipment, necessary to enable the certificate holder to deliver gas to any party.

(11) Sensitive environmental area means:

(i) The habitats of species which have been identified as endangered or threatened under the Endangered Species Act (Pub. L. 93-205, as amended) and essential fish habitat as identified under the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. 1801, et seq.);

(ii) National or State Forests or Parks;

(iii) Properties listed on, or eligible for inclusion in, the National Register of Historic Places, or the National Register of Natural Landmarks;

(iv) Floodplains and wetlands;

(v) Designated or proposed wilderness areas, national or state wild and scenic rivers, wildlife refuges and management areas and sanctuaries;

(vi) Prime agricultural lands, designated by the Department of Agriculture; or

(vii) Sites which are subject to use by American Indians and other Native Americans for religious purposes.

(12) Interconnection facilities means the interconnecting point, which includes the tap, metering, and M&R facilities and the related interconnecting pipeline.

(13) Emergency means a sudden unanticipated loss of gas supply or capacity that requires an immediate restoration of interrupted service for protection of life or health or for maintenance of physical property.

**HISTORY:** *[47 FR 24266,* June 4, 1982, as amended by *48 FR 34888,* Aug. 1, 1983; *48 FR 51446,* Nov. 9, 1983; *50 FR 42490,* Oct. 18, 1985; *56 FR 52395,* Oct. 18, 1991, as amended at *56 FR 58845,* Nov. 22, 1991, and withdrawn at *58 FR 15418,* Mar. 23, 1993; *64 FR 26572, 26606,* May 14, 1999, as corrected at *64 FR 37037,* July 9, 1999; *64 FR 54522, 54536,* Oct. 7, 1999; *64 FR 57374, 57391,* Oct. 25, 1999; *65 FR 11462, 11464,* Mar. 3, 2000; *68 FR 31596, 31604,* May 28, 2003; *78 FR 72794, 72812,* Dec. 4, 2013]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*15 U.S.C. 717-717z.*

**NOTES:** [EFFECTIVE DATE NOTE: *78 FR 72794, 72812,* Dec. 4, 2013, revised paragraph (b)(2)(i), effective Feb. 3, 2014.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Applications and entries conflicting with lands reserved or classified as power sites, or covered by power applications: See Public Lands, Interior, 43 CFR subpart 2320.
Interstate Commerce Commission: See Transportation, 49 CFR chapter X.
Irrigation projects; electrification, Bureau of Indian Affairs, Department of the Interior: See Indians, 25 CFR part 175
Regulations of the Bureau of Land Management relating to rights-of-way for power, telephone, and telegraph purposes:
See Public Lands, Interior, 43 CFR Group 2800.
Rights-of-way over Indian lands: See Indians, 25 CFR parts 169, 170, and 265.
Securities and Exchange Commission: See Commodity and Securities Exchanges, 17 CFR chapter II.
Withdrawal of public lands: See Public Lands, Interior, 43 CFR Group 2300.


NOTES APPLICABLE TO ENTIRE CHAPTER:
ABBREVIATIONS: The following abbreviations are used in this chapter: M.c.f.=Thousand cubic feet. B.t.u.=British thermal units. ICC=Interstate Commerce Commission.
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Notice terminating proceedings, see: *73 FR 79316,* Dec. 29, 2008.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Policy Statements, see: *74 FR 37098,* July 27, 2009.]


NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: For Federal Register citations regarding Part 157 Orders, see: *75 FR 4689,* Jan. 29, 2010.]



LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2014, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** This document is current through the May 29, 2014 ***
*** issue of the Federal Register ***

TITLE 18 -- CONSERVATION OF POWER AND WATER RESOURCES
CHAPTER I -- FEDERAL ENERGY REGULATORY COMMISSION, DEPARTMENT OF ENERGY
SUBCHAPTER A -- GENERAL RULES
PART 2 -- GENERAL POLICY AND INTERPRETATIONS
STATEMENTS OF GENERAL POLICY AND INTERPRETATIONS UNDER THE NATURAL GAS ACT

**Go to the CFR Archive Directory**

*18 CFR 2.55*

§ 2.55 Definition of terms used in section 7(c).

For the purposes of section 7(c) of the Natural Gas Act, as amended, the word facilities as used therein shall be interpreted to exclude:

(a) Auxiliary installations. (1) Installations (excluding gas compressors) which are merely auxiliary or appurtenant to an authorized or proposed transmission pipeline system and which are installations only for the purpose of obtaining more efficient or more economical operation of the authorized or proposed transmission facilities, such as: Valves; drips; pig launchers/receivers; yard and station piping; cathodic protection equipment; gas cleaning, cooling and dehydration equipment; residual refining equipment; water pumping, treatment and cooling equipment; electrical and communication equipment; and buildings. The auxiliary installations must be located within the existing or proposed certificated permanent right-of-way or authorized facility site and must be constructed using the temporary work space used to construct the existing or proposed facility (see Appendix A to this Part 2 for guidelines on what is considered to be the appropriate work area in this context).

(2) Advance notification. One of the following requirements will apply to any specified auxiliary installation. If auxiliary facilities are to be installed:

(i) On existing transmission facilities, then no notification is required;

(ii) On, or at the same time as, certificated facilities which are not yet in service (except those authorized under the automatic procedures of part 157 of subpart F of this chapter), then a description of the auxiliary facilities and their locations must be provided to the Commission at least 30 days in advance of their installation; or

(iii) On, or at the same time as, facilities that are proposed, then the auxiliary facilities must be described in the environmental report specified in § 380.12 or in a supplemental filing while the application is pending.

(b) Replacement of facilities. (1) Facilities which constitute the replacement of existing facilities that have or will soon become physically deteriorated or obsolete, to the extent that replacement is deemed advisable, if:

(i) The replacement will not result in a reduction or abandonment of service through the facilities;

(ii) The replacement facilities will have a substantially equivalent designed delivery capacity, will be located in the same right-of-way or on the same site as the facilities being replaced, and will be constructed using the temporary work space used to construct the existing facility (see Appendix A to Part 2 for guidelines on what is considered to be the appropriate work area in this context);

(iii) Except as described in paragraph (b)(2) of this section, the company files notification of such activity with the Commission at least 30 days prior to commencing construction.

(2) Advance notification not required. The advance notification described in paragraph (b)(1)(iii) of this section is not required if:

(i) The cost of the replacement project does not exceed the cost limit specified in Column 1 of Table I of § 157.208(d) of this chapter; or

(ii) U.S. Department of Transportation safety regulations require that the replacement activity be performed immediately;

(3) Contents of the advance notification. The advance notification described in paragraph (b)(1)(iii) of this section must include the following information:

(i) A brief description of the facilities to be replaced (including pipeline size and length, compression horsepower, design capacity, and cost of construction);

(ii) Current U.S. Geological Survey 7.5-minute series topographic maps showing the location of the facilities to be replaced; and

(iii) A description of the procedures to be used for erosion control, revegetation and maintenance, and stream and wetland crossings.

(4) On or before May 1 of each year, a company must file (in accordance with filing procedures posted on the Commission's Web site at http://www.ferc.gov.) an annual report that lists for the previous calendar year each replacement project that was completed pursuant to paragraph (b)(1) of this section and that was exempt from the advance notification requirement pursuant to paragraph (b)(2) of this section. For each such replacement project, the company must include all of the information described in paragraph (b)(3) of this section. Exception. A company does not have to include in this annual report any above-ground replacement project that did not involve compression facilities or the use of earthmoving equipment.

(c) Landowner notification. (1) No activity described in paragraphs (a) and (b) of this section that involves ground disturbance is authorized unless a company makes a good faith effort to notify in writing each affected landowner, as noted in the most recent county/city tax records as receiving the tax notice, whose property will be crossed or used as a result of the proposed activity, at least five days prior to commencing any activity under this section. For an activity required to respond to an emergency, the five-day prior notice period does not apply. The notification shall include at least:

(i) A brief description of the facilities to be constructed or replaced and the effect the activity may have on the landowner's property;

(ii) The name and phone number of a company representative who is knowledgeable about the project; and

(iii) A description of the Commission's Dispute Resolution Division Helpline, which an affected person may contact to seek an informal resolution of a dispute as explained in section 1b.21(g) of the Commission's regulations (*18 CFR 1b.21(g)*) and the Dispute Resolution Division Helpline number.

(2) "Affected landowners" include owners of property interests, as noted in the most recent county/city tax records as receiving tax notice, whose property is directly affected (i.e. crossed or used) by the proposed activity, including all rights-of-way, facility sites (including compressor stations, well sites, and all above-ground facilities), access roads, pipe and contractor yards, and temporary work space.

(d) [Reserved]

**HISTORY:** [Order 148, *14 FR 681*, Feb. 16, 1949, as amended by Order 220, *25 FR 2363*, Mar. 19, 1960; Order 241, *27 FR 510*, Jan. 18, 1962; Order 148-A, *38 FR 11450*, May 8, 1973; *55 FR 33015*, Aug. 13, 1990; Order 544, *57 FR*

*46495,* Oct. 9, 1992; Order 544-A, *58 FR 57735,* Oct. 27, 1993; *61 FR 13419, 13420,* Mar. 27, 1996; Order 603, *64 FR 26572, 26603,* May 14, 1999, as corrected at *65 FR 18221,* Apr. 7, 2000; Order 603-A, *64 FR 54522, 54535,* Oct. 7, 1999; *75 FR 43400, 43402,* July 26, 2010; *77 FR 8095,* Feb. 14, 2012; *78 FR 72794, 72812,* Dec. 4, 2013]

**AUTHORITY:** (Sec. 7, *52 Stat. 824; 15 U.S.C. 717f)*

**NOTES:** [EFFECTIVE DATE NOTE: *77 FR 8095,* Feb. 14, 2012, amended paragraph (a)(2)(iii), effective Feb. 14, 2012; *78 FR 72794, 72812,* Dec. 4, 2013, amended this section, effective Feb. 3, 2014.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Applications and entries conflicting with lands reserved or classified as power sites, or covered by power applications: See Public Lands, Interior, 43 CFR subpart 2320.
Interstate Commerce Commission: See Transportation, 49 CFR chapter X.
Irrigation projects; electrification, Bureau of Indian Affairs, Department of the Interior: See Indians, 25 CFR part 175
Regulations of the Bureau of Land Management relating to rights-of-way for power, telephone, and telegraph purposes: See Public Lands, Interior, 43 CFR Group 2800.
Rights-of-way over Indian lands: See Indians, 25 CFR parts 169, 170, and 265.
Securities and Exchange Commission: See Commodity and Securities Exchanges, 17 CFR chapter II.
Withdrawal of public lands: See Public Lands, Interior, 43 CFR Group 2300.


NOTES APPLICABLE TO ENTIRE CHAPTER:
ABBREVIATIONS: The following abbreviations are used in this chapter: M.c.f.=Thousand cubic feet. B.t.u.=British thermal units. ICC=Interstate Commerce Commission.
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Notice terminating proceedings, see: *73 FR 79316,* Dec. 29, 2008.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Chapter I Policy Statements, see: *74 FR 37098,* July 27, 2009.]


NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 2 Policy Statements, see: *60 FR 10015,* Feb. 23, 1995; *60 FR 27878,* May 26, 1995; *77 FR 69754,* Nov. 21, 2012; *78 FR 5268,* Jan. 25, 2013.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 2 Order on reconsiderations, see: *62 FR 33341,* June 19, 1997.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 2 Order on rehearings, see: *69 FR 5268,* Feb. 4, 2004.]



FEDERAL REGISTER

Vol. 68, No. 18

Proposed Rules

DEPARTMENT OF ENERGY (DOE)

Federal Energy Regulatory Commission (FERC)

**18 CFR Part 157**

**[Docket Nos. RM03-4-000 and AD02-14-000]**

**Emergency Reconstruction of Interstate Natural Gas Facilities Under the Natural Gas Act**

*68 FR 4120*

**DATE:** Tuesday, January 28, 2003

   **ACTION:** Notice of proposed rulemaking.

---

To view the next page, type .np* TRANSMIT.
To view a specific page, transmit p* and the page number, e.g. p*1

---

   [*4120]

   **SUMMARY:** The Federal Energy Regulatory Commission (Commission) is proposing to amend its regulations to enable natural gas interstate pipeline companies to replace mainline facilities using a route other than the existing right-of-way, and to commence construction without being subject to the 45-day prior notice proceedings specified in the Commission's regulations and without project cost constraints, when immediate action is required to restore service in an emergency due to a sudden unanticipated loss of natural gas or capacity in order to prevent loss of life, impairment of health, or damage to property. In addition, the Commission is proposing to revise reporting requirements so that a natural gas company, acting under part 157 in responding to an emergency, would submit a description of its activities to the Commission prospectively, in advance of commencing construction, rather than retrospectively, as is currently the case. An important objective of the proposed rule is the reconciliation of the Commission's regulatory responsibilities under its enabling statutes and federal environmental and safety laws with the need to protect persons and property. The Commission requests that comments address the adequacy of the proposed expansion of pipeline companies' authority under their part 157 blanket certificates in situations where immediate action is necessary to reconstruct interstate pipeline facilities that have been destroyed or compromised by a sudden unanticipated natural event or deliberate effort to disrupt the flow of natural gas or whether there is a need for further action by the Commission or Congress.

   **DATES:** Comments are due February 27, 2003.

   **ADDRESSES:** Federal Energy Regulatory Commission, 888 First Street, NE., Washington, DC 20426.

**FOR FURTHER INFORMATION CONTACT:** Robert Christin, Office of the General Counsel, Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426, (202) 502-6022.

Gordon Wagner, Office of the General Counsel, Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426, (202) 502-8947.

Berne Mosley, Office of Energy Projects, Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426, (202) 502-8625.

January 17, 2003.

**SUPPLEMENTARY INFORMATION:**

1. The Federal Energy Regulatory Commission (Commission) is proposing to amend part 157, subpart F, of its regulations to enable natural gas interstate pipeline companies to replace mainline facilities using a route other than the existing right-of-way, and to commence construction without being subject to the 45-day prior notice proceedings specified in § 157.205 of the Commission's regulations and without project cost constraints, when immediate action is required to restore service in an emergency due to a sudden unanticipated loss of natural gas or capacity in order to prevent loss of life, impairment of health, or damage to property. In addition, the Commission is proposing to revise reporting requirements so that a natural gas company, acting under part 157 in responding to an emergency, would submit a description of its activities to the Commission prospectively, in advance of commencing construction, rather than retrospectively, as is currently the case. An important objective of the proposed rule is the reconciliation of the Commission's regulatory responsibilities under its enabling statutes and federal environmental and safety laws with the need to protect persons and property.

**Background**

2. On April 22, 2002, staff from the Commission and from the Department of Transportation (DOT) Office of Pipeline Safety (OPS) jointly convened a technical conference to consider whether to, or how to, clarify, expedite, and streamline permitting and approvals for interstate pipeline reconstruction following a sudden unanticipated service disruption. n1 Efforts to ensure the security of the nation's energy infrastructure have generally focused on maintaining the physical integrity of facilities and preparing to respond to accidents, such as excavation that breeches a buried pipe, natural disasters, such as earthquakes and landslides, and foreseeable equipment failure. The conference broadened this focus to consider how best to respond to damage due to a deliberate effort to disrupt the flow of natural gas.

n1 On the following day, staff from the Commission and from the Department of Energy (DOE) jointly convened a technical conference to consider whether to or how to clarify, expedite, and streamline the reallocation of gas supplies in the event of a sudden unanticipated service disruption. That proceeding, in Docket No. AD02-15-000, is not addressed here.

3. At the conference, Commission and OPS staff provided an overview of current regulatory processes and presented examples of recent natural gas emergencies. Conference participants-representing federal, state, and local agencies, energy industry sectors, trade groups, and interested individuals-suggested various means to speed the reconstruction of interstate gas facilities, including: revising existing legislative mandates, revising Commission regulations, and enhancing coordination among federal, state, and local entities. A transcript of the conference and the comments subsequently submitted are contained in the record in Docket No. AD02-14-000. n2

n2 The conference comments are available on FERC's Web site at *http://ferc.gov* using the Federal Energy Regulatory Records and Information System (FERRIS) to access filings in Docket No. AD02-14-000. The Interstate Natural Gas Association of America (INGAA) submitted scenarios describing how interstate pipelines might respond to various types of facility-related emergencies. Because of security concerns associated with disclosing this information, these scenarios are not included in the public record in Docket No. AD02-14-000; however, while the particulars of the scenarios are not described in detail in the public record, the results are discussed in general. [*4121]

4. In general, staff found the Commission's existing authorities and policies sufficient, and sufficiently flexible, to enable pipelines to respond to emergencies in a timely manner. However, following consideration of the April 2002 conference's presentations, discussions, and comments, the Commission has identified circumstances under which its

present practices could constrain a pipeline from initiating a timely response. Accordingly, as discussed below, the Commission proposes to amend its regulations concerning blanket certificates.

**Discussion**

*The Commission's Existing Authority*

5. In the normal course of events, an interstate gas pipeline seeking to build new facilities, or rebuild existing facilities, will file an application with the Commission pursuant to section 7(c) of the Natural Gas Act (NGA) for authorization for the proposed construction. The Commission reviews the application, considers comments in favor of and opposed to the proposal, and assesses economic and environmental impacts. The time required to ensure that all views receive a full hearing, and all impacts are adequately assessed, varies with the complexity of the project proposed. The time needed to reach a final determination on an application is typically measured in months. Consequently, the standard NGA section 7(c) certification process is not suited to an emergency situation that requires an immediate response to prevent loss of life, impairment of health, or damage to property.

6. In establishing the initial framework for federal regulation of the natural gas industry, the NGA explicitly recognized the need to provide for a rapid response to an emergency. NGA section 7(c)(1)(B) states that "the Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application of a certificate." The Commission has issued temporary certificates in response to companies' requests for authorization to undertake various activities on an emergency basis, with temporary authorization valid until the Commission acts on an application for permanent authorization. Natural gas companies have received temporary emergency authorization to build new facilities, modify existing facilities, alter operational parameters, and change rates. n3 Section 2.57 of the Commission's regulations states that temporary certificates should be employed for minor enlargements or extensions of existing facilities, and not for construction "of major proportions." n4

n3 *See, e.g., Texas-Ohio Pipeline, Inc., 58 FERC 61,025 (1992)* (order issuing temporary certificate) and *69 FERC 61,145 (1994)* (order issuing permanent certificate).

n4 In *Pennsylvania Gas and Water Company v. FPC, 427 F.2d 568, 574 (D.C. Cir. 1970),* the court reviewed the legislative history of the section 7 temporary certificate provision, and found it "was meant to cover a narrow class of situations, to permit temporary and limited interconnection, or expansion of existing facilities in order to meet such emergencies as breakdowns in the service of operating natural gas companies, or sudden unanticipated demands." *Citing Algonquin Gas Transmission Company v. FPC, 201 F.2d 334 (1st Cir. 1953). See also Mississippi River Transmission Corporation, 40 FPC 190 (1968).*

7. In addition to the NGA's statutory emergency provision, the Commission's regulations permit pipelines to undertake limited construction projects without waiting for NGA section 7(c) case specific certificate authorization. For example, section 2.55 of the Commission's regulations permits pipeline companies to replace or refurbish deteriorating facilities and make minor upgrades to facilities without first obtaining an NGA section 7(c) certificate. Thus, if facilities are damaged or become inoperable for any reason, a pipeline could, pursuant to section 2.55, undertake repairs or replacement as necessary to restore service. However, section 2.55 is limited to returning a facility to its original service capacity; it does not apply to efforts that will expand or eliminate existing services. Further, section 2.55 applies only to new facilities located within the same right-of-way or at the same site as the existing facilities. Finally, certain auxiliary facilities, and replacement facilities projected to cost more than $ 7,500,000, are subject to a 30-day prior notice. n5

n5 This amount is adjusted annually. *See 18 CFR 157.208(d) (2002),* Table 1, column 1. Advance notice for replacement facilities that exceed the current $ 7.5 million cost limit of *18 CFR 157.208(d)* must include maps and a description of the erosion control, revegetation and maintenance, and stream and wetland crossings procedures. This prior notice would not apply if DOT safety regulations required that the replacement activity be performed immediately.

8. If gas facilities are damaged, and a subsequent investigation of the event or contamination of the area restricts access to the damage site, we expect section 2.55 would prove ineffective if rapid reconstruction is required to restore service. In such circumstances, a company would be compelled to reroute around its damaged facilities, which would require construction outside the footprint of the existing facilities' right-of-way. Construction beyond the bounds of the existing right-of-way, and even construction within the existing right-of-way that uses temporary workspace other than that used to construct the original facility, is barred by section 2.55. n6

n6 *See 18 CFR § 2.55(b) (2002)*, Appendix A to part 2, Guidance for Determining the Acceptable Construction Area for Replacements, specifies the criteria that must be met in order to proceed under section 2.55(b), and cautions that "[i]f these guidelines cannot be met," and no exemption is applicable, "construction authorization must be obtained pursuant to another regulation under the Natural Gas Act."

9. Section 2.55 of the Commission's regulations serves, in effect, as standing authorization for pipelines to perform periodic maintenance and routine replacement. Given section 2.55's inherent limitations on the type of and location of facilities permitted, and the potential to trigger a 30-day prior notice delay, we believe that section 2.55 cannot always serve to ensure a prompt response to sudden unanticipated service disruptions. In particular, section 2.55 is inapplicable if construction outside of the existing right-of-way is needed. n7 Section 2.55 is best suited to its intended use, that being the replacement of physically deteriorated or obsolete facilities and the installation of auxiliary or appurtenant facilities to enhance operations, such as valves, pigging facilities, or communication equipment.

n7 The scope of section 2.55 is expanded in section 2.60 to include the installation and modification of "defense-related facilities," such as emergency company headquarters, emergency communications equipment, and fallout shelters at compressor stations. However, as a practical matter, the Commission does not expect this particular provision to ameliorate the other section 2.55 constraints that render these regulations unsuitable as a vehicle to recover from accidental or intentional damage.

