**RECORD NOS. 13-4458(L), 13-4459, 13-4460, 13-4461**

In The
# United States Court of Appeals
### For The Third Circuit

**COLUMBIA GAS TRANSMISSION, LLC,**

*Plaintiff – Appellant,*

**v.**

**1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000 OWNED BY DWAYNE P. BROWN AND ANN M. BROWN; DWAYNE P. BROWN; ANN M. BROWN, 101 ACRES, AND 41,342 SQ. FT MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID #30000EE1600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR; BRADLEY E. HERR; ELIZABETH M. HERR, 1.5561 ACRES, MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID #30000ED010300000000, OWNED BY MYRON A. HERR AND MARY JO HERR; MYRON A. HERR; MARY JO HERR, 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY PENNSYLVANIA, LOCATED ON TAX ID #440002800240000000, OWNED BY DOUGLAS W. HILYARD AND TESSA J. HILYARD; DOUGLAS W. HILYARD; TESSA J. HILYARD,**

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

---

### REPLY BRIEF OF APPELLANT

---

**John D. Wilburn**
**Anastasia P. Cordova**
**Stephen P. Mulligan**
**MCGUIREWOODS, LLP**
**1750 Tysons Boulevard, Suite 1800**
**Tysons Corner, Virginia 22102**
**(703) 712-5000**

**Erin N. Fischer**
**MCGUIREWOODS, LLP**
**625 Liberty Avenue, 23rd Floor**
**Dominion Tower**
**Pittsburgh, Pennsylvania 15222**
**(412) 667-6000**

*Counsel for Appellant*

*Counsel for Appellant*

# Table of Contents

**Page**

Table of Authorities ............................................................................... iii

Introduction .............................................................................................1

Argument..................................................................................................2

    A.    Because Columbia's Project is a "Replacement" and Not a "Relocation," Columbia Can Replace the Pipeline in a New Right-of-Way Using the Blanket FERC Certificate ............................2

        1.    Columbia's Replacement Project is Not an "Extension" Because the New Pipeline Will Substitute for the Existing Pipeline and Not Serve in Addition to It ......................3

        2.    Columbia's Project is a Replacement and Not a Relocation Because Columbia is Not Moving the Old Pipeline to the New Property ......................................................5

    B.    2003 Emergency Reconstruction Does Not Apply Because This Case Does Not Involve a Catastrophic Emergency .............................7

    C.    In Light of the Final Rule and the Common Law Definition of "Adjacent," the District Court's Denial of the Motions to Alter is an Abuse of Discretion ....................................................................9

    D.    The Final Rule is Entitled to Auer Deference Because It is Not Inconsistent with Emergency Reconstruction....................................10

    E.    Columbia Has Met all the Elements of the Injunction Standard and Should Be Granted Immediate Possession of the Easements ......13

        1.    Likelihood of Irreparable Harm to Columbia............................14

        2.    Harm to the Landowners............................................................16

        3.    Columbia's Likelihood of Success on the Merits.....................17

       4.     Public Interest ...........................................................................17

Conclusion ................................................................................................18

Certificate of Bar Membership

Certificate of Compliance

Certificate of Digital Submission

Certificate of Filing and Service

# Table of Authorities

**Page(s)**

**Cases**

Auer v. Robbins,
    519 U.S. 452 (1997)....................................................................2, 10, 11

Columbia Gas Transmission Corp. v. B.J. Props. New Mkt., LLC,
    2008 U.S. Dist. LEXIS 45305 (W.D. Va. June 9, 2008)............................4, 5

Columbia Gas Transmission Corp. v. Exclusive Gas Storage Easement,
    578 F. Supp. 930 (N.D. Ohio 1983) ............................................................4, 5

Columbia Gas Transmission, L.L.C. v. Robert Borror Logging, L.L.C.,
    2:12-cv-39, 2012 U.S. Dist. LEXIS 83218 (N.D. W. Va. June 15, 2012)....16

Decker v. Northwest Environmental Defense Ctr.,
    133 S. Ct. 1326 (2013)....................................................................................11

E. Tenn. Natural Gas Co. v. Sage,
    361 F.3d 808 (4th Cir. 2004) ....................................................................16, 17

Minard Run Oil Co. v. U.S. Forest Serv.,
    670 F.3d 236 (3d Cir. 2011) ..........................................................................17

Smiley v. Citibank (S.D.), N.A.,
    517 U.S. 735 (1996).......................................................................................12

Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement,
    2008 U.S. Dist. LEXIS 71302 (W.D. Pa. Sept. 19, 2009) ............................16

United States v. St. Anthony Railroad Co.,
    192 U.S. 524 (1904).......................................................................................10

Williston Basin Interstate Pipeline Co. v.
An Exclusive Gas Storage Leasehold &
Easement in the Cloverly Subterranean Geological Formation,
    524 F.3d 1090 (9th Cir. 2008) ....................................................................3, 4

**Regulations**

18 C.F.R. § 2.55 ................................................................................6

18 C.F.R. § 2.55(b) .....................................................................6, 7, 11

18 C.F.R. § 157.202(b)(2)(i).................................................................7

18 C.F.R. § 157.202(b)(6)(i).................................................................5

18 C.F.R. § 157.208(a)..........................................................................8

18 C.F.R. Part 157......................................................................passim

Emergency Reconstruction of Interstate Natural Gas Facilities
Under the Natural Gas Act, 68 Fed. Reg. 4120 (Jan. 17, 2003) ......................passim

**Other Authority**

Webster's New International Dictionary (3d ed. 1976)............................................3

**Introduction**

The Landowners' brief suffers from the same flaws as the District Court's opinions and orders—it conflates and incorrectly interprets the various CFR provisions at play in this case. Ultimately, it does little to undermine Columbia's argument which has behind it the force of FERC's interpretations, the plain language of the CFR, and the federal case law.

The Landowners ask this Court to affirm the District Court for the following reasons: (1) the District Court properly denied Columbia's Motions for Partial Summary Judgment because Columbia's replacement project is a relocation; (2) Emergency Reconstruction is applicable and supports the District Court's decision; (3) the District Court correctly denied Columbia's Motions to Alter because Columbia seeks to relocate the Pipeline; (4) the District Court appropriately afforded no deference to the Final Rule because it is inconsistent with Emergency Reconstruction and because the timing of its issuance is suspicious; and (5) the District Court correctly denied the Motion for Immediate Possession of the Easements because Columbia did not satisfy the preliminary injunction standard.

As explained below, none of these reasons should prevent reversal of the District Court's Orders. First, Columbia's project falls squarely within the definition of "replacement," which should be interpreted according to the CFR and

1

not the commonplace usage of the word "replace."    Second, <u>Emergency Reconstruction</u> deals solely with catastrophic emergencies and does not address the *other* scenario in Part 157 that provides for blanket authorization so long as the cost threshold is not exceeded.

Third, the Final Rule underscored the clear error of law the District Court made in interpreting the CFR and should have prompted the District Court to reconsider its Orders.    Fourth, because the Final Rule does not contradict <u>Emergency Reconstruction</u> but simply points out the absence of adjacency requirement in the CFR, the Rule is entitled to <u>Auer</u> deference.    Lastly, Columbia has met the elements of the injunction test and should therefore be awarded immediate possession of the easements described in the Complaint.

## Argument

### A. Because Columbia's Project is a "Replacement" and Not a "Relocation," Columbia Can Replace the Pipeline in a New Right-of-Way Using the Blanket FERC Certificate.

The Landowners accuse Columbia of seeking "free reign to confiscate land anywhere it sees fit."    (Br. of Appellees at 9.)    This dramatic rhetoric, however, grossly misstates Columbia's efforts in this case to replace an aging, unreliable pipeline to protect the public and improve the supply of an essential utility service. Furthermore, Columbia is proceeding with the project under the blanket authorization granted to it by FERC in 1983.    A careful analysis of 18 C.F.R. Part

157 demonstrates that the planned replacement of the Pipeline is proper under Columbia's blanket FERC Certificate.

>    **1.    Columbia's Replacement Project is Not an "Extension" Because the New Pipeline Will Substitute for the Existing Pipeline and Not Serve in Addition to It.**

The Landowners start their brief with the argument that Columbia seeks an "unauthorized extension" of the Pipeline.  (Br. of Appellees at 11.)  Such an extension, they contend, requires regulatory authority in addition to the blanket Certificate.  (Id.)  In support of this contention, the Landowners rely on Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation, 524 F.3d 1090 (9th Cir. 2008), which is clearly distinguishable and inapplicable to the facts of this case.[1]

The dictionary definition of "extension" is in accord with Williston, where the gas company sought to enlarge its reservoir by acquiring *additional* wells on the landowners' properties in order to prevent loss of natural gas.  524 F.3d at 1095.  In holding that the company's acquisition was an "extension," the Williston court opined that "Allowing a natural gas company to condemn property beyond the scope of its [Certificate] whenever that property could be *useful for the*

---

[1] In analyzing the propriety of the replacement project, the Landowners place much emphasis on dictionary definitions.  The common definition of "extension" clearly demonstrates that Columbia's project is not an extension or expansion.  The Webster's New International Dictionary defines "extension" as "a lengthening, furthering, developing" or "an expansion, enlargement, augmentation, increase." 804 (3d ed. 1976).