10. The blanket authority conferred by part 157, subpart F, of the regulations provides another vehicle for reconstruction of facilities in an emergency, but this authority is also limited. Virtually all existing interstate gas pipelines hold blanket certificates allowing them to acquire, operate, abandon, replace, and rearrange certain facilities. Acting under blanket authority, a pipeline may install new facilities on a new right-of-way, which may be acquired through the pipeline's exercise of eminent domain. However, blanket authority is limited to projects costing no more than $ 21,000,000. n8 Further, blanket authority does not apply to projects that alter or add mainline loop line, or extend a mainline, or increase compression to boost mainline capacity. An important [*4122] exception to this limitation applies to mainline, lateral, and compressor replacements that do not qualify under 2.55(b) because they will result in an incidental increase in capacity n9 or because they cannot satisfy the location or workspace requirements of section 2.55(b). n10

n8 This amount is adjusted annually. By way of contrast, section 2.55 has no such project cost cap.

n9 Incremental increases in mainline capacity that occur incidental to facilities' modifications undertaken for sound engineering purposes are permitted. *18 CFR 157.202(b)(2)(i) (2002)*.

n10 *18 CFR 157.202(b)(2) (2002)*.

11. In other words, part 157, subpart F, permits replacement construction that uses temporary workspace beyond the bounds of the temporary workspace previously used to construct the original facilities as necessary to install replacement facilities. These regulations also permit locating a portion of mainline, lateral, or compressor replacement facilities outside, but presumably adjacent to, an existing right-of-way where, for whatever reason, the new facilities could not be placed entirely within the original facilities' existing right-of-way. These regulations, however, do not appear to contemplate mainline construction over an entirely different route as may be necessary to circumvent the site of a disaster if immediate replacement is necessary before the original site is again available.

12. In addition, part 157 blanket authorization, although granted automatically, is subject to compliance with standard conditions, in particular, the environmental criteria specified in § 157.206(d) and the reporting requirements of § 157.207. Any project undertaken pursuant to blanket authority that will exceed $ 7,500,000 in costs is subject to a 45-day prior notice requirement. n11 If a protest to a proposal is submitted during this time, and the project sponsor is unable to resolve the objection within another 30 days, then instead of proceeding under blanket authority, the prior notice filing is treated as an application for section 7(c) certificate authorization.

n11 *18 CFR 157.205 (2002)*. Further, before initiating construction or easement negotiations, a pipeline company seeking to act under blanket authorization is expected to make a good faith effort to provide 30-day prior notice to all affected landowners. *18 CFR § 157.203(d) (2002)*.

13. While section 2.55 and part 157 of the Commission's regulations are commonly employed for routine business activities, part 284, subpart I, of the regulations applies only in an emergency. n12 Under part 284, a pipeline may extend its facilities, interconnect with other pipelines, sell gas as needed to maintain adequate service or serve particular customers, and increase gas deliveries in order to meet weather-induced demand. However, approval for facilities and

services under part 284 is provisional; the regulations only apply to actions that are anticipated to last no longer than 60 days, n13 since it is expected that the pipeline will be able to reconstitute service within this time frame or will seek another source of authorization for its actions. n14 Although part 284 places no explicit limitation on the types of facilities or transactions covered, these regulations have not been viewed as applicable to long-term or large-scale undertakings. In practice, these emergency regulations have typically been used for small-scale efforts, such as installing a tap. Also, the part 284 emergency regulations do not provide the pipeline with the right to acquire easements by means of eminent domain.

n12 "Emergency" is defined as an actual or expected shortage of gas supply or capacity that would disrupt existing service; a sudden unanticipated loss of gas supply or capacity; an anticipated loss of gas supply or capacity due to a foreseeable facility outage resulting from a natural disaster beyond the company's control; or a situation in which the company determines that immediate action is needed or will be needed to protect life, health, or property.

n13 A single, additional 60-day extension may be requested. Although the part 284, Subpart I, regulations may exempt a gas company, Hinshaw pipeline, or intrastate pipeline from NGA section 7 jurisdiction in order to respond to an emergency, if emergency conditions persist beyond 120 days (60 days plus a 60-day extension), then an NGA section 7(c) certificate would be required for permanent authority to continue operations.

n14 *See, e.g., Northern Natural Gas Company, 64 FERC 61,187, at 62,562-63 (1993).*

*Issues Regarding the Commission's Existing Authority*

14. The Commission believes that its existing authority is adequate to manage a timely response to most foreseeable types of emergencies caused by damage to gas facilities. n15 Conference participants, however, have identified certain circumstances that could inhibit a timely response. We are persuaded that if facilities sustain sudden, significant, unanticipated damage, and restoring service requires construction of mainline facilities over a new right-of-way, our existing regulations may not always allow for a rapid or sufficiently expansive response to such an emergency.

n15 The Commission requested comments on whether it would be prudent to prepare for emergencies by directing pipelines to build redundant facilities. No participant endorsed this approach.

15. INGAA urges the Commission to take the lead in expediting emergency permits and authorizing necessary facilities. INGAA proposes that the Commission, following notification by a pipeline that an emergency exists, authorize the replacement of facilities as necessary to restore service, whether within or outside of an existing right-of-way. INGAA suggests the Commission consider including a certificate or tariff provision to authorize emergency construction outside of an existing right-of-way. INGAA does not propose that this provision be self implementing, but rather suggests that it be subject to the Director of Energy Projects finding that an emergency exists and the Commission finding the actions of the pipeline to be appropriate.

16. A representative of Pennsylvania's Public Utility Commission recommends that the Commission require pipelines to incorporate an emergency response plan as a condition of a certificate, and that as part of a certificate authorization, the Commission grant waivers for certain operations in the event of specific service interruptions, such as authorization to establish a new right-of-way to detour around a damaged facility site when necessary to expedite restoration. Conference participants suggest that the Commission amend its part 284 emergency regulations to allow for actions that last longer than the current 60-day limit.

17. Several participants at the April 2002 conference stress the need to plan for and to coordinate the efforts of local, state, and federal authorities to respond to an emergency, and suggest the Commission take the lead in this effort. n16 In large part, events have effectively overtaken such suggestions. In May 2002, DOE created an Office of Energy Assurance, charged with the mission of working in close collaboration with local and state governments and the private sector to guard against and respond to energy disruptions. The Office of Energy Assurance has formed a team composed of DOE personnel, DOE laboratories and facilities, other federal agencies, local and state officials, and the owners and operators of the energy infrastructure. This team's task is to identify critical components and interdependencies of the energy system, identify threats to the system, recommend actions to correct or mitigate vulnerabilities, plan for response and recovery in the event of disruptions, and provide technical response support during emergencies.

n16 For example, several comments propose the formation of an interagency crisis task force, made up of representatives of local, state, and federal agencies, charged with coordinating and expediting emergency response and recovery.

18. The Office of Energy Assurance's statement of mission and goals indicate that it will function as the federal managerial focal point for: Activities involving the location and content of  [*4123]  equipment stockpiles; overseeing industry mutual aid pooling and exchange programs; identifying critical facilities, equipment, and personnel; establishing communications protocol; and developing security and contingency plans. n17

n17 In the event of an emergency, numerous entities will be required to coordinate communications and actions. To facilitate recovery efforts, the Commission will make available via its Web site a list of the entities likely to be involved in these efforts.

19. On November 13, 2002, the President signed into law the Homeland Security Act of 2002. Among other things, that law establishes that within the Department of Homeland Security the Undersecretary of Emergency Preparedness and Response will be responsible for coordinating federal response resources in the event of a terrorist attack or other disaster. In light of these developments, the Commission concludes that it can best support intra- and inter-governmental and industry coordination by contributing to and participating in the efforts of the Department of Homeland Security and DOE's Office of Energy Assurance.

20. The regulatory amendments proposed herein are limited in that they do not address sudden, yet unanticipated, loss of gas or capacity attributable to safety concerns. Nevertheless, we note that section 16(a)(1) of the Pipeline Safety Improvement Act of 2002 establishes an interagency committee, headed by the Council on Environmental Quality (CEQ), with the Commission among its members, "to develop and ensure implementation of a coordinated environmental review and permitting process in order to enable pipeline operators to commence and complete all activities necessary to carry our pipeline repairs" expeditiously. To the extent further changes to the Commission's rules may be necessary to address safety concerns, we expect the interagency committee called for by this Act will provide a vehicle for identifying the relevant issues.

## Proposed Regulations

21. To allow pipelines to expedite recovery following an emergency due to a sudden unanticipated loss of gas or capacity that threatens life, health, or property, the Commission is proposing to expand the scope of construction permitted under the blanket certificate authority of part 157, subpart F, of its regulations. One issue conference participants raised repeatedly was the prospect that if mainline facilities are damaged, and the facility owner's access to the damaged site is temporarily restricted, no regulatory remedy now exists to ensure the rapid restoration of service. The logical alternative to repairing facilities at the point of damage would be to build around that point. The Commission's section 2.55 regulations do not allow replacement and repair activities to take place outside of facilities' original right-of-way, and so preclude any such rerouting. As explained, part 157 is less restrictive, but still does not permit the extensive deviation from an existing right-of-way that would presumably be necessary to circumvent a restricted or quarantined area. Accordingly, we propose expanding part 157 to permit pipeline companies to establish new rights-of-way around an accident site in order to reconnect a severed mainline or to construct other facilities as needed to restore service. Further, to the extent that a pipeline company could compensate for damage to one portion of its system by rearranging gas flows or increasing throughput on an unaffected portion of its system, we propose to place such system modifications within the category of "eligible facilities."

22. As is, part 157 blanket authorization only applies to a limited set of "eligible facilities," and specifically excludes the extension, expansion, or looping of a mainline. n18 As noted above, this restriction was broadened incrementally in 1999 to include mainline replacements undertaken for sound engineering reasons that either created an incidental increase in mainline capacity or did not lie within the original facilities' footprint, and consequently were outside of the section 2.55(b) replacement parameters. n19 However, this modification in the breadth of eligible facilities did not contemplate the more extensive rerouting that would be required to reach around a cordoned accident area. n20 We request comments on amending § 157.202 of our regulations to allow a pipeline to reconstitute disrupted service by routing around, laying loop line along, or boosting compression on a damaged mainline.

n18 *18 CFR 157.202(b)(2)(ii)(B)* and (C) (2002).

n19 Order No. 603, FERC Stats. & Regs. 31,073, at 30,791-94 (1999).

n20 Order No. 603 envisioned replacements such as "a section of deteriorated or obsolete 18-inch pipe located between existing 20-inch sections," where replacing the 18-inch pipe with a larger 20-inch segment would serve the sound engineering purpose of making pigging the combined stretch of pipe possible. Order No. 603 also recognized the need to grant natural gas companies the flexibility to act under blanket certificate authority to replace facilities where con-

struction of new facilities might spill over the original temporary workspace or permanent right-of-way. Nothing in Order No. 603 envisioned replacement of facilities outside the existing right-of-way by the creation of an entirely new route due to the need to circumvent an accident site.