*operation and maintenance of an existing facility* would create a significant gap in FERC's oversight of new projects and acquisitions[.]" Id. at 1097 (emphasis added).

Here, although Columbia is acquiring new rights-of-way for the placement of the new Pipeline, these acquisitions do not serve to aid in the operation and maintenance of an *existing* facility. Instead, the new pipeline will function to completely *replace* and *restore* the existing Line 1655 after the old facility is no longer operational. To that end, it will function "instead of" and not "in addition to" the pipeline that is currently in the ground. Because the proposed replacement will not be useful for the operation and maintenance of the pipeline that will have been abandoned in favor of the new pipeline, Columbia's project is not an "extension" and Williston is distinguishable and inapplicable.

Similarly, the Landowners' reliance on Columbia Gas Transmission Corp. v. Exclusive Gas Storage Easement, 578 F. Supp. 930 (N.D. Ohio 1983) and Columbia Gas Transmission Corp. v. B.J. Props. New Mkt., LLC, 2008 U.S. Dist. LEXIS 45305 (W.D. Va. June 9, 2008) is misplaced. In Exclusive Gas Storage Easement, the court found that the 1953 Certificate did not cover the desired acquisition because the maps and specifications attached to the 1953 Certificate omitted the property in question. 578 F. Supp. at 935. As a result, the Court

concluded that Columbia sought to acquire property outside the scope of its Certificate and thus required additional authority from FERC.  Id.

No similar inconsistency exists here.  The Landowners have never argued that any of their properties are outside of the geographic scope of the blanket FERC Certificate.  Because there are no maps or other materials that establish boundaries of the acquisition sought by Columbia, Exclusive Gas Storage Easement is not on point.

In B.J. Props., the footnote on which the Landowners rely is merely dicta, and not persuasive, because the court did not actually find that Columbia sought to expand its facilities under the guise of replacing them.  2008 U.S. Dist. LEXIS 45305, at *10 n. 5.  The Court rejected the landowners' contention that the company could not replace its pipeline because the FERC Certificate did not contain the word "replace."  Id.  Specifically, the court found that Columbia did not seek any right not already granted to it by the FERC Certificate, and included the footnote simply to caution Columbia that additional authority would be necessary should Columbia decide to expand its facilities.  Id.

### 2. Columbia's Project is a Replacement and Not a Relocation Because Columbia is Not Moving the Old Pipeline to the New Property.

The Landowners next contend that Columbia is "relocating" the Pipeline to a new property in violation of 18 C.F.R. § 157.202(b)(6)(i) which permits relocations only on the same property.  (Br. of Appellees at 15.)  The meaning of

5

the word "relocate," however, suggests moving an object located in one place to a new location. Here, Columbia is not taking the old Pipeline from the ground and moving it to the location on the Landowners' properties. The old Pipeline will be abandoned in its current location. Instead, Columbia seeks to *replace* the Pipeline and the service it provides by constructing a new facility with identical capacity on the new properties.

Columbia's project is not exorbitant as characterized by the Landowners. Columbia is not building the new Pipeline in an unrelated location "anywhere on Earth" but is simply replacing it a quarter mile away to circumvent a populated area. Had Columbia removed the existing Pipeline and transported it to the Landowners' property, or any other new property, the Landowners may have had a colorable argument that relocation has occurred. That is simply not the case here.

The Landowners also argue that Columbia's interpretation of Part 157 renders § 2.55(b) meaningless. (Br. of Appellees at 16.) Section 2.55 excludes from the permitting requirements those facilities that can be replaced in the same right-of-way. This exclusion enables a gas company to repair its facilities without *any* regulatory authority. In this project, Columbia cannot avail itself of this procedure because it needs a new right-of-way. Irrespective of where Columbia replaces the Pipeline, it must rely on its blanket Certificate so long as the replacement takes place on a new property.