23. This proposal is not intended as an open-ended expansion of existing blanket authority. The enlargement of the scope of permissible actions under part 157, subpart F, is restricted to actions necessary to restore service after an interruption due to an emergency event. By way of contrast, if hydrostatic testing discloses a structural weakness in a pipeline, while this weakness has the potential to cause an interruption in service, unless the pipeline has actually ruptured, these circumstances would not qualify as an emergency, as there would be no sudden unanticipated loss of gas or capacity. Accordingly, the pipeline company would be expected to act under other existing authority, such as section 2.55 of our regulations, to rectify the identified structural weakness. Similarly, part 157 would not apply to system modifications that boosted compression or mainline capacity unless the increase was undertaken as part of a program to restore service cut off as a consequence of an event resulting in a sudden unanticipated loss of gas or capacity.

24. We propose to expand the "eligible facility" definition by amending the last line of § 157.202(b)(2)(i) as follows: "Replacements for the primary purpose of creating additional main line capacity are not eligible facilities; however, replacements for the primary purpose of restoring service to prevent loss of life, impairment of health, or damage to property due to sudden unanticipated damage to main line facilities are eligible facilities." In addition, we propose to amend § 157.202(b)(2)(ii)(C), which lists certain exclusions from eligible facilities, to clarify that facilities, including looping and compression, that alter the capacity of a mainline, when necessary to reconstitute service after sudden unanticipated damage to a mainline, will be considered replacement facilities for the primary purpose of restoring service, and be defined as eligible facilities. Specifically, we propose to revise § 157.202(b)(2)(ii)(C) to read as follows: "A facility, including compression and looping, that alters the capacity of a main line, except replacement facilities covered under § 157.202(b)(2)(i)."

25. We believe this expanded blanket authority fills a gap that now confronts a pipeline unable to initiate recovery efforts when (1) section 2.55 of the regulations is inapplicable because of the need to construct outside the footprint of the existing facilities, (2) the  [*4124]  part 284, subpart I, emergency provisions are insufficient because the anticipated duration of the reconstruction effort will be longer than 60 days, or (3) new facilities needed to restore service are not permitted under the existing part 157, subpart F, regulations because the new facilities would expand capacity on, extend, or loop a mainline. Although the proposed revisions enlarge the § 157.202 definition of eligible facilities, other constraints on construction under blanket authority remain.

26. Among these other applicable constraints are regulations governing prior notice requirements, project cost limits, reporting requirements, and the standard conditions of § 157.206, covering environmental compliance. While environmental compliance with certain statutory requirements lies beyond the Commission's jurisdictional purview, and is thus beyond our discretion to affect, we can act on our own to modify compliance with our own regulations. We propose to do so by removing prior notice and project cost limit requirements to permit a company to act under blanket authority to respond to an emergency caused by a sudden unanticipated loss of gas or capacity that threatens life, health, or property.

27. Provided a project meets the relevant part 157 criteria, and will cost no more than $ 7.5 million, n21 blanket authorization is automatic, and construction can commence at the sponsoring company's discretion. However, projects expected to exceed $ 7.5 million are subject to a 45-day prior notice provision, pursuant to § 157.205(a). We propose to modify § 157.205(a) to provide an exception to these prior notice proceedings for emergency reconstruction, inserting the phrase "except for activity required to restore service to prevent loss of life, impairment of health, or damage to property in an emergency due to a sudden unanticipated loss of natural gas supply or capacity," as follows: "No activity described in §§ 157.208(b), 157.211(a)(2), 157.214 or 157.216(b), except for activity required to restore service in an emergency due to a sudden unanticipated loss of natural gas supply or capacity, is authorized by a blanket certificate granted under this subpart, unless, prior to undertaking such activity" notice requirements are fulfilled. This proposed qualification presumes that in an emergency, the public interest in rectifying service at the earliest possible date will outweigh the public benefit of providing 45-day advance notice of planned reconstruction.

n21 As previously noted, this amount is adjusted annually, and appears in Table 1, column 1, of *18 CFR 157.208(d) (2002)*.

28. We note that although this proposed amendment will omit the prior 45-day public notice requirement of § 157.205(a) in an emergency, we retain the separate prior landowner notice requirement of § 157.203(d). Section 157.203(d) directs a company to make a good faith effort to notify all affected landowners 30 days prior to commencing

construction. We expect a company that seeks to build around an accident site, as part of the process of considering alternative routes, will make a good faith effort to identify and inform affected landowners in advance of any new construction. Given the process involved in acquiring new easements, and given that landowners, to which pipeline companies must give 30-days notice pursuant to the Commission's landowner notification requirements, may agree to waive the remainder of that 30-day notice period, we do not expect this prior landowner notice provision to impede a company's capability to commence emergency reconstruction activities. The Commission recognizes that there may be instances where timely reconstruction of facilities could be delayed by companies' inability to obtain landowners' agreement to waive the remainder of the 30-notice period. In such instances, the Commission will consider requests to waive the remainder of the 30-day notice period.

29. Even with mainline rerouting without prior notice, action under blanket authority would be thwarted if emergency reconstruction expenses were to exceed the part 157 project cost limit. Accordingly, we propose to lift the project cost cap for emergency response efforts. This proposed exemption is not to be interpreted as an invitation to undertake open-ended system expansions; it applies exclusively to emergency response projects, and extends only as far as is necessary to restore service to pre-emergency capacity levels. n22 Therefore, we propose to amend § 157.208(a) to provide for automatic authorization for emergency reconstruction, without any restriction on project cost, by interjecting the phrase "or if the project is required to restore service to prevent loss of life, impairment of health, or damage to property in an emergency due to a sudden unanticipated loss of natural gas supply or capacity" as follows:

n22 In an effort to encourage pipeline companies to quickly add capacity to meet pressing market needs in the Western United States (particularly California), we adopted several temporary measures. Removing Obstacles to Increased Electric Generation and Natural Gas Supply in the *Western United States, 94 FERC 61,272 (2001), further order and reh'g dismissed, 95 FERC 61,225 (2001), order on requests for clarification and reh'g, 96 FERC 61,155 (2001).* Inter alia, for the period May 14, 2001, through April 30, 2002, we increased the dollar limitations on blanket certificate projects under both the automatic provisions and the prior notice provisions for construction of facilities to deliver additional gas into the western region, expanded the scope of eligible facilities for such projects, and provided, upon request, for shortening of the 45-day prior notice time frame. We propose an analogous approach here, not to encourage additional construction, but to establish authority to be held in reserve, to be called upon to meet a specific need.

If the project cost does not exceed the cost limitations set forth in column 1 of Table I, under paragraph (d) of this section, or if the project is required to restore service in an emergency due to a sudden unanticipated loss of natural gas supply or capacity, the certificate holder is authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility.

30. In an emergency, the Commission expects to make, and expects affected pipelines to make, every reasonable effort to restore essential service as rapidly as possible. We believe these proposed amendments to part 157 offer the best way to authorize emergency reconstruction, particularly in view of the comparatively sparse use of and ambiguities that remain regarding the scope of the part 284 emergency provisions. As noted, this proposed expanded blanket authority will apply only when acting in response to an emergency due to a sudden unanticipated loss of gas supply or capacity that threatens life, health, or property. n23

n23 Emergency circumstances are extraordinary circumstances, and but for emergencies, we expect companies to proceed, as they have to date, to manage gas flows, system maintenance, and construction on their systems under the current authorities. Because we do not anticipate any need for the Commission to arbitrate what constitutes an emergency, we decline to adopt INGAA's proposal that the Commission declare that an emergency exists in order to trigger exemptions and actions. We believe pipeline companies will be able to identify emergencies conditions on their systems and invoke the proposed expanded blanket authority, as appropriate, without any preliminary determination from the Commission.

31. Under the standard part 157.207 reporting requirements, a company submits an annual report-a compilation describing projects completed pursuant to blanket authority during the year. Since we are proposing to provide self-implementing automatic authorization for emergency reconstruction and to omit prior notice for emergency reconstruction, we find it prudent to require, in addition to an annual report, that companies relying  [*4125]  on automatic authorization for emergency activities report to the Commission their preparations and plans before breaking ground for reconstruction. Therefore, we propose to amend § 157.207, which provides for an annual retrospective report, listing all blanket projects completed in the prior year. We propose to modify this to require prospective reporting for activities

intended to restore service in response to an emergency, with the pipeline company informing the Commission of its intended activities in advance of reconstruction.

32. We propose to include an emergency reporting requirement in § 157.207 by revising the introductory paragraph of that section to read as follows: "In the case of an emergency due to a sudden unanticipated loss of natural gas supply or capacity, the certificate holder must file, in the manner prescribed in §§ 157.6(a) and 385.2011 of this chapter, a report describing activity to be undertaken to restore service in advance of such activity in accordance with paragraph (i) of this section. In addition, on or before May 1 of each year, the certificate holder must file, in the manner prescribed in §§ 157.6(a) and 385.2011 of this chapter, an annual report of all blanket certificate activities, including all activities undertaken to restore service following a sudden unanticipated loss of natural gas supply or capacity."

33. We recognize that in filing a report of an intended emergency activity, a company will be unable to supply all the information routinely set forth in a standard annual blanket report. For example, although it will not be possible to provide, before the fact, the § 157.208(e)(3) statement of the "actual installed cost of each facility item," a company planning to proceed under blanket emergency authorization should nevertheless be able to provide projected costs. Thus, a proposed new paragraph (i) of § 157.207 would require companies' reports of intended emergency activities to provide to the extent practicable the information required by the regulations cross-referenced by § 157.207 for the type of facilities involved. We do not expect this reporting requirement will retard efforts to restore interrupted service, since the report can be prepared coincident with a company's compliance with landowner notification and environmental requirements. Note that the advance report to the Commission is not an application awaiting a Commission response or a prior notice type of proceeding with a requisite waiting period. The report serves only to apprise the Commission of pending activity, and the submission of the description of the intended activity and location constitutes satisfaction of this reporting requirement.

34. We do not view the proposed amendments to our regulations as a significant departure from our past practices. We routinely receive requests for exceptions from full regulatory compliance, and we routinely grant such requests when a company demonstrates good cause therefor. Further, implicit in the NGA section 7 temporary certificate, the section 2.55 replacement and repair regulations, and the part 284 emergency provision, is the presumption that certain categories of equipment failure, human error, and natural disaster require immediate action. The Commission stands willing to grant pipeline companies latitude to construct, reconstruct, and rearrange facilities in an emergency due to a sudden unanticipated loss of gas or capacity that threatens life, health, or property. Finally, we do not expect the proposed amended provisions will be put to use with any regularity, since unlike the standard part 157 regulations, which are employed for routine or relatively minor system modifications, the emergency blanket provisions, by their nature, are only applicable in unexpected and atypical events.