6

If Columbia did not have its blanket Certificate, and attempted to replace the Pipeline in a new right-of-way without *any* authority from FERC, then the provisions of § 2.55(b) arguably would be abrogated.  Columbia, however, does have a blanket Certificate for this project.  Columbia's project, therefore, does not conflict with the limitations set forth in § 2.55(b).

Lastly, the Landowners allege that Columbia's project contradicts the commonplace definition of the word "replace," presumably because the District Court found this term to mean "restore to former place."  (Br. of Appellees at 17.) As discussed more fully in Columbia's opening brief, the term "replace" has an entirely different meaning under the CFR than in everyday parlance.  Unlike § 2.55(b), replacement under Part 157 will *never* be in the "former place" because it must be constructed in a new right-of-way.  See 18 C.F.R. § 157.202(b)(2)(i) (defining facility eligible for replacement as, among other things, something that "will not satisfy the location or work space requirements of § 2.55(b)").

**B.    2003 Emergency Reconstruction Does Not Apply Because This Case Does Not Involve a Catastrophic Emergency.**

At the outset, the Landowners argue that Columbia's interpretation of Part 157 nullifies the purpose behind Emergency Reconstruction.  (Br. of Appellees at 18.)  Emergency Reconstruction allows a gas company to work around an accident site and reroute its facilities without seeking further authorization from FERC.  See 68 Fed. Reg. 4120 (Jan. 17, 2003).  In situations other than an emergency,

7

rerouting or extending a mainline is not permitted.  Id. at 4121.  Columbia's replacement project does not impinge on this principle.

Columbia's replacement project is not an addition to or an extension of the mainline because the Pipeline will replace the existing facility, not add to it or increase capacity.  Further, because Columbia is replacing the Pipeline a quarter mile away to avoid a high-consequence area, and because FERC's Final Rule deems such a replacement within the scope of blanket authorization, the replacement project is not a rerouting.  See generally 145 FERC ¶ 61,154, Revisions to Auxiliary Installations, Replacement Facilities, and Siting and Maintenance Regulations (Nov. 22, 2013) at 44 n.78 (App., Vol. 4, p. 1042.)

The Final Rule is plain and clear.  There are no limitations on the distance between the existing facility and the replacement.  Id.  Nor are there such limitations in the language of Part 157 which otherwise subjects replacement projects to cost, capacity, and other restrictions.

Moreover, if Emergency Reconstruction is interpreted to apply to all situations where a gas company seeks to use its blanket Certificate, the "or" clause in 18 C.F.R. § 157.208(a) becomes superfluous.  The regulation provides that replacement pursuant to blanket authority is appropriate to restore service in an emergency or when the project cost does not exceed the cost ceiling.  Id. Emergency Reconstruction concerns solely the first scenario.  Columbia's

replacement project falls on the other side of the "or."  Consequently, the District Court should not have relied on <u>Emergency Reconstruction</u> in deciding Columbia's Motions for Partial Summary Judgment.

**C.    In Light of the Final Rule and the Common Law Definition of "Adjacent," the District Court's Denial of the Motions to Alter is an Abuse of Discretion.**

As a threshold matter, the District Court erred when it unilaterally wrote an adjacency requirement into the CFR.  Indeed, the District Court specifically ruled that the Pipeline was not adjacent to the proposed replacement and that this lack of adjacency excluded the project from the definition of an "eligible facility."  (App., Vol. 1, p. 52.)

The Final Rule conclusively eliminated the adjacency requirement by explaining that Part 157 does not impose restrictions on the location of replacement facilities.  <u>Revisions to Auxiliary Installations</u>, p. 44 n. 78; (App., Vol. 4, p. 1042.)  This express clarification by FERC revealed the error of law the District Court committed in denying Columbia's Motions for Partial Summary Judgment.  The District Court's refusal to correct this error on Columbia's Motion to Amend is an abuse of discretion.

The Landowners cannot justify the District Court's denial of the Motions to Alter on the grounds that the District Court was "guided by the common definition of 'replace'" instead of accepting FERC's clarification in the Final Rule (Br. of

Appellees at 22.)  As discussed *supra*, this definition is inapplicable because the fact that replacements under Part 157 require a new right-of-way renders restoration in the "former place" impossible.