35. Although the Commission can determine that in certain circumstances the public convenience and necessity favor construction and transportation without full adherence to each existing certificate condition, the Commission cannot compromise compliance with statutory or regulatory requirements over which it has no jurisdictional authority. For example, regardless of any circumstances or any Commission finding, the environmental provisions of the National Environmental Policy Act (NEPA) and the safety provisions of DOT must be met. Thus, here, as in our 2001 temporary modification of part 157, "[w]e emphasize that projects under the expanded blanket authority will remain subject to our existing environmental regulations and compliance provisions" n24 as set forth in § 157.206(d) of our regulations.

n24 *Id., 95 FERC 61,225, at 61,776.*

36. In an emergency, in addition to the need to identify and resolve environmental and safety issues promptly, easements for a new right-of-way may be needed promptly. If affected landowners agree, it may be possible to obtain the right-of-way without undue delay. Otherwise, even with the right to exercise eminent domain that is available to a pipeline company acting under part 157 blanket certificate authority, securing land rights may extend the duration of the service interruption.

37. Since the Commission lacks the authority to modify certain environmental, safety, and land acquisition procedures, we will, as noted, compile and maintain a list of agencies that hold relevant permitting authorities. (A state's governor, for example, may have the authority to acquire easements expeditiously in the case of a state-declared emergency.) Promptly alerting entities that will be involved in an emergency response should speed the planning, permissions, and reconstruction process.

38. We expect these proposed amendments to part 157 will provide pipeline companies confronting an emergency outage with the flexibility to act on their own initiative, without the delay inherent in the process of applying for case

specific authorizations from the Commission. At the same time, the Commission will retain regulatory oversight through the existing blanket certificate procedures sufficient to safeguard the public interest by ensuring pipelines respect landowner property rights and adhere to environmental and safety requirements. Any waiver of the regulatory requirements to restore service in an emergency will be subject to review by the Commission or its delegated agent.

39. Finally, despite the advance report we are proposing in new subparagraph (i) of § 157.207, we are concerned that emergency projects under expanded blanket authority should not proceed without Commission awareness of the details of the project as it goes forward. Accordingly, we will also propose to require any pipeline company that undertakes to replace facilities under the expanded blanket certificate authority proposed herein to consult with Commission staff during the period that the facilities are under construction and we shall require the Director of the Office of Energy Projects (OEP) to designate a staff member to be available to advise and consult on any such project. A staff member designated by the Director of OEP shall be present on the construction site as necessary or appropriate based on the nature of the project and shall have delegated authority to take whatever steps are necessary to insure the protection of all environmental resources during activities associated with construction of the project. This authority shall allow the design and implementation of any additional measures deemed necessary (including stop work authority) to   [*4126] assure continued compliance with the intent of the environmental conditions as well as the avoidance or mitigation of adverse environmental impact resulting from project construction.

**Request for Comments**

40. The Commission requests that comments on this proposal specifically address whether the proposed expansion of pipeline companies' authority under their part 157 blanket certificates will be sufficient in scope to adequately address situations where immediate action is necessary to restore gas service to prevent loss of life, impairment of health, or damage to property, and to provide for reconstruction of interstate pipeline facilities that have been destroyed or compromised by a sudden, unforeseen natural event or deliberate effort to disrupt the flow of natural gas. Commenters are invited to submit their views and comments on the need for further or broader action by the Commission or Congress.

41. The Commission seeks comment on whether the blanket certificate authorization to construct mainline facilities outside an existing right-of-way should be self-implementing or, rather, subject to a finding by the Commission that an emergency exists and the pipeline's proposed actions are appropriate. Specifically, is INGAA's suggested approach sufficient in scope to address situations where immediate action is necessary to restore gas service lost due to a sudden unanticipated loss of gas or capacity? In the alternative, should there be a short review period in advance of commencing construction to provide the Commission an opportunity to review the actions proposed to be taken by the pipeline? For example, should the regulations provide that unless the Commission does not act to prohibit or modify the pipeline's replacement construction proposal within three days of a pipeline's advance report of intended reconstruction, then the pipeline may commence reconstruction (compare § 284.264(b)(1)(ii) of the regulations)? Lastly, we seek comment on whether the proposed expanded emergency blanket authority should be restricted to include activities undertaken in response to a sudden unanticipated loss of gas or capacity due only to a natural disaster or act of deliberate damage.

**Information Collection Statement**

42. The Office of Management and Budget (OMB) regulations require that OMB approve certain information collection requirements imposed by agency rule. n25 This proposed rule will not impact information collection. Accordingly, there is no cause to submit this proposed rule to OMB for review under Section 3507(d) of the Paperwork Reduction Act of 1995, *44 U.S.C. 3507*(d).

n25 5 CFR part 1320 (2002).

**Environmental Analysis**

43. The Commission is required to prepare an EA or EIS for any action that may have a significant adverse effect on the human environment. n26 The Commission has categorically excluded certain actions from these requirements as not having a significant effect on the human environment. n27 Section 380.4(a)(21) provides that neither an environmental assessment nor an environmental impact statement will be prepared for the approval of blanket applications pursuant to prior notice filings under §§ 157.209 through 157.218 of the blanket certificate regulations. The actions proposed herein provide for the emergency reconstruction of previously authorized facilities and thus fall within categorical exclusions in the Commission's regulations for rules that are clarifying, corrective, or procedural, for infor-

mation gathering, analysis, and dissemination, and for the sale, exchange, and transportation of natural gas that requires no construction of facilities. n28 Therefore, an environmental assessment is unnecessary and has not been prepared in this rulemaking.

n26 Order No. 486, Regulations Implementing the National Environmental Policy Act, *52 FR 47897* (Dec. 17, 1987), FERC Stats. & Regs. Preambles 1986-1990 30,783 (1987).

n27 *18 CFR 380.4 (2002).*

n28 *See 18 CFR 380.4(a)(2)(ii), 380.4(a)(5), 380.4(a)(27) (2002).*

### Regulatory Flexibility Act Certification

44. The Regulatory Flexibility Act of 1980 (RFA) n29 requires agencies to prepare certain statements, descriptions, and analyses of proposed rules that will have significant economic impact on a substantial number of small entities. Agencies are not required to make such an analysis if a rule would not have such an effect. The Commission does not believe that this proposed rule would have such an effect on small business entities, since the proposed amendments to our regulations would apply only to interstate pipelines, most of which are not small businesses. Accordingly, pursuant to section 605(b) of the RFA, the Commission proposes to certify that the regulations proposed herein will not have a significant adverse impact on a substantial number of small entities.

n29 *5 U.S.C. 601*-612.

### Comment Procedures

45. The Commission invites interested persons to submit written comments on the matters and issues proposed in this notice to be adopted, including any related matters or alternative proposals that commenters may wish to discuss. An original and 14 copies of comments must be filed with the Commission no later than February 27, 2003 and may be filed either in electronic or paper format. Those filing electronically do not need to make a paper filing.

46. Documents filed electronically via the Internet can be prepared in a variety of formats, including WordPerfect, MS Word, Portable Document Format, Rich Text Format, or ASCII format, as listed on FERC's Web site at *http://ferc.gov,* under the eFiling link. The eFiling link provides instructions for how to log in and complete an electronic filing. First time users will have to establish a user name and password. The Commission will send an automatic acknowledgment to the sender's e-mail address upon receipt of comments. User assistance for electronic filing is available at 202-502-8258 or by e-mail to *efiling@ferc.gov.* Comments should not be submitted to the e-mail address.

47. For paper filings, the original and 14 copies of such comments should be submitted to the Office of the Secretary, Federal Energy Regulatory Commission, 888 First Street, NE., Washington DC 20426, and should refer to Docket Nos. RM03-4-000 and AD02-14-000.

48. All comments will be placed in the Commission's public files and will be available for inspection in the Commission's Public Reference Room at 888 First Street, NE., Washington DC 20426, during regular business hours. Additionally, all comments may be viewed, printed, or downloaded remotely via the Internet through FERC's Web site using the Federal Energy Regulatory Records Information System (FERRIS) link.

### Document Availability

49. In addition to publishing the full text of this document in the **Federal Register**, the Commission provides all interested persons an opportunity to view and/or print the contents of this document via the Internet through FERC's Web site at *http://www.ferc.gov* and in FERC's Public Reference Room during normal business hours (8:30 a.m. to 5:00 p.m. Eastern time) at 888 First Street, NE., Room 2A, Washington, DC 20426.

50. From FERC's Home Page on the Internet, this information is available in [*4127] FERRIS. The full text of this document is available via FERRIS in Portable Document Format (PDF) and WordPerfect format for viewing, printing, and/or downloading. To access this document in FERRIS, type the docket number excluding the last three digits of this document in the docket number field.

51. User assistance is available for FERRIS and FERC's Web site during normal business hours. For assistance, contact FERC Online Support at *FERCOnlineSupport@ferc.gov* or toll-free at (866) 208-3676, or for TTY contact (202) 502-8659.

List of Subjects in 18 CFR part 157

Administrative practice and procedure, Natural gas, Reporting and record keeping requirements.

By direction of the Commission.

**Magalie R. Salas,**

*Secretary.*

In consideration of the foregoing, the Commission proposes to amend part 157, Chapter I, Title 18, Code of Federal Regulations, as follows.

## PART 157--APPLICATIONS FOR CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY AND FOR ORDERS PERMITTING AND APPROVING ABANDONMENT UNDER SECTION 7 OF THE NATURAL GAS ACT

1. The authority citation for part 157 continues to read as follows:

**Authority:** *15 U.S.C. 717-717W, 3301-3432; 42 U.S.C. 7101-7352.*

2. In § 157.202, the last sentence in paragraph (b)(2)(i) and paragraph (b)(2)(ii)(C) are revised to read as follows:

### § 157.202 -- Definitions.

* * * * *

(b) *Subpart F definitions.* * * *

(2)(i) * * * Replacements for the primary purpose of creating additional main line capacity are not eligible facilities; however, replacements for the primary purpose of restoring service to prevent loss of life, impairment of health, or damage to property due to sudden unanticipated damage to main line facilities are eligible facilities.