Additionally, the interpretation of the term "adjacent" by the United States Supreme Court to include distances of up to two miles signals a clear error of law in the District Court's reasoning.  United States v. St. Anthony Railroad Co., 192 U.S. 524, 539 (1904).  Given this interpretation, the District Court should have granted the Motions to Alter.

**D.    The Final Rule is Entitled to <u>Auer</u> Deference Because It is Not Inconsistent with <u>Emergency Reconstruction</u>.**

The Landowners challenge the Final Rule on the grounds that it contradicts <u>Emergency Reconstruction</u> which noted that a replacement must be "presumably adjacent" to the original footprint.  (Br. of Appellees at 24-25.)  The Landowners further question the timing of the Final Rule.  (<u>Id.</u>)  Neither of these challenges is sufficient to support the District Court's refusal to extend <u>Auer</u> deference to FERC's latest interpretation of Part 157.

As discussed in Subsection B above and in Columbia's opening brief, the Final Rule does not contradict <u>Emergency Reconstruction</u> because it does not change the procedure with respect to emergencies but merely notes that Part 157 does not impose restrictions on location of replacement facilities.  Because no conflict exists between the Final Rule and <u>Emergency Reconstruction</u>, the timing

of the Final Rule is a nonissue.  See, e.g., Decker v. Northwest Environmental Defense Ctr., 133 S. Ct. 1326, 1331, 1337-38 (2013) (finding that EPA's consistent interpretations of its regulations were entitled to Auer deference even after EPA issued the latest regulations *in response* to the District Court's unfavorable ruling).

Moreover, the Final Rule is not a post hoc change triggered by this litigation because the Final Rule addresses subject matter not at issue here, *to wit* the notice requirements under § 2.55(b) and the function of the regulations in the context of auxiliary installations.  See generally Revisions to Auxiliary Installations (App. Vol. 4, pp. 996-1081.)  Footnote 78 simply clarifies Part 157 as a side note to the general discussion that auxiliary installations may be eligible for blanket authorization.  Revisions to Auxiliary Installations at 44 (App. Vol. 4, p. 1042.)

Additionally, the Landowners allege that footnote 78 in the Final Rule applies only to auxiliary installations and observation wells, not Columbia's replacement project.  (Br. of Appellees at 25-26.)  The plain language of the Final Rule, however, evinces no such limitation because Footnote 78 addresses "auxiliary or *replacement facilities*."  Revisions to Auxiliary Installations at 44 n. 78 (App. Vol. 4, p. 1042.)  The clarification in Footnote 78 thus applies to Columbia's replacement project.

Lastly, the Landowners argue that the Final Rule gives Columbia unbridled discretion to replace the Pipeline anywhere in the United States. (Br. of Appellees

11

at 27.) The Final Rule, however, does not empower Columbia to act beyond the scope of Part 157. In fact, the Final Rule simply points out that Part 157 "impose[s] no limitations on the placement of the facilities" and permits construction without restriction on location of the facilities. Id. The Landowners cannot deny that Part 157 on its face does not contain such limitations. As a result, the Final Rule does not expand the breadth of Part 157 as the Landowners suggest.

By rejecting the Final Rule, the District Court improperly decided that Emergency Reconstruction prevails over the Final Rule. If the regulations are vague and ambiguous as the Landowners contend (Br. of Appellees at 9), FERC, and not the District Court, is vested with discretion to decide and clarify these regulations. See Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 740-41 (1996) (finding that ambiguities in a statute administered by an agency will "be resolved, first and foremost, by the agency, and [that Congress] desired the agency, rather than the courts, to possess whatever degree of discretion the ambiguity allows").

Here, the Final Rule clears up the ambiguity that may have existed with respect to the location of replacement facilities. The District Court's Orders discrediting the Final Rule have impermissibly encroached on FERC's right to administer the C.F.R.

**E.    Columbia Has Met all the Elements of the Injunction Standard and Should Be Granted Immediate Possession of the Easements.**

Lastly, the Landowners claim that the District Court properly denied the immediate possession portion of Columbia's motion because it is not likely to succeed on the merits of its condemnation pleadings.  (Br. of Appellees at 28.)

While it is true that before immediate possession can be awarded, the district court must find that the condemnor possesses the right of eminent domain.  (Br. of Appellees at 29), Columbia in this case has been unable to obtain an order affirming its right to condemn due to the District Court's clear error in interpreting the regulations.  The District Court's erroneous withholding of an order that would otherwise warrant immediate possession of the easements should not close the door on Columbia's efforts to get quick access to the Landowners' properties.