(ii) *Exclusions:* * * *

(C) A facility, including compression and looping, that alters the capacity of a main line, except replacement facilities covered under § 157.202(b)(2)(i);

* * * * *

3. In § 157.205, paragraph (a), introductory text, is revised to read as follows:

### § 157.205 -- Notice procedure.

(a) *Applicability.* No activity described in §§ 157.208(b), 157.211(a)(2), 157.214 or 157.216(b), except for activity required to restore service to prevent loss of life, impairment of health, or damage to property in an emergency due to a sudden unanticipated loss of natural gas supply or capacity, is authorized by a blanket certificate granted under this subpart, unless, prior to undertaking such activity:

* * * * *

4. In § 157.207, the introductory text is revised and a new paragraph (i) is added to read as follows:

### § 157.207 -- General reporting requirements.

In the case of an emergency due to a sudden unanticipated loss of natural gas supply or capacity, the certificate holder must file, in the manner prescribed in §§ 157.6(a) and 385.2011 of this chapter, a report describing activity to be undertaken to restore service in advance of such activity in accordance with paragraph (i) of this section. In addition, on or before May 1 of each year, the certificate holder must file, in the manner prescribed in §§ 157.6(a) and 385.2011 of this chapter, an annual report of all blanket certificate activities, including all activities undertaken to restore service following a sudden unanticipated loss of natural gas supply or capacity. The annual report must be signed under oath by a senior official of the company and list for the previous calendar year:

* * * * *

(i) Reports describing emergency activities to be undertaken to restore service following a sudden unanticipated loss of natural gas supply or capacity shall to the extent practicable contain the information for the facilities as required by the pertinent regulatory provisions specified in paragraphs (a) through (h) of this section. The report shall include the estimated costs of each activity and an updated USGS 7 1/2 minute series (scale 1:24000) topographic map (or map of equivalent or greater detail, as appropriate) showing the location of existing and proposed facilities, and indicating the location of any sensitive environmental areas crossed by either the existing or proposed facilities.

5. In § 157.208, paragraph (a) is revised to read as follows:

**§ 157.208 -- Construction, acquisition, operation, replacement, and miscellaneous rearrangement of facilities.**

(a) *Automatic authorization.* If the project cost does not exceed the cost limitations set forth in column 1 of Table I, under paragraph (d) of this section, or if the project is required to restore service to prevent loss of life, impairment of health, or damage to property in an emergency due to a sudden unanticipated loss of natural gas supply or capacity, the certificate holder is authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility. For projects undertaken pursuant to this section to restore service to prevent loss of life, impairment of health, or damage to property due to a sudden unanticipated loss of natural gas supply or capacity, the Director of the Office of Energy Projects shall designate a staff member to advise and consult with the certificate holder, and the certificate holder shall consult with the designated staff member during the period that the construction is in progress. A staff member designated by the Director of the Office of Energy Projects shall be present on the construction site as necessary or appropriate based on the nature of the project and shall have delegated authority to take whatever steps are necessary to insure the protection of all environmental resources during activities associated with construction of the project. This authority shall allow the design and implementation of any additional measures deemed necessary (including stop work authority) to assure continued compliance with the intent of the environmental conditions as well as the avoidance or mitigation of adverse environmental impact resulting from project construction.

* * * * *

[FR Doc. 03-1698 Filed 1-27-03; 8:45 am]

BILLING CODE 6717-01-P [FEDREG][VOL]*[/VOL][NO]*[/NO][DATE]*[/DATE][PRORULES]



UNITED STATES CODE SERVICE
Copyright © 2014 Matthew Bender & Company, Inc.
a member of the LexisNexis Group (TM)
All rights reserved.

*** Current through PL 113-107, approved 5/24/14 ***

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV. JURISDICTION AND VENUE
CHAPTER 83. COURTS OF APPEALS

**Go to the United States Code Service Archive Directory**

*28 USCS § 1292*

§ 1292.  Interlocutory decisions

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

  (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

  (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

  (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction--

  (1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this *title [28 USCS § 1295]*; and

  (2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

(d) (1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this *title [28 USCS § 256(b)]*, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion,

permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this *title [28 USCS § 798(b)]*, or when any judge of the United States Claims Court [United States Court of Federal Claims], in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Claims Court [Court of Federal Claims], as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Claims Court [Court of Federal Claims] or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

(4) (A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Claims Court [United States Court of Federal Claims] under section 1631 of this *title [28 USCS § 1631]*.

(B) When a motion to transfer an action to the Claims Court [Court of Federal Claims] is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Claims Court [Court of Federal Claims] pursuant to the motion shall be carried out.

(e) The Supreme Court may prescribe rules, in accordance with section 2072 of this *title [28 USCS § 2072]*, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

**HISTORY:**
    (June 25, 1948, ch 646, 62 Stat. 929; Oct. 31, 1951, ch 655, § 49, 65 Stat. 726; July 7, 1958, P.L. 85-508, § 12(e), 72 Stat. 348; Sept. 2, 1958, P.L. 85-919, 72 Stat. 1770; April 2, 1982, P.L. 97-164, Title I, Part A, § 125, 96 Stat. 36; Nov. 8, 1984, P.L. 98-620, Title IV, Subtitle C, § 412, 98 Stat. 3362; Nov. 19, 1988, P.L. 100-702, Title V, § 501, 102 Stat. 4652; Oct. 29, 1992, P.L. 102-572, Title I, § 101, Title IX, § 906(c), 106 Stat. 4506, 4518.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

Prior law and revision:
    Based on *title 28, U.S.C., 1940 ed., §§ 225(b), 227, 227a*, and section 61 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, § 128, 129, 36 Stat. 1133, 1134; Feb. 13, 1925, ch. 229, § 1, 43 Stat. 937; Feb. 28, 1927, ch. 228, 44 Stat. 1261; Apr. 3, 1926, ch. 102, 44 Stat. 233; May 20, 1926, ch. 347, § 13(a), 44 Stat. 587; Apr. 11, 1928, ch. 354, § 1, 45 Stat. 422; May 17, 1932, ch. 190, 47 Stat. 158).
    Section consolidates sections 225(b), 227 and part of 227a of title *28, U.S.C., 1940* ed., with necessary changes in phraseology to effect the consolidation.
    The second paragraph of *section 225(b) of title 28, U.S.C.*, 1940 ed., relating to review of decisions of the district courts, under section 9 of the Railway Labor Act (section 159 of title 45), was omitted as covered by section 1291 of this title.
    Words in *section 227 of title 28, U.S.C.*, 1940 ed., "or decree," after "interlocutory order," were deleted, in view of *Rule 65 of the Federal Rules of Civil Procedure*, using only the word "order."
    Provisions of sections 227 and 227a of title *28, U.S.C., 1940* ed., relating to stay of proceedings pending appeal were omitted as superseded by *Federal Rules of Civil Procedure, Rule 73*.

Provisions of *section 227 of title 28, U.S.C.*, 1940 ed., requiring an additional bond by the district court as a condition of appeal were omitted in view of *Federal Rules of Civil Procedure, Rule 73.*

Words in *section 227 of title 28, U.S.C.*, 1940 ed., "and sections 346 and 347 of this title shall apply to such cases in the circuit courts of appeals as to other cases therein," at the end of the first sentence of *section 227 of title 28, U.S.C.,* 1940 ed., were deleted as fully covered by section 1254 of this title, applicable to any case in a court of appeals.   Other procedural provisions of said section 227 were omitted as covered by section 2101 et seq. of this title.

In subsection (4), which is based on *section 227a of title 28, U.S.C.*, 1940 ed., words "civil actions" were substituted for "suits in equity" and word "judgments" was substituted for "decree," in view of *Rules 2 and 54 of the Federal Rules of Civil Procedure.*

The provision of sections 227 and 227a of title *28, U.S.C., 1940* ed., that appeal must be taken within thirty days after entry of order, decree or judgment is incorporated in section 2107 of this title.

The provisions of *section 227a of title 28, U.S.C.*, 1940 ed., relating to stay of proceedings pending appeal, were omitted as superseded by *Rule 73 of the Federal Rules of Civil Procedure.*

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.) Consequently the specific reference in *section 225 of title 28, U.S.C.*, 1940 ed., to "the United States district courts for Hawaii" was omitted.

The District Court for the District of Puerto Rico is not enumerated in *section 225(b) of title 28, U.S.C.*, 1940 ed., nevertheless subsection (2) of the revised section does not except such court.   Thus in conformity with the last sentence of *section 864, title 48, U.S.C.*, 1940 ed.   For distribution of said section 864, see Distribution Table.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1294 of this title.

Explanatory notes:

The bracketed words "United States Court of Federal Claims" and "Court of Federal Claims" have been inserted in subsec. (d) on the authority of § 902(b) of Act Oct. 29, 1992, P.L. 102-572 (*28 USCS § 171* note), which provides that reference in any Federal law or document to the "United States Claims Court" shall be deemed to refer to the "United States Court of Federal Claims" and that reference to the "Claims Court" shall be deemed to refer to the "Court of Federal Claims".

Amendments:

1951. Act Oct. 31, 1951, in para. (1), inserted "the District Court of Guam,".

1958. Act July 7, 1958 (effective 1/3/1959, as provided by §§ 1 and 8(c) of such Act, which appear as notes to *28 USCS § 81A* and preceding *48 USCS § 21*), in para. (1), deleted "the District Court for the Territory of Alaska," following "district courts of the United States,".

Act Sept. 2, 1958, designated the existing provisions as subsec. (a); and added subsec. (b).

1982. Act April 2, 1982 (effective 10/1/82, as provided by § 402 of such Act, which appears as *28 USCS § 171* note), in subsec. (a), in the introductory matter, substituted "Except as provided in subsections (c) and (d) of this section, the courts" for "The courts", in para. (3), substituted a concluding period for a semicolon, and deleted former para. (4), which read: "Judgments in civil actions for patent infringement which are final except for accounting."; and added subsecs. (c) and (d).

1984. Act Nov. 8, 1984, in subsec. (b), inserted "which would have jurisdiction of an appeal of such action"; and in subsec. (c)(1), inserted "or (b)".

1988. Act Nov. 19, 1988 (applicable as provided by § 502 of such Act, which appears as a note to this section) added subsec. (d)(4).

1992. Act Oct. 29, 1992 (effective on enactment, as provided by § 911 of such Act, which appears as *28 USCS § 171* note), in subsec. (d)(2), inserted "the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when".

Such Act further (effective 1/1/93, as provided by § 1101(a) of such Act, which appears as *2 USCS § 905* note) added subsec. (e).

# Guidance on Repairs to Interstate Natural Gas Pipelines Pursuant to FERC Regulations
## (July 2005)

## I. Guidance on Activities Allowed Under the FERC Regulations

The guidance we[1] are providing here is to help the interstate natural gas pipeline industry (industry), agencies and other interested parties understand better the expedition of projects under the Pipeline Safety Improvement Act of 2002 (PSIA).[1] This guidance explains which repair projects occurring as a result of the integrity management program require no/or minimal notification to the Federal Energy Regulatory Commission (FERC or Commission) before starting the project, versus those that could require a complete analysis under Commission regulations.

A summary of the potential construction options is provided below: You can access these regulations and the Natural Gas Act through our website at http://www.ferc.gov/legal/ferc-regs.asp (access Title 18 CFR).

- Section 2.55(a) (auxiliary installations)
- Section 2.55(b) (replacement of facilities)
- Blanket Certificate (Subpart F of Part 157)
- Section 7 of the Natural Gas Act (Operation and Maintenance)

## II. Summary of Allowable Activities under FERC Programs

### A. Operation and Maintenance of Certificated Projects

Operation and routine maintenance activities can be done without any authorization from FERC beyond the certificate authorizing the construction/operation of the facilities. All the testing including, if necessary, excavating the pipeline for direct inspection can be done if all construction related activities remain in the original right-of-way footprint. If the inspection indicates pipe replacement is needed, then under certain conditions it can be done under the exemption from certificate authorization provided by section 2.55(b) of the regulations (which is explained in detail below in the Summary of FERC Programs). These conditions are:

a.    The replaced pipe goes in the same permanent right-of-way as the pipe being replaced.