In addition to having demonstrated that it is entitled to an order affirming its right of eminent domain, Columbia has also met each of the four prongs of the preliminary injunction standard.  (Br. of Appellant at 36-42.)  As a result, the District Court abused its discretion in denying Columbia's Motion for Immediate Possession of the Easements.[2]

---

[2] If the Court remands this case to the District Court for further proceedings on Columbia's Motion for Immediate Possession of the Easements, this Court should instruct the District Court to hold an expedited hearing on the Motion.

### 1.      *Likelihood of Irreparable Harm to Columbia.*

The Landowners argue that the harm of denying immediate possession is negligible because Columbia: (1) can purchase the easements; (2) can replace the Pipeline within the same right-of-way; (3) can seek new regulatory authority from FERC; (4) could abandon service if the Pipeline becomes unsafe or costly; and (5) has not demonstrated that it will suffer harm that is not purely economic.  (Br. of Appellees at 32-33.)   None of these arguments eliminates the likelihood of irreparable Columbia will suffer if immediate possession is not granted.

First, before commencing the eminent domain proceedings in the District Court, Columbia attempted to purchase the easements by negotiation.  Columbia's efforts to purchase the easements is undisputed and is described in the Affidavits of Doug Holley attached to Columbia's Rule 56.1 Statements of Undisputed Material Facts in Support of Motions for Partial Summary Judgment.   See (App., Vol. 2, pp. 265-67, 295-97, 361-62.)   The affidavits detail Columbia's in-person, telephonic, and written attempts between November 2012 and March 2013 to purchase the necessary easements by agreement.  (Id.)

The Landowners rejected all of Columbia's offers, thus leading to an impasse that necessitated the underlying condemnation action.  The Landowners do not offer facts to controvert the Holley Affidavit.  As a result, the Landowners' statement that Columbia can alleviate the safety concern by "simply buy[ing] the

desired property rights" (Br. of Appellees at 32) is not only unsupported by the record, it is also factually inaccurate.

Second, without any facts in support of their contention or a designated opinion from an engineer, the Landowners allege that Columbia can address the safety concerns by replacing the Pipeline in the existing right-of-way instead of abandoning the old Pipeline in the ground and replacing the Pipeline at a new location. (Br. of Appellees at 32.) This unsupported contention is contrary to the following testimony presented by Columbia: "It is not typically feasible for Columbia Gas to replace a pipeline in the exact same location. When Columbia Gas replaces a pipeline, it abandons the original pipeline in the ground and lays the replacement pipeline in a new location near the original pipeline. That is the process being followed on this project." (App., Vol. 2, pp. 263, 293, 322, 359.)

This testimony by Columbia's staff most familiar with the replacement project, discredits the Landowners' unsupported allegations to the contrary. Indeed, there is simply no evidence in the record or elsewhere to support Landowners' opinion regarding their preferred method of pipeline construction.

Third, Columbia does not need a new certificate from FERC because it already has the power of eminent through the blanket FERC Certificate. Fourth, Columbia cannot simply abandon service, as the Landowners suggest, and leave the residents of York County without natural gas.

Lastly, Columbia has demonstrated more than a purely economic injury. The irreparable harm Columbia will suffer consists of: (1) safety concerns associated with an aging, unreliable pipeline (Am. Mot. to Expedite, Affidavit of J. Frederick ¶¶ 11-12); (2) not being able to meet the in-service deadline in time for the beginning of the heating season on November 1, 2014 (Id. ¶ 23); and (3) having to work around the Landowners' properties and against the linear method of construction. (App., Vol. 2, pp. 264, 294, 323, 360.)

These factors have been recognized as sufficient to show irreparable harm. Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement, 2008 U.S. Dist. LEXIS 71302, at *48-52 (W.D. Pa. Sept. 19, 2009); Columbia Gas Transmission, L.L.C. v. Robert Borror Logging, L.L.C., 2:12-cv-39, 2012 U.S. Dist. LEXIS 83218, at * 6-7 (N.D. W. Va. June 15, 2012) (enjoining the defendant from transporting logs over the pipeline where Columbia established irreparable harm in the form of "an explosion causing serious bodily injury or death").