---

[1] The pronouns we, us, and our refer to the staff of the FERC's Office of Energy Projects.

b.   Replacement of the pipeline uses the same construction area that was used in the original installation.

c.   The new pipe has substantially equivalent capacity as the replaced pipe.

If these conditions can't be met, then the authorization conferred by the blanket certificate may be able to be used. The blanket certificate program includes conditions requiring consultations with federal agencies for endangered species, essential fish habitat, cultural resources, and coastal zone management concerns among others. The blanket certificate also has project cost limitations.

If the blanket certificate program is used but a variance from a measure in our Plan or Procedures[2] is needed, the company should contact staff immediately so that we can be sure to process a written request quickly. Initial contact information is provided at the end of this guidance. Failure to make this contact can result in a delay.

If the requirements of the blanket program cannot be met, then the company must get a project-specific certificate to authorize the replacement.

None of these regulations exempt the industry from the applicable portions of any other agency's authority. Actions covered by section 2.55(b) are not federal actions by FERC and therefore do not require any FERC involvement in compliance with any regulations such as the Endangered Species Act or the National Historic Preservation Act. However, if these or any other statutes have requirements applicable to non-governmental entities, they still apply. Under the blanket program or the regular certificate process FERC does have an obligation to be involved, either through regulation (the blanket program) or actively in the case of a certificate filing.

### B. Section 2.55(a) and 2.55(b)

This section covers installation of auxiliary facilities [2.55(a)] and replacement of facilities [2.55(b)] which are physically deteriorated or obsolete as long as there will be no reduction or abandonment of service through the facilities, and the replacement will have substantially the equivalent design capacity as the original facility. See appendix 1 to this guidance for a description of the kinds of installations which qualify as auxiliary under section 2.55(a).

---

[2] Plan = Upland Erosion Control, Revegetation and Maintenance Plan
Procedures = Wetland and Waterbody Construction and Mitigation Procedures
These documents can be found at www.ferc.gov/industries/gas/enviro/guidelines.asp

2

These 2.55(a) facilities and 2.55(b) replacements are exempt from Natural Gas Act regulations and there are no requirements to comply with standard environmental conditions.  However, all replacement facilities must be constructed within the same right-of-way, compressor station, or other aboveground facility site as the facility being replaced.  In addition, all construction activity involved with the installation of such replacements must use only the land area originally used for installation of the facilities being replaced.  Clarification of the requirement for the use of the same construction area may be found in appendix A to Part 2 of the Commission's regulations.  (See appendix 2 to this guidance)

An Annual Report must be filed by May 1 of each year, which identifies all replacement projects completed during the previous calendar year that do not exceed the cost limit specified in column 1 of Table I of 18 CFR section 157.208(d) (less than $8,000,000 in 2005).  Replacement projects that exceed this amount require advanced notification to the FERC.  Annual reports are not required for projects that require Advance Notification or that only involve aboveground replacement and did not involve compression facilities or the use of earthmoving equipment.

If a replacement project exceeds the cost limitation (over $8,000,000 in 2005), an Advance Notification must be filed at least 30 days before beginning construction (unless immediate replacement is required to comply with U.S. Department of Transportation (DOT) safety regulations).

For both the Annual Report and Advance Notification, the following information must be provided for our review of each project:

- A description of the facilities, including the pipeline length and diameter, capacity and cost, compressor horsepower, metering facilities, taps, valves, etc.;
- The specific reason for replacement of the facilities;
- For 30-day Advance Notifications, a general location map (showing the facilities in relation to existing facilities);
- A current USGS 7.5-minute-series topographic map (showing the location of each facility);
- The actual (or anticipated) start and end dates of construction; and
- A description of the procedures to be used for erosion control, revegetation and maintenance, and stream and wetland crossings (a plan should be submitted, but it does not have to be our recommended Plan and Procedures).

3

### C. Blanket Certificate - Subpart F of Part 157

Pipeline integrity repairs, replacements, construction, or abandonment activities which do not meet the requirements of 2.55(a) or 2.55(b) facilities must be authorized under one of several sections of the blanket certificate:

- section 157.208, construction, acquisition, operation, and replacement of any eligible facility or miscellaneous rearrangement of any facilities; or
- section 157.209, temporary compression facilities.

The primary portion of the blanket program which would apply to Integrity Management issues is section 157.208.[3] That section provides for two types of facilities; (1) "eligible" facilities, and (2) "any" facilities.

(1)    An "eligible" facility is completely defined in section 157.202. Briefly, it is any facility, other than mainline pipeline and compression facilities, needed to provide service within certificated levels, or facilities to allow the certificate holder to receive gas into its system and interconnections for transporters of gas under Part 284. In addition, it includes any replacement (including mainline) that doesn't qualify under section 2.55 because of incidental increases in capacity or the need to move the facility or use new workspace. Finally, replacements and the modification of facilities (including mainline) to rearrange gas flows or increase compression to restore service in an emergency due to sudden unforeseen damage to mainline facilities are eligible facilities.

If an activity involves an eligible facility or qualifies as a miscellaneous rearrangement, it may proceed under section 157.208 with certain conditions. The blanket certificate program requires that all projects must be completed in compliance with section 157.206(b). (See further discussion of these standard conditions below.)

(2)    The broad category of "any" facility is used in the context of authorization to do miscellaneous rearrangements of "any" facility. This authorization has only one restriction—it doesn't include underground storage injection/withdrawal wells. The blanket allows "miscellaneous rearrangement" of "any" facility where "miscellaneous rearrangement" means relocation or modification that does not result in any change of service, and which is on the same property or is required:

- By highway or dam construction, encroachment of residential, commercial, or industrial areas, erosion, or changes in water courses; or

---

[3] Sections 157.211, delivery points, and 157.216, abandonment, may in some cases be needed, but would usually be associated with more significant activity under section 157.208.

4

- To respond to natural forces to ensure safety or maintain operational integrity.

If there is a change of service or something that is other than a simple relocation or modification of an existing facility, then the activity is not a miscellaneous rearrangement. It becomes a construction, acquisition, operation, or replacement which can only be done if the facility is an "eligible" facility.

Minor projects[4] under section 157.208(a) and temporary compression under section 157.209 may be done automatically under the appropriate requirements of those sections. These activities are subject to the Annual Report.

In addition, construction projects under section 157.208 above $8,000,000 require prior notice to the Commission before start of the activity. For these activities, there is a 45-day period following the Commission's notice of the Prior Notice filing during which protests of the activity may be filed. If there are no protests, the activity may begin on the 46th day. If there are protests, the activity may not go forward under the blanket regulations unless the protests are withdrawn. If all protests are withdrawn, the activity may proceed on the day following the withdrawal of the last protest. Otherwise the Commission must issue an Order before the project can be constructed.

The following sections describe the standard environmental conditions which apply to any construction under the blanket program and all the primary requirements for section 157.208 activities.

### Standard Environmental Conditions for All Blanket Projects

The standard environmental conditions and requirements of section 157.206(b) apply to all projects under the blanket program of Subpart F of Part 157 or to NGPA section 311 facilities used to provide Part 284 transportation, but only if the project involves ground disturbance or changes to operational air or noise emissions. This section of the regulations states that the company will adopt the requirements set forth in section 380.15, Siting and Maintenance Requirements, and "shall issue the relevant portions thereof to construction personnel, with instructions to use them." In addition, it states that all activities will be consistent with all applicable law and the provisions of the following statutes and regulations or compliance plans developed to implement them.

- Clean Water Act and the National Pollutant Discharge Elimination System Program

---

[4] Minor projects are those that do not exceed the cost limit specified in column 1 of Table I of 18 CFR section 157.208(d) (less than $8,000,000 in 2005).

5

- Clean Air Act
- National Historic Preservation Act of 1966 (NHPA)
- Archeological and Historic Preservation Act of 1974
- Coastal Zone Management Act of 1972 (CZM)
- Endangered Species Act of 1973 (ESA)
- Executive Order 11988 (May 24, 1977) requiring federal agencies to evaluate the potential effects of any actions it may take on a floodplain
- Executive Order 11990 (May 24, 1977) requiring an evaluation of the potential effects of construction on wetlands
- Wild and Scenic Rivers Act
- National Wilderness Act
- National Parks and Recreation Act of 1978
- Magnuson-Stevens Fishery Conservation and Management Act

In order to be in compliance with these statutes under the blanket program for replacements/integrity management projects which cannot be done under 2.55(b), the project sponsor:

- Must comply with Appendix I of Subpart F, involving consultation with the U.S. Fish and Wildlife Service and/or the U.S. Department of Commerce, National Oceanic and Atmospheric Administration (as appropriate), and the project may go forward only if this consultation results in the agency(ies) concluding that:

  o There are no listed or proposed species or their critical habitat in the project area, or
  o There are listed species or their critical habitat in the project area, but the project is not likely to adversely affect a listed species or its habitat, or
  o There is no need for further consultation

- If proposed species or their critical habitat occur within the project area, the project sponsor implements (at its discretion) mitigation resulting from continued consultation with the agency(ies).
- Must comply with Appendix II of Subpart F, involving consultation with the State Historic Preservation Office (SHPO) and/or the Tribal Historic Preservation Officer (THPO) (as appropriate), and this consultation results in the agency(ies) concurring that:

  o No surveys are required, and no eligible properties are in the project area;

6

- o   Surveys are required and that as a result of the surveys no eligible properties are found in the project area; or
- o   There are eligible properties in the project area, but the project would have no effect on any such cultural resource property.

- Must obtain the appropriate state agency's determination that the project will comply with the state's coastal zone management plan unless the appropriate state agency waives its right of review, if applicable;
- Must adhere to the Commission staff's current Plan and Procedures, or must obtain staff or appropriate state or federal agency approval to use other specific alternatives;
- Must make sure that the project will not have a significant adverse impact on a sensitive environmental area (see table 1 for the list of sensitive environmental areas from 18 CFR 157.202(b)(11));
- Must make sure that the noise attributable to any new compressor station, compression added to an existing station, or any modification, upgrade or update to an existing station does not exceed an $L_{dn}$ of 55 dBA at any noise-sensitive area (NSA) (such as schools, hospitals, or residences) unless the NSA is established after facility construction or modification.

If a project cannot meet all of the above conditions, then it is not allowed to proceed under the blanket program. If it is to proceed, a filing must be made to the Commission for a certificate under section 7 of the NGA.

A project is not allowed under the blanket program if the activity is located within 0.5 mile (project authorized under section 157.208 only) of a nuclear power plant which is either operating or under construction, or for which a construction permit has been filed with the Nuclear Regulatory Commission.