## 2.    *Harm to the Landowners.*

While, the Landowners' property interests are undoubtedly important, they must eventually yield to Columbia's right of eminent domain.  Because the Landowners have the absolute right to receive just compensation for the easements, any harm they will suffer as a result is "slight at best."  E. Tenn. Natural Gas Co. v. Sage, 361 F.3d 808, 829 (4th Cir. 2004).

The Third Circuit's decision in <u>Minard Run Oil Co. v. U.S. Forest Serv.</u>, 670 F.3d 236 (3d Cir. 2011), relied upon by the Landowners, involved a moratorium on new drilling and not a condemnation.  Accordingly, it is entirely inapplicable here and does not contradict the holding in <u>Sage</u>.  (Br. of Appellees at 34.)  In cases involving the exercise of eminent domain, the condemnee does not suffer any harm because it is guaranteed compensation regardless of when the condemnor takes possession.  <u>Sage</u>, 361 F.3d at 829.

### 3.    *Columbia's Likelihood of Success on the Merits.*

As discussed *supra*, Columbia will be successful on the merits of its Complaint because it possesses the right of eminent domain pursuant to the Natural Gas Act and the blanket FERC Certificate.

### 4.    *Public Interest.*

With respect to the last prong of the injunction standard, the Landowners assert, without any factual support, that "an additional delay in the replacement of Line 1655 will not result in any substantial harm to the public."  (Br. of Appellees at 35.)  Given the age and composition of the Pipeline, the Pipeline poses significant safety and reliability risks every day it remains in the ground.  (Frederick Aff. ¶¶ 11-12.)  Although the Pipeline has not failed yet, delaying the planned replacement increases the risk that it will fail or become defective in the nearest future.  This is a clear, increased risk of harm to the public.

Further, because Columbia is proceeding under its blanket FERC Certificate, it does have the necessary authority to go forward with the replacement, and no negative precedent will ensue from granting Columbia immediate possession of the easements.

## Conclusion

For the foregoing reasons, and for the reasons set forth in Columbia's opening brief, Columbia Gas Transmission, LLC, by counsel, respectfully requests the Court to reverse the District Court's October 24, 2013, Order denying Columbia's Motions for Partial Summary Judgment and for Immediate Possession of the Easements, the November 15, 2013, Order granting the Landowners' Motions for Summary Judgment, and the May 20, 2014, Order denying Columbia's Rule 59(e) Motions to Alter, Amend and/or Reconsider Judgment; and to grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Anastasia P. Cordova
John D. Wilburn
Anastasia P. Cordova
Stephen P. Mulligan
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia  22102
P: 703-712-5000
F: 703-712-5050
E-mail: jwilburn@mcguirewoods.com
E-mail: acordova@mcguirewoods.com
E-mail: smulligan@mcguirewoods.com

Erin N. Fischer
McGuireWoods LLP
EQT Plaza
625 Liberty Avenue
23rd Floor
Pittsburgh, PA 15222
P: 412-667-6000
F: 412-667-6050
E-mail: efischer@mcguirewoods.com

*Counsel for Appellant*

## Certificate of Bar Membership

I hereby certify that I am a member in good standing of the United States Court of Appeals for the Third Circuit.

/s/ Anastasia P. Cordova
Anastasia P. Cordova

## Certificate of Compliance

I hereby certify that this brief conforms to the rules contained in FRAP 32(a)(5)(A) for a brief produced with 14 point Times New Roman, proportional font.  This brief contains 4,108 words, not including the Table of Contents and Table of Authorities, permitted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ Anastasia P. Cordova
Anastasia P. Cordova

## Certificate of Digital Submission

I hereby certify that a copy of the foregoing Reply Brief of Appellant was submitted in digital format, is an exact copy of the written document filed with the Clerk, and has been scanned for viruses with the Symantec Endpoint Protection, Small Business Edition, Version 12.0.1001.95 and according to the program, is free of viruses.

/s/ Anastasia P. Cordova
Anastasia P. Cordova

## Certificate of Filing and Service

I hereby certify on this 25th day of June, 2014, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Michael F. Faherty
> LAVERTY FAHERTY PATTERSON
> 225 Market Street, Suite 304
> Harrisonburg, Pennsylvania  17108
> (717) 233-6633
>
> *Counsel for Appellee*

I further certify that on this 25th day of June, 2014, I caused the required number of copies of this Reply Brief of Appellant to be filed with the Clerk's Office of the United States Court of Appeals for the Third Circuit, via UPS Next Day Air.

/s/ Anastasia P. Cordova
Anastasia P. Cordova