7

| Table 1 |
| Sensitive Environmental Areas |
| The habitats of species which have been identified as endangered or threatened under the Endangered Species Act and Essential Fish Habitat as identified under the Magnuson-Stevens Fishery Conservation and Management Act |
| National or State Forests or Parks |
| Properties listed on, or eligible for inclusion in, the National Register of Historic Places, or the National Register of Historic Landmarks |
| Floodplains and wetlands |
| Designated or proposed wilderness areas, national or state wild and scenic rivers, wildlife refuges and management areas and sanctuaries |
| Prime agricultural lands, designated by the Department of Agriculture |
| Sites which are subject to use by American Indians and other Native Americans for religious purposes |

### Landowner Notification

With two exceptions, landowner notification is required prior to any construction of projects done for the integrity management program under the Subpart F blanket program. One exception is any replacement which is not foreseen and requires immediate attention. Another exception is any replacement which would meet the section 2.55(b) requirements except that the replacement is not of the same capacity.

The definition of "landowner" is found in section 157.6(d)(2). The specific requirements for the contents of the landowner notice are in section 157.203(d).

For automatically authorized projects, landowners must be notified at least 30 days prior to commencing construction or at the time the company initiates easement negotiations, whichever is earlier. A landowner may waive the 30-day prior notice requirement in writing, as long as the notice has been provided.

For projects for which the Commission must receive advance notification, the landowners must be notified within at least three (3) business days following the date that a docket number is assigned to the notice by the Commission, or at the time the company initiates easement negotiations, whichever is earlier.

### Annual Report for Construction Projects (sections 157.208(a & b) and section 157.209

Projects that qualify for automatic authorization are for (1) projects constructed under section 157.208; (2) do not exceed the cost limit specified in column 1 of Table I of section 157.208(d) (less than $8,000,000 in 2005); and, (3) meet the requirements of

8

section 157.209.  These projects are reported on an annual basis in an Annual Report that is due by May 1 of each year.

For projects constructed under section 157.208(a) and section 157.209, the annual report must provide a description of the contacts made, reports produced, and results of consultations completed before construction to comply with the ESA, NHPA, and CZM. The annual report must also provide the date and name of the agency that cleared the project.  Actual documentation is not required, although it is helpful to include the "clearance" from the agency.

Projects conducted under section 157.208(b) also must be included in the annual report. However, since environmental information was provided in the notice filed prior to construction, no additional environmental information is required for the annual report.

### Contents of a Prior Notice Filing Under section 157.208(b)

Projects that require prior notice under section 157.208(b) are those that cost more than the limitations set forth in column 1 but less than the amount specified in column 2 of Table I in section 157.208(d) (from $8,000,000 to $22,000,000 in 2005).  For these projects, a concise analysis of the relevant issues outlined in section 380.12 is required in addition to a general description of the activity that is to take place.  For projects to be completed under this section, include the following environmental information for each project:

- A description of the facilities, including the length and diameter, wall thickness and maximum allowable operating pressure of the pipeline; for compressors, the size, type and number of compressor units, horsepower required, horsepower existing and proposed, volume of fuel gas, suction and discharge pressure and compression ratios; metering facilities, taps, valves, etc.;
- The specific purpose of the facilities and relationship to other existing and planned facilities;
- A general location map (showing the facilities in relation to existing facilities);
- USGS 7.5-minute-series topographic maps or maps of equivalent detail (showing the location of each facility) and any sensitive environmental area within 0.25 mile of construction;
- The anticipated start and end dates of construction;
- A concise analysis summarizing the existing environmental conditions, the anticipated significant impacts as a result of construction of the facilities, and mitigation measures proposed to reduce or avoid impact on the quality

9

of the human environment, including impact on sensitive environmental areas;

- A statement that the project will comply with the requirements of section 157.206(b), including for compression facilities, the Clean Air Act and the applicable state implementation plans developed under the Clean Air Act, and the Ldn of 55 dBA at any NSA;
- Copies of correspondence or documentation of consultation with the FWS, SHPO, and appropriate state coastal zone management agency as described above under reporting requirements for Annual Reports; and
- Copies of all agreements received to comply with the ESA, the NHPA, and the CZM.

### Additional Projects that could occur as a result of the Integrity Management Program

Potentially delivery point and abandonment projects could occur in relation to integrity management repairs/replacements, if so then the regulations in section 157.211 and section 157.216 must be followed.

Installation of delivery points under section 157.211(a)(1), and abandonment under section 157.216(a), may be done automatically under the appropriate requirements of those sections. Projects that qualify for automatic authorization are those that meet the applicable subsections of section 157.211 or section 157.216. These projects are reported on an annual basis in an Annual Report that is due by May 1 of each year. For section 157.211 and for section 157.216, if earth disturbance was involved, only the date of the "clearance" is required.

Activities which require prior notice include the installation of delivery points under section 157.211(a)(2), and abandonment under section 157.216(b).

### Prior Notice Filings under section 157.211(a)(2) and section 157.216(b)

Although the regulations do not specifically require the filing of environmental information for construction or abandonment of facilities under these sections (other than USGS maps), the standard environmental conditions of section 157.206(b) apply to these projects. However, the following environmental information will assist us in our review:

- A description of the activity and its purpose;
- The anticipated start and end dates of activity;
- The county and state where the activity will take place;

10

- A general location map of where the activity will take place (copies of pipeline system maps or USGS topographic maps are acceptable provided that enough detail is included to allow us to locate the facilities in the field);
- A statement that the project will comply with the requirements of section 157.206(b) before construction; and
- Copies of correspondence or documentation of consultation (e.g., telephone conversations or meetings) with the:

  o   FWS and NMFS (see Appendix I of Subpart F, referenced at section 156.206(b)(3)(i));
  o   SHPO and THPO (see Appendix II of Subpart F, referenced at section 156.206(b)(3)(ii)); and

- Consistency determination from the appropriate agency that administers the state's coastal zone management plan, if applicable.

### D. Where to go for questions

Contact:   Mr. Douglas A. Sipe
Outreach Manager
douglas.sipe@ferc.gov
202.502.8837

Or

Mr. John Wood
Certificates Branch 2
john.wood@ferc.gov
202.502.8113

Federal Energy Regulatory Commission
888 First Street, NE
Washington DC  20426

# Endnotes

[i]     On November 15, 2002, Congress passed the Pipeline Safety Improvement Act of 2002 (PSIA), which was signed into law on December 17, 2002, and codified at 49 U.S.C. 60109. This law requires the Research and Special Programs Administration/Office of Pipeline Safety of the DOT to "issue regulations prescribing standards to direct an operator's conduct of a risk analysis and adoption and implementation of an integrity management program" no later than 12 months after December 17, 2002. The statute sets forth minimum requirements for integrity management programs for gas pipelines located in High Consequence Areas (HCAs).

The final DOT regulations require operators to develop integrity management programs for gas transmission pipelines located where a leak or rupture could do the most harm, i.e., could impact HCAs. The rule requires gas transmission pipeline operators to perform ongoing assessments of pipeline integrity, to improve data collection, integration, and analysis; to repair and remediate the pipeline as necessary; and to implement preventive and mitigative actions. The regulations comprehensively address statutory mandates, safety recommendations, and conclusions from accident analyses, all of which indicate that coordinated risk control measures are needed to improve pipeline safety.

The PSIA directed federal agencies and departments having jurisdiction over the permitting of work needed for pipeline repairs to establish a coordinated and expedited pipeline repair permit review process. The process must be designed to enable pipeline operators to commence and complete all activities necessary to carry out pipeline repairs within the time periods to be established and specified by the Secretary of Transportation, pursuant to the PSIA, and in accordance with the statutory and regulatory requirements of the other agencies.

In accordance with Section 16 of the PSIA, to carry out this mandate and in recognition of the fact that timely repair of both natural gas and hazardous liquid pipelines is essential to facilitate the nation's ability to meet the goal of sufficient availability and use of natural gas and liquid fuels, several federal agencies have entered into a Memorandum of Understanding (MOU). Agencies who signed the MOU are: Council on Environmental Quality; DOT; Environmental Protection Agency; Department of the Interior; Department of Commerce; Department of Defense; FERC; Department of Agriculture; Department of Energy; and the Advisory Council on Historic Preservation.

# Appendix 1:
## 2.55(a) Auxiliary Facilities

(a) Auxiliary installations.

     (1)   Installations (excluding gas compressors) which are merely auxiliary or appurtenant to an authorized or proposed transmission pipeline system, and which are installations only for the purpose of obtaining more efficient or more economical operation of the authorized or proposed transmission facilities, such as:  Valves; drips; pig launchers/receivers; yard and station piping; cathodic protection equipment; gas cleaning, cooling and dehydration equipment; residual refining equipment; water pumping, treatment and cooling equipment; electrical and communication equipment; and buildings.

# Appendix 2:
## Appendix A to Part 2--Guidance for Determining the Acceptable Construction Area for Replacements

These guidelines shall be followed to determine what area may be used to construct the replacement facility.  Specifically, they address what areas, in addition to the permanent right-of-way, may be used.

Pipeline replacement must be within the existing right-of-way as specified by Sec. 2.55(b)(1)(ii).  Construction activities for the replacement can extend outside the current permanent right-of-way if they are within the temporary and permanent right-of-way and associated work spaces used in the original installation.

If documentation is not available on the location and width of the temporary and permanent rights-of-way and associated work space that was used to construct the original facility, the company may use the following guidance in replacing its facility, provided the appropriate easements have been obtained:

a.    Construction should be limited to no more than a 75-foot-wide right-of-way including the existing permanent right-of-way for large diameter pipeline (pipe greater than 12 inches in diameter) to carry out routine construction.  Pipeline 12 inches in diameter and smaller should use no more than a 50-foot-wide right-of-way.

b.    The temporary right-of-way (working side) should be on the same side that was used in constructing the original pipeline.

c.   A reasonable amount of additional temporary work space on both sides of roads and interstate highways, railroads, and significant stream crossings and in side-slope areas is allowed.  The size should be dependent upon site-specific conditions.  Typical work spaces are:

| ITEM Typical | extra area (width/length) |
|---|---|
| Two lane road (bored) | 25-50 by 100 feet |
| Four lane road (bored) | 50 by 100 feet |
| Major river (wet cut) | 100 by 200 feet |
| Intermediate stream (wet cut) | 50 by 100 feet |
| Single railroad track | 25-50 by 100 feet |

d.   The replacement facility must be located within the permanent right-of-way or, in the case of nonlinear facilities, the cleared building site.  In the case of pipelines this is assumed to be 50-feet-wide and centered over the pipeline unless otherwise legally specified.

However, use of the above guidelines for work space size is constrained by the physical evidence in the area.  Areas obviously not cleared during the original construction, as evidenced by stands of mature trees, structures, or other features that exceed the age of the facility being replaced, should not be used for construction of the replacement facility.

If these guidelines cannot be met, the company should consult with the Commission's staff to determine if the exemption afforded by Sec. 2.55 may be used.  If the exemption may not be used, construction authorization must be obtained pursuant to another regulation under the Natural Gas Act.

